# TABLE OF CONTENTS

PAGE NO:

HABEAS CORPUS APPLICATION

TABLE OF CONTENTS........................................................................ i

TABLE OF AUTHORITIES................................................................. ii

INTRODUCTION................................................................................. 1

STATEMENT OF THE JURISDICTION........................................... 2

FACTUAL BACKGROUND AND PROCEDURAL POSTURE ................... 2

STATEMENT OF FACTS.................................................................... 9

ISSUES PRESENTED FOR REVIEW.............................................. 12

LAW AND ARGUMENT.................................................................... 13

I. The evidence adduced at trial was insufficient to support a conviction of first degree murder

in the death of John Mayeux.

II. Petitioner's Fifth, Sixth and Fourteenth Amendment rights were violated when he was denied his right to testify; ineffective assitance of counsel

III. Ineffective Assistance of Trial Counsel;
a violation of the Fifth, Sixth, and Fourteenth Amendments to the U.S. Constitution; and Article I § 13, of the Louisiana Constitution.(see, Strickland v. Washington, 466 U.S. 668 (1984)

A. Failure to File Motion to Suppress Confession

B. Trial counsel failed to present a defense, and to have compulsory process for obtaining witnesses in his behalf.

C. Petitioner was denied his Constitutional right to have Effective Assistance of counsel when his trial counsel failed to present a defense, and to have compulsory process for obtaining witnesses in his behalf.

D. Trial counsel deprived petitioner of his Sixth Amendment Right to a fair trial when counsels failed to request a special jury instruction

IV. Double Jeopardy-violation of Due Process
U.S. const. 14th and 5th Amend.

**V.** Trial Court's abuse of discretion; denial of a fair and impartial jury violation of 6th Amend. U.S. Const.

**VI.** Insufficient Evidence to convict of
First Degree Murder and Conspiracy to Commit First Degree Murder(Jackson v. Virginia,

**VII.** Petitioner submits that the cumulative effect of the errors raised herein denied him a fundamentally fair adversarial proceeding.

**CONCLUSION** ........................................................................................................**44**

**CERTIFICATE OF SERVICE** ...............................................................................**45**

**APPENDIX/EXHIBITS**

"**A**"  Third Circuit Court of Appeal, No.2009-2281, ruling on  October 6, 2010

"**B**" Uniform Application for Post Conviction Relief filed on  on October 3, 2011  into the 36th Judicial District Court.

"**C**" Denial of Post Conviction  Application on November 4, 2011

"**D**" Ruling from Third Circuit Court of Appeals denying Supervisory Writs on _____,

2012

"**E**"  Ruling from Louisiana Supreme Court denying review on April 12, 2013

i

## TABLE OF AUTHORITIES

### U.S. Constitution

5th Amendment.................................................................................................passim

6th Amendment ..............................................................................................passim

14th Amendment.............................................................................................passim

### Federal Statutes

28 U.S.C. § 2244..............................................................................................passim

28 U.S.C. §§ 2241 and 2254............................................................................passim

### United States Supreme Court Cases

*Arizona. v. Fulminante,* 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991)........................................24

*Blockburger v. United States, 284 U.S. 299,*...........................................................................34

*Cuyler v. Sullivan, 446 U.S. 335*...............................................................................................32

*Davis v. Washington, 547 U.S. 813 (2006)*...............................................................................14

*Douglas v. Alabama, 380 U.S. 415.*............................................................................................8

*Gideon v. Wainwright,* 372 U.S. 335, 344, 83 S.Ct. 792, 796, 9 L.Ed.2d 799 (1963)............27

*Faretta, 422 U.S. 95 S. Ct. 2525*...............................................................................................20

*Ferguson v. Georgia, 365 U.S. 570* ...........................................................................................18

*Harris v. New York,* 401 U.S. 222, 225, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971)...........................19

*Jackson v Virginia, 433 U.S. 307, 99 S. Ct. 2781, (1979*.......................................................(Passam)

*Johnson v. U.S. N.J. 1943, 63 S.Ct. 549, 318 U.S. 189, 87 L. Ed 704*.....................................24

*McDonough Power Equip., Inc. v. Greenwood, 464 U.S. 548*....................................................35

*McMann v. Richardson,387 U.S. 759,.....32*

*Rock v. Arkansas,* 483 U.S. 4 4, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987)................................19

*Strickland v. Washington,* **(passim)**

*Taylor v. Kentucky,* 436 U.S. 478, 487 n. 15, 98 S.Ct. 1930, 56 L. Ed.2d 468 (1978).................42

*United States v. Cronic,* 466 U.S. 648, .......*32*

*Wainwright v. Sykes,* 433 U.S. 72, 93 n. 1, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977)....................18

***Williams v. Taylor,*** 529 U.S. 362, 405-06; 120 S. Ct 1495; 146 L. Ed. 2D 389 (2000)......8


**Federal Cases**

*Anderson v. Johnson, 338 F. 3d 382, 386 (5th Cir. 2003)*..............................................................4

*Armsted v. Maggio,* 720 F. 2d 894, 896 (5th Cir. 1983).................................................................3

*Bryant v. Scott, 28 F. 3d 1411 (5th Cir. 1994)*...........................................................................25

*Dixon v. Cain,* 316 F. 3d 553, 556 (5th Cir. 2003)...........................................................................5

*Garner v. Cain,* 99-3272 "G", 2000 U.S. Dist. LEXIS 6451 (E.D. La. May 1, 2000)................3

*Hill v. Johnson,* 210 F. 3d 481, 485 (5th Cir. 2000).........................................................................6

*Lambert v. Blodgett,* 393 F. 3d 943, 965-966 (9th Cir. 2004).........................................................4

*Mercandel v. Cain,* 179 F. 3d 271, 275 (5th Cir. 1999)...................................................................3

*Offor v. Scott,* 72 F.3d 30 (5th Cir. 1995).....................................................................................19

*Passos-Paternina v. United States,* 12 F.Supp.2d 231 (D.P.R.1998)............................................36

*Roberts v. Cocrell,* 319 F. 3d 690, 693 (5th Cir. 2003)....................................................................7

*Ybanez v. Johnson,* 204 F. 3d 645, 646 (5th Cir. 2000)....................................................................7


**State Cases**

*State v. James Ransdell,* 47 So 3d 78 (La App. 3 Cir 10/6/10)...................................3

*State v. Dauzart,* 99-3471 (La. 10/30/00), 769 So.2d 1206.............................21

*State v. Hampton,* 818 So.2d 720 (La.2002)............................22

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| JAMES RAMSDELL | ) | CIVIL NO. |
| Petitioner, | ) | |
| | ) | ACTION FOR FEDERAL HABEAS |
| vs. | ) | CORPUS RELIEF FROM CONVICTION |
| | ) | IN THE 36TH JUDICIAL DISTRICT |
| BURL CAIN, Warden | ) | COURT, PARISH OF BEAUREGARD, |
| Louisiana State Penitentiary, | ) | STATE OF LOUISIANA, NO.: CR-974-07 |
| Respondent. | ) | |
| _____ | ) | |

MEMORANDUM IN SUPPORT
OF PETITION FOR WRIT OF HABEAS CORPUS
PURSUANT TO 28 U.S.C. §§ 2241 and 2254

COMES NOW, Petitioner James Ramsdell (hereafter "Petitioner"), in pro se, and submits the

following Memorandum in Support of his Petition Under 28 U.S.C. § 2254 For Writ of Habeas Corpus

by Person in State Custody. In support thereof, Petitioner states as follows:

## INTRODUCTION

Petitioner is presently serving a Life sentence at the Louisiana State Penitentiary at Angola,

Louisiana for his August 28, 2009 conviction for Count 1: First Degree Murder, in violation of La. R.S.

14:3, Count 2: Criminal Conspiracy to Commit First Degree Murder, in violation of La. R.S. 14:26 and

La. R.S. 14:30, Count 3: Armed Robbery, in violation of La. R.S. 14:64, Count 4: Aggravated Burglary,

in violation of La. R.S. 14:60, Count 5: Left of Fire Arms, in violation of. In his present Petition for

Writ of Habeas Corpus, Petitioner raises the following claims:

I. The evidence adduced at trial was insufficient to support a conviction of first degree murder
in the death of John Mayeux.

II. Petitioner's Fifth, Sixth and Fourteenth Amendment rights were violated when he was
denied his right to testify; ineffective assistance of counsel

1

**III.** Ineffective Assistance of Trial Counsel;
a violation of the Fifth, Sixth, and Fourteenth Amendments to the U.S. Constitution; and Article I § 13, of the Louisiana Constitution.(see, *Strickland v. Washington,* 466 U.S. 668 (1984)

A.  Failure to File Motion to Suppress Confession

B.  Trial counsel failed to present a defense, and to have compulsory process for obtaining witnesses in his behalf.

C.  Petitioner was denied his Constitutional right to have Effective Assistance of counsel when his trial counsel failed to present a defense, and to have compulsory process for obtaining witnesses in his behalf.

D.  Trial counsel  deprived petitioner of his Sixth Amendment Right to a fair trial when counsels failed to request a special jury instruction

**IV.**  Double Jeopardy-violation of Due Process
U.S. Const. 14th and 5th Amend.

**V.**  Trial Court's abuse of discretion;denial of a fair and impartial jury violation of 6th Amend.
U.S. Const.

**VI.**  Insufficient Evidence to convict of
First Degree Murder and Conspiracy to Commit First Degree Murder(Jackson v. Virginia,

**VII.**  Petitioner submits that the cumulative effect of the errors raised herein denied him a fundamentally fair adversarial proceeding.


## STATEMENT OF JURISDICTION

Jurisdiction is properly vested in the U.S. District Court of the Western District of Louisiana

pursuant to 28 U.S.C. §§ 2241 and 2254.

## FACTUAL BACKGROUND AND PROCEDURAL POSTURE

Petitioner was charged by Bill of information/indictment with Count 1: First Degree Murder, in

violation of La. R.S. 14:3, Count 2: Criminal Conspiracy to Commit First Degree Murder, in violation

of La. R.S. 14:26 and La. R.S. 14:30, Count 3: Armed Robbery, in violation of La. R.S. 14:64, Count 4:

Aggravated Burglary, in violation of La. R.S. 14:60, Count 5: Theft of Fire Arms, in violation of La.

R.S. 14:67.15, and theft of movable property over $500.00, in violation of La. R.S. 14:67 Petitioner

plead not guilty.

Louisiana Court of Appeal for the Third Circuit denied Petitioner's counseled claims after merit review. See generally, *State v. James Ramsdell*, 47 So 3d 78 (La App. 3 Cir 10/6/10). **App. at "A"**

Petitioner did not exhaust to the Louisiana Supreme Court. He therefore became final for 2244 purposes on November 5, 2011, 30 days after time lapsed to file to the Louisiana Supreme Court.

Petitioner submitted his Uniform Application for Post Conviction Relief on October 3, 2011. **App. at "B"**

Judge of the 36th JDC delivered the judgment of the lower court denying Petitioner's Application in it's entirety on November 4, 2011. **App. at "C"**. The Third Circuit denied writs on October 24, 2012. The Louisiana Supreme Court followed suit on April 12, 2013. See *State ex rel. James Ramsdell v. State*, No. 2012-KH-2473, _____ So 3d _____, (La. 2013). **App. at "D"**

Applicants seeking Federal Habeas relief under 28 U.S.C. § 2241 et seq. are required to exhaust all claims in state court prior to requesting federal collateral relief. *Mercandel v. Cain*, 179 F. 3d 271, 275 (5th Cir. 1999). "The exhaustion requirment is satisfied when the substance of the federal habeas claim has been fairly presented to the highest state court." *Armsted v. Maggio*, 720 F. 2d 894, 896 (5th Cir. 1983). Habeas claims can bee exhausted for §2254 purposes during either direct appeal or state post-conviction review. *Garner v. Cain*, 99-3272 "G", 2000 U.S. Dist. LEXIS 6451 (E.D. La. May 1, 2000) (finding raised by petitioner on direct appeal "properly exhausted and ripe for habeas review.") Petitioner's pro se Petition for Post Conviction Relief and his subsequent request for Remedial and/or Supervisory Writs fairly presented the facts and law of Petitioner's Federal Habeas claims enumerated herein. Although exhaustion inquiries are fact specific, " as a general rule dismissal is not required when evidence presented for the first time in a habeas proceeding supplements, but does not fundamentally alter, the claim presented tot he state courts." *Anderson v. Johnson*, 338 F. 3d 382, 386 (5th Cir. 2003).

3

Petitioner's claims were adjudicated on the merits before the 36th Judicial District Court notwithstanding that the court failed or refused to grant Petitioner's request for an evidentiary hearing. The phrase "adjudicated on the merits" as it appears in 28 U.S.C. § 2254 "does not require that state have conducted evidentiary hearing, or indeed, any particular kind of hearing; state has 'adjudicated' petitioner's constitutional claim 'on the merits' for the purpose of 28 U.S.C. § 2254 (d) when it has decided petitioner's right to post-conviction relief on the basis of substance of constitutional claim advanced, rather than denying claim on the basis of procedural or other rule precluding state court review of merits." See generally, *Lambert v. Blodgett,* 393 F. 3d 943, 965-966 (9th Cir. 200__). As will be noted, infra, the 36th Judicial District Court's, and subsequent appellate courts', summary disposition of Petitioner's Post-Conviction Application represents both departure from clearly established Federal law, as determined by the Supreme Court of the United States and an unreasonable determination of facts in light of the evidence presented in the State court proceedings.

This Application for Writ of Habeas Corpus pursuant to 28 U.S.C. §§ 2241 and 2254 timely follows.

## LAW AND ARGUMENT

In the instant Application for Writ of Habeas Corpus, petitioner raises seven (7 ) claims for relief. First, Petitioner's trial counsel was ineffective in representing Petitioner as pervasive conflicts of interest, personal acrimony, and wanton ineffectiveness clouded counsel's judgment and prevented the unbias, objective, and zealous representation at trial to which Petitioner is entitled.

*State v. Ramsdell* represents the breakdown of the judicial system. The ill-fated verdict reflects the horrific consequences that result when officers of the court cut constitutional corners, trading justice for efficiency. The adversarial intent and nature of the opposing legal lines drawn while promoting the integrity of binding judgments based on legal, ethical, moral, and fair grounds. However, over the course of time, the adversarial nature of the courtroom scene has evolved and mutated from

4

one of protecting the rights of the parties to protecting the record of the attorneys.  Prosecutors have traded the noble goal of public protection against criminal acts for a noted conviction on their personal resume.  Courts have gradually turned a blind eye to the corners cut and injustices rendered by labeling mistakes and errors as "harmless."

The failure of the court to address these harmless errors and hold lawyers accountable for their conduct has served as a virtual license to cut every judicial corner not expressly described unconstitutional.  The adversarial nature of judicial proceedings has been plagued by harmless errors. Strategically, prosecutors are pursuing convictions overzealously, as defense attorneys under delivered, without thought of the life-altering consequences to the accused by simply relying on harmless error to protect their otherwise unethical and unprofessional conduct.    The system is broken.  Justice is no longer being served.

The instant case gives this Honorable Court an opportunity to right this wrong.  The aspiration of justice, guided by the Constitution, is a system established to release a thousand guilty individuals before imprisoning one innocent person.  The system must recognize that errors are not harmless when, James Ramsdell, an innocent man is convicted to life in prison.  A single bee sting hurts but is harmless within minutes.  However, thirty bee stings, are anything but harmless...they are deadly.

James' trial was stricken by a swarm of "harmless" errors that translated into an erroneous conviction entitling the State to Ramsdell's, life.  Ramsdell was stung repeatedly and from all directions. There was a sting from the exculpatory evidence which proves his innocence that was withheld from the defense team.  The minor stings of purely circumstantial evidence the prosecutor presented, made a futile attempt to prove his alleged guilt beyond a reasonable doubt.  Thus, the lack of sufficient evidence is harmless with the right spin.  The premeditated sneak attacks designed to sting Ramsdell to his core came in the numerous forms of prosecutorial misconduct by an ADA more concerned with his conviction rate than justice using jailhouse informants  to bolster their circumstatial case.    The

onslaught of stings to Ramsdell, back came from the ineffective and sluggish performance of the defense attorneys who merely went through the motions, while betraying Ramsdell's trust and sealing his fate for a lifetime.

These harmless errors sucked the life out of Ramsdell, a young man in the wrong place, at the wrong time, and with the wrong friends. This Court has the opportunity to revisit the mockery of a trial that was anything but fair and rewrite history.

A. **Timeliness**

Title 28 U.S.C. § 2244 provides a one-year limit for the filing of an application for a Writ of Habeas Corpus with the Federal Courts. 28 U.S. C. § 2244(d)(1). The limitation period commences from the latest of:

*(A) The date on which the judgment became final by the conclusion of direct review or the expiration o f the time for seeking such review;*

*(B) The date on which the impediment to filing an application created by the State action in violation of the Constitution or the laws of the United States is removed , if the applicant was prevented from filing by such State action;*

(C) The date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) The date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence. Ibid. (emphasis added). Moreover, "the time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2). The one year time limitation imposed by § 2244(d)(1)(A) begins to commence on "the date on which the judgment becomes final by the conclusion of direct

6

review." A state prisoner's conviction becomes "final" for the purposes of §2244 ninety (90) days after the judgment is entered, when the time to file a petition for writ of certiorari with the U.S. Supreme Court has expired. *Roberts v. Cocrell*, 319 F. 3d 690, 693 (5th Cir. 2003). A pending state habeas or post-conviction proceeding tolls the statute of limitations crested by § 2244(d)(1). *Ybanez v. Johnson*, 204 F. 3d 645, 646 (5th Cir. 2000). "[A] state application is 'pending' during the intervals between the state court's disposition of a state habeas and the petitioner's timely filing of a petition for review to the next level." *Dixon v. Cain*, 316 F. 3d 553, 556 (5th Cir. 2003).

Petitioner's conviction became final on November 5, 2010, 30 days after the Third Circuit Court of Appeal Affirmed Petitioner's conviction on October 6, 2010. Petitioner filed his Application for Post-Conviction Relief on October 3, 2011, after a lapse of 338 days. Petitioner timely sought review of the state court's denial of his Application from the Third Circuit Court of Appeal and the Louisiana Supreme Court. The Louisiana Supreme Court denied writs on April 12, 2013, and Petitioner's federal clock resumed immediately thereafter on April 13, 2013, yielding an expiration of Petitioner's time on May 10, 2013. It must be noted here that petitioner did not receive notice of the denial by the Louisiana Supreme Court until April 16, 2013, four (4) days after the ruling. (See Exhibit 1) This is critical because petitioner had only twenty-seven (27) days of time left under AEPDA. Petitioner has diligently mailed his petition on October 16, 2013, in spite of an impediment by the State. Equitable tolling is proper in this circumstance if necessary.

Therefore, Petitioner's instant Petition is timely filed.

## B. AEPDA Standard of Review.

Questions of law and mixed questions law and fact are reviewed under § 2254(d)(1), while pure questions of fact are reviewed under § 2254(d)(2). *Hill v. Johnson*, 210 F. 3d 481, 485 (5th Cir. 200). The state court's decision is contrary to federal law within the meaning of § 2254(d)(1) if the state court

applies a rule contradicting the governing law set forth in the Supreme Court's cases, or the state court "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent." *ibid.; see Williams v. Taylor*, 529 U.S. 362, 405-06; 120 S. Ct 1495; 146 L. Ed. 2D 389 (2000). A state court's factual findings constitute "an unreasonable application of clearly established" Supreme Court precedent if the state court "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." Williams, 529 U.S. at 407-08. The inquiry into the issue of "unreasonableness" is objective. *Ibid.* at 409-10. A state court's incorrect application of clearly established Supreme Court precedent is not enough to warrant federal habeas relief – the application must also be unreasonable. *Ibid.* at 410-12.

**Ineffective Assistance of Counsel**

The gravamen of plaintiff's claim is based in his counsel's ineffectiveness.  James Ramsdell asserts the following claims of ineffective assistance of counsel.

**A.  Failure to File Motion to Suppress Confession**

**B.  Trial counsel failed to present a defense, and to have compulsory process for obtaining witnesses in his behalf.**

**C.  Petitioner was denied his Constitutional right to have Effective Assistance of counsel when his trial counsel failed to present a defense, and to have compulsory process for obtaining witnesses in his behalf.**

**D.  Trial counsel deprived petitioner of his Sixth Amendment Right to a fair trial when counsels failed to request a special jury instruction**

The standard for assessing an ineffective assistance of counsel claim is well-settled; the two-prong standard enunciated in the seminal case of *Strickland v. Washington*, 466 U.S. 668 (1984), must be applied[1].  In order to prevail, a defendant must establish both that counsel's performance was

---

1 State v. Fuller, 454 So.2d 119 (La.1984); State v. Brooks, 661 So.2d 1333 (La. 10/16/95); State v. Robinson, 774 So.2d 119 (La.App. 4 Cir. 8/11/99).

deficient and that the deficiency prejudiced the defendant[2].  As to the former, the defendant must show that counsel made errors so serious that counsel was not functioning as the "counsel" the Sixth Amendment guarantees[3].  As to the latter, the defendant must shown that "counsel errors" were so serious as to deprive him of a fair trial, i.e., a trial whose result is reliable.[4]"  To carry his burden, the defendant must show that there is a reasonable probability that, but for counsel's deficient performance the result of the proceeding would have been different; "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome.[5]"

## STATEMENT OF THE FACTS
## AND ACTION OF THE TRIAL COURT

James E. Ramsdell was charged by Bill of Indictment with the first degree murder of John H. Mayeux, in violation of La. R.S. 14:30, conspiracy to commit first degree murder, in violation of La. R.S. 14:26 and La. R.S. 14:30, armed robbery, in violation of La. R.S. 14:64, aggravated burglary, in violation of La. R.S. 14:60, theft of firearms, in violation of La. R.S. 14:67.15, and theft of movable property over $500.00, in violation of La. R.S. 14:67. (R.pp. 61-63). The charges arose out of an alleged armed robbery/burglary at the home of John "Jack" Mayeux in Ragley, Louisiana. During the course of the robbery John Mayeux was shot and killed. James Ramsdell, Terry Clarkson, and Darrell Bruce, the last people to be seen with John Mayeux, immediately became suspects. Clarkson and Bruce gave statements to authorities stating they were involved in the robbery and burglary of Mr. Mayeux. Both implicated Ramsdell as the shooter and the person who's idea it was to kill Mr. Mayeux. Bruce, a juvenile at the time of the shooting, testified for the State at Mr. Ramsdell's trial. Although he testified that he was at Mayeux's home at the time of the shooting and helped remove items belonging to Mayeux from the home, he was only charged with accessory after the fact. (R.p. 2248). Clarkson

2State . Jackson, 773 So.2d 736, 741 (La.App. 4 Cir. 5/12/99).

3Strickland, 466 U.S. at 686; State v. Ash, 729 So.2d 669 (La.App. 4 Cir. 2/10/99).

4State v. McGee, 758 So.2d 338 (La. App. 4 Cir. 3/15/00).

5Strickland, 466 U.S. at 692; State v. Guy, 737 So.2d 231, 236 (La.App. 4 Cir. 5/19/99).

invoked his Fifth Amendment right and chose not to testify. (R.p. 2516).

Prior to the trial of this matter a number of pre-trial motions were filed on behalf of Mr. Ramsdell. Those motions included a Motion to Quash Charge of First Degree Murder based on double jeopardy which was denied, a Motion to Quash Predicate Offenses of Armed Robbery and Aggravated Burglary which was denied, a Motion to Sever the trials of Ramsdell and Clarkson which was granted, and a Motion to Sever Offenses, which was denied. (R.pp. 20-21, 798).[6]

During *voir dire*, several motions for mistrials were made based on the conduct and comments of several potential jurors. All motions for mistrial were denied. (R.pp. 1389, 1665, 1893, 1987). The first motion for mistrial was raised during *voir dire* based on an excused juror's offering of condolences to the family of Mr. Mayeux. (R.p. 1389). The sencond motion for mistrial came when potential juror White made comments that the defendant looked guilty and must have done something wrong. (R.p. 1665). The trial court denied both motions for mistrial and admonished the jury venire. (R.p. 1680). The court also questioned individual potential jurors to see who had heard any comments regarding Mr. Ramsdell. Juror Stahl admitted saying that Ramsdell looked guilty. (R.p. 1711). Juror Burks stated that he heard someone say, "This guy was in deep, deep, deep s - - t." (R.p. 1816). Counsel for Mr. Ramsdell re-urged his motion for mistrial based on the numerous comments made by members of the jury venire. The trial court denied the motion and merely released the potential jurors that made the comments. (R.p. 1893).

At the conclusion of trial on August 28, 2009, James Ramsdell was found guilty as charged on all counts. A Motion for Post Verdict Judgment of Acquittal and Motion to Set Aside Verdict of Jury were filed by defense counsel. The Motion for Post Verdict Judgment of Acquittal was denied. (R.p. 2628). The Motion to Set Aside Verdict of Jury based on double jeopardy was granted as to the

---

6  The Third Circuit Court of Appeal denied defendant's writ application and request for stay in *State v. Ramsdell*, KW 09-994 (La. App. 3 Cir. 8/18/09), __So.2d __. (R.p. 81)

aggravated burglary charge (R.p. 2634). James Ramsdell waived any delays after the ruling of the Trial Court on his post-trial motions and was sentenced to life imprisonment without benefit of parole, probation or suspension of sentence on Count I, First Degree Murder, on Count II, Criminal Conspiracy to Commit First Degree Murder, he was sentenced to thirty years at hard labor, on Count III, Armed Robbery,one hundred and four years at hard labor without benefit of parole, probation or suspension of sentence, Count V, Theft of Firearms, ten years at hard labor without benefit of parole, probation or suspension of sentence, and on Count VI, Theft of Movable Property, he was sentenced to ten years at hard labor (R.p. 2657-2659).

A Motion for Appeal filed on behalf of James E. Ramsdell was granted and the Louisiana Appellate Project was appointed for purposes of appeal in this case.

## ISSUES FOR REVIEW

**I.** The evidence adduced at trial was insufficient to support a conviction of first degree  murder

in the death of John Mayeux.

**II.** Petitioner's Fifth, Sixth and Fourteenth Amendment rights were violated when he was
denied his right to testify; ineffective assitance of counsel

**V.** Ineffective Assistance of Trial Counsel;
a violation of the Fifth, Sixth, and Fourteenth Amendments to the U.S. Constitution; and Article
I § 13, of the Louisiana Constitution.(see, Strickland v. Washington, 466 U.S. 668 (1984)

A.  Failure to File Motion to Suppress Confession

B.  Trial counsel failed to present a defense, and to have compulsory process for
obtaining witnesses in his behalf.

C.  Petitioner was denied his Constitutional right to have Effective Assistance of counsel
when his trial counsel failed to present a defense, and to have compulsory process for
obtaining witnesses in his behalf.

D.  Trial counsel deprived petitioner of his Sixth Amendment Right to a fair trial when counsels
failed to request a special jury instruction

**III.**  Double Jeopardy-violation of Due Process
U.S. Const. 14th and 5th Amend.

**IV.** Trial Court's abuse of discretion;denial of a fair and impartial jury violation of 6th Amend.
U.S. Const.

**V.** Insufficient Evidence to convict of First Degree Murder and Conspiracy to Commit First
Degree Murder(Jackson v. Virginia, )

**VI.** Petitioner submits that the cumulative effect of the errors raised herein denied him a
fundamentally fair adversarial proceeding.

12

## LAW AND ARGUMENT

**I: The evidence adduced at trial was insufficient to support a conviction of first degree murder in the death of John Mayeux.**

Ernest Young testified that on Tuesday, October 9, 2007, he was at John "Jack" Mayeux's residence to pick up some scrap iron. While at Mayeux's residence, James Ramsdell, Terry Clarkson, and Darrell Bruce stopped by. They helped load the scrap iron onto Young's trailer. Young left the residence. It was the last time Young saw Mayeux alive. (R.p. 2073).

Gloria Mouton went to Mayeux's home to get a tractor she had purchased at an estate sale Mayeux was having. (R.p. 2017). When she arrived on the property she noticed a canvas on the ground and smelled a foul odor. She looked inside the home and noticed it had been ransacked. (R.pp. 2022-2024). She called Young. (R.p. 2025). When Young arrived he raised the tarp pointed out by Ms. Mouton and saw two legs underneath. He immediately called 911. (R.p. 2026). The body under the tarp was John Mayeux. Dr. Terry Welke, Coroner for Calcasieu Parish, testified that Mayeux died as a result of six gunshot wounds. (R.p. 1993).

Detective Shannon Burgess of the Beauregard Parish Sheriff's Office learned from Ernest Yound that Ramsdell, Clarkson, and Bruce were at Mayeux's home days earlier and stayed after Young left the residence. (R.p. 2407). Detective Burgess went to the home of Maurgretta Yellot, mother of James Ramsdell. James was home and told Detective Burgess that he, Clarkson, and Bruce were at Mayeux's home on October 9, 2007, and that after Young left they left the residence fifteen minutes later. (R.p. 2410). Detective Burgess talked to Clarkson who essentially gave the same story. (R.p. 2411). October 15, 2007, Detective Burgess talked to Bruce. Based on his statement, a search warrant was obtained for Maurgretta Yellot's home. (R.p. 2413). Weapons were found in the home exactly where Bruce said they would be. (R.p. 2418). No guns were found under the bathtub described by Bruce. However, when Detective Burgess returned to the residence at a later date, three rifles and three shotguns were found

13

under Maurgretta Yellot's waterbed. (R.pp. 2423-2424).

Marvin Goins called authorities after learning that Ramsdell had been arrested as Ramsdell had stored a welding machine and air compressor in his barn. James and Jacob Ramsdell were together when the equipment was dropped off. (R.p. 2393). The equipment belonged to John Mayeux. (R.pp. 2393, 2396-2397).

Darrell Bruce, Jr. was fifteen at the time of Mayeux's murder. He testified at trial that he met James Ramsdell at church. The two became friends, hanging out and working together. (R.p. 2158). He would often spend the night at Ramsdell's mother's home. He met Terry Clarkson as Clarkson lived in a trailer on Maurgretta Yellot's property. (R.p. 2159). Bruce testified that he was present when Ramsdell shot Mayeux. (R.p. 2162). He identified Ramsdell's gun at trial. (R.p. 2164). Charles Watson, Jr., an expert firearms examiner with the La. State Police Crime Lab, testified that the bullets and casings recovered from the murder scene were fired from Ramsdell's weapon. (R.pp. 2382-2384). Bruce stated that after Ramsdell shot Mayeux, Ramsdell told him to go inside Mayeux's home and take anything he could find. He described how he took a large amount of quarters he found and Clarkson and Ramsdell removed several weapons from inside the home as well as several other items including a four wheeler. (R.pp. 2169, 2175). Bruce testified how he and Ramsdell buried Ramsdell's gun in the back of Ramsdell's home (R.p. 2178). Bruce said the three divided up the oney and he never saw Clarkson again. He claimed that Ramsdell threatened to kill him if he ever told anyone. (R.p. 2180). Bruce identified at trial several items he helped remove from Mayeux'z home such as chainsaws, blowtorches, pistols and nail guns. (R.pp. 2182-2183). Bruce testified that the night before the murder Ramsdell stated that they should kill Mayeux because Ramsdell wanted his stuff. (R.p. 2189). They went to Mayeux's that night and Clarkson was to stab Mayeux but did not do it. (R.p. 2191). They returned to Mayeux's the next day and Ramsdell shot Mayeux. (R.p. 2199).

Terry Clarkson and Jacob "Luke" Ramsdell, James Ramsdell's brother, were both called by the

14

State to testify at trial. Both men asserted their Fifth Amendment right and refused to testify. (R.pp. 2516, 2519).

The State called two witnesses who incarcerated with Ramsdell. James Brown, a career criminal serving sixteen years, testifed that Ramsdell told him he had shot a man named Jack six times. (R.p. 2449). De'Andre Mills, also a career criminal, allegedly gave a statement to authorities implicating Ramsdell in Mayeux's murder but could not remember at trial what he said. (R.p. 2459). Mills' statement to authorities was admitted over defense counsel's objection. (R.p. 2489, S-24_. Mills admitted that he heard about the murder before Ramsdell came to jail, that he did not like Ramsdell, and that he was not sure if Ramsdell or someone else told him the information contained in his statement. (R.pp. 2492-2493).

Evidence of guilt is insufficient to support a conviction unless, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the defendant guilty beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). A jury's credibility determinations are accorded great weight by a reviewing court, and ordinarily, they are sufficient to support a finding of guilt. *State v. Nolan*, 503 So.2d 1186 (La. App. 3 Cir. 1987), *writ denied*, 507 So.2d 226 (La. 1987). However, the mere fact that the issue is a credibility determination does not limit the obligation of the reviewing court under the *Jackson* standard of review. *State v. Bourque*, 94-291 (La. App. 3 Cir. 11/2/94), 649 So.2d 670. Under the jurisprudence just cited, credibility is not ordinarily reviewed on appeal, as it lies within the fact finder's province. However, testimony can occasionally be so incredible as to merit review and ultimate acquittal under *Jackson*.

Detective Janet Bebee of the Beauregard Parish Sheriff's Office testified that she spoke to fifteen year old Darrell Bruce three days after the shooting and that he denied any knowledge of the murder. (R.p. 2124). However, in his statement to authorities on October 11, 2007, he stated that he felt James Ramsdell shot Mayeux because Mayeux had threatened to take Jacob Ramsdell to small claims

15

court because of some air conditioner repair work that Jacob Ramsdell had done for Mayeux. Bruce never mentioned that they intended to kill Mayeux and rob him. (R.p. 514). In his statement to authorities on May 13, 2008, he still does not state that their intention was to kill Mayeux and steal his stuff. (R.p. 609). It wasn't until trial that Bruce testified that Ramsdell stated the night before the murder that they should kill "Jack" because Ramsdell wanted his stuff. (R.p. 2189). Bruce went on to state that they actually drove to Mayeux's home that night and that Clarkson and Ramsdell went inside but nothing happened because, according to Ramsdell, Clarkson "whimped out." (R.p. 2191).

Darrell Bruce was not angel. Although only fifteen at the time of the murder, he already had a conviction for theft in Calcasieu Parish. (R.pp. 2217, 2258). He was on probation when the murder occurred. (R.p. 2259). He was expelled from school in the sixth grade. (R.p. 2257). He did not get along with his mother and stayed with James Ramsdell and his mother Maurgretta Yellot up to a month at a time. (R.pp. 2218-2219). He met James Ransdell at church. He testified how James and his mother took care of him as he did not have any money and his mother did not send him any. (R.p. 2219). Bruce admitted he lied to authorities. (R.p. 2223-2241). His statements were inconsistent. He told officers he closed his eyes when Mayeux was shot, but testified at trial that he saw Ramsdell shoot Mayeux. (R.p. 2235). He told authorities that after Ramsdell shot Mayeux he put the gun back in the car, yet he also stated that it was Clarkson who put the gun back in the car. (R.p. 651, 2232). He never mentioned to authorities that Ramsdell planned to kill Mayeux and take his "stuff" until trial. (R.p. 2189).

Darrell Bruce's self serving testimony should be viewed with extreme caution. Bruce's attorney stated that the State would give Bruce "consideration" if he testified against James Ramsdell. (R.p. 2263). Despite claiming that he was a principle to the murder of John Mayeux, Bruce was only charged with accessory after the fact. (R.p. 2248). Bruce and Clarkson could easily have planted evidence in Ramsdell home as Bruce stayed there for months at a time and was familiar with the home. It is also not inconceivable that Jacob Ramsdell was the individual who killed John Mayeux. Ernest Young

16

testified that Mayeux had a problem with Jacob Ramsdell because of some sir condition work Jacob did for Mayeux. (R.p. 2032).

Even if this Honorable Court should find that James Ramsdell was involved in the murder of John Mayeux, the evidence was insufficient to establish that Ramsdell intended to rob Mayeux or burglarize his home. Although the State would argue that the robbery/burglary was an afterthought, and took place after Mayeux was dead.

There are too may unanswered questions in this case. The evidence presented at trial does not establish, beyond a reasonable doubt that James Ramsdell killed John Mayeux. Even if this Honorable Court should determine that James Ramsdell was involved in the murder of Mayeux, the evidence was insufficient to establish the elements of first degree murder. Accordingly, James Ramsdell's convictions and sentences should be reversed.

## II: PETITIONER'S FIFTH, SIXTH AND FOURTEENTH AMENDMENT RIGHTS WERE VIOLATED WHEN HE WAS DENIED HIS RIGHT TO TESTIFY. INEFFECTIVE ASSISTANCE OF COUNSEL

Petitioner contends that he was denied his right to testify by defense counsel's decision alone. Well in advance of trial and before the defense rested, it was discussed between the petitioner and trial counsel that he would need to  testify because the jury would want to hear his side of just what happen and that he would testify on his own behalf that he did not shoot the victim, John H. Mayeaux, as he had stated in his statement to police. But trial counsel rested without calling Mr. Ramsdell to the stand, even after Mr Ramsdell's insistence that he wanted to testify. Trial counsel told petitioner that "he was not going to put him on the stand . . . the State had the burden of proof and he did not feel that they proved that burden". . .After petitioner still insisted on testifying , counsel told him that "*it's my decision to make on whether or not to put you on the stand, not yours.*"

The record will show that the evidence in this case was very close. The only evidence was adduced that petitioner was guilty of 1st degree murder and conspiracy to commit 1st degree murder was

the suspect testimony of co-defendant Darrell Bruce.

The State's facts and theory of prosecution was based solely upon conflicting testimony. No one other than Darrell Bruce identified petitioner. Petitioner himself gave a statement saying that he was not the shooter. The Alleged "eye witnesses" gave testimony that was in conflict with the physical evidence.

Petitioner submits that his testimony would carry just as much weight before a jury as any of the other witnesses and created a reasonably hypothesis of innocence. Despite petitioner's plea of not guilty, trial counsel denied petitioner the fundamental right to testify in his own defense before the jury who could assess his credibility, and infer a reasonable doubt present from the testimony presented by the state's only alleged witness, who was given a deal for his testimony. Petitioner's only choice to advocate his cause was for him to take the stand, which he informed counsel he wanted to do. Nevertheless, counsel rested the defense after only putting on no witnesses. Failure to present any evidence on behalf of petitioner provided no value to petitioner's purported defense, as the lawyer did not interview, investigate or attempt to find any witnesses that may have been of value.

The United States Supreme Court has recognized a criminal defendant's right to testify is fundamental and personal to the defendant. "Only such basic decisions as to whether to plead guilty, waive a jury, or testify in one's own behalf are ultimately for the accused to make." *Wainwright v. Sykes*, 433 U.S. 72, 93 n. 1, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977); see also, *Jones v. Barnes*, 463 U.S. 745, 751, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983). Accordingly, the Supreme Court had held "there is no rational justification for prohibiting the sworn testimony of the accused, who above all others may be in a position to meet the prosecution's case." *Ferguson v. Georgia*, 365 U.S. 570, 582, 81 S.Ct. 756, 5 L.Ed.2d 783 (1961).

Moreover, the U.S. Supreme Court has been unequivocal in holding that the defendant's right to

18

testify is guaranteed by: (1) the Fifth Amendment's privilege against self-incrimination;[7]  (2) the Sixth Amendment's Compulsory Process Clause;[8] and (3) the Fourteenth Amendment's Due Process Clause.[9] _Rock v. Arkansas_, 483 U.S. 44, 107 S.Ct.  2704, 97 L.Ed.2d 37 (1987).

The Louisiana Constitution also specifically guarantees the defendant the right to testify in his own defense.  Therefore, it is appropriate for this court's review of the federal and state jurisprudence interpreting the aforementioned constitutional provisions.

**(a). Fifth Amendment**:

The Fifth Amendment to the United States Constitution encompassed the right to remain silent as well as the right not to do so.  "Every criminal defendant is privileged to testify in his own defense, or to refuse to do so."  _Harris v. New York_, 401 U.S. 222, 225, 91 S.Ct.  643, 28 L.Ed.2d 1 (1971) (citations omitted).  Furthermore, "[a] defendant's opportunity to conduct his own defense by calling witnesses is incomplete if he may not present himself as a witness.  The opportunity to testify is also a necessary corollary to the Fifth Amendment's guarantee against compelled testimony."  _Rock_, 483 U.S. at 52, 107 S.Ct.  2704.  _Cf._ _Malloy v. Hogan_, 378 U.S. 1, 8, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964) (noting the 5th Amendment's guarantee against self-incrimination, unless the defendant chooses to speak).

The Supreme Court has clearly and strongly indicated that the constitutional right to testify should be treated as fundamental.  _United States v. Teague_, 953 F.2d 1525, 1531 (11th Cir. 1992) (en banc).  Under the Supreme Court's reasoning in _Rock_, the right to testify essentially guarantees the right to ultimately choose whether or not to testify. . . A criminal defendant clearly cannot be compelled to testify by defense counsel who believes it would be in the defendant's best interest to take the stand.

---

[7]"[N]or shall [any person] be compelled in any criminal case to be a witness against himself. . ." U.S. Const. Amend. V.

[8]"In all criminal prosecutions, the accused shall enjoy the right to. . .have compulsory process for obtaining witnesses in his favor. . ." U.S. Const. Amend. VI.

[9]"[N]or shall any state deprive any person of life, liberty, or property, without due process of law. . ." U.S. Const. Amend. XIV.

It is only logical, as the Supreme Court has reasoned, that the reverse also be true.  A criminal defendant cannot be compelled to remain silent by defense counsel. Teague, 953 F.2d at 1532 (emphasis added).

It is therefore, well-settled that the Fifth Amendment's privilege against self-incrimination encompasses the personal right to testify in one's defense just as it encompasses the right not to do so.

**(b). Sixth Amendment:**

"The right to testify is also found in the Compulsory Process Clause of the Sixth Amendment, which grants a defendant the right to call 'witnesses in his favor,' a right that is guaranteed in the criminal courts of the States by the Fourteenth Amendment." See, *United States v. Valenzuela Bernal*, 458 U.S. 858, 867, 102 S.Ct.  3440, 73 L.Ed.2d 1193 (1982) (quoting U.S. Const. Amend. VI and noting the defendant's right to produce favorable witness testimony).

Logically included in the accused's right to call witnesses whose testimony is 'material and favorable to his defense' is a right to testify himself, should he decide it is in his favor to do so.  In fact, the most important witness for the defense in many criminal cases is the defendant himself.  There is no justification for a rule which denies an accused the opportunity to offer his own testimony. Rock, supra.  (emphasis added).

Therefore, "[the Sixth Amendment] grants to accused personally the right to make his defense. It is the accused, not counsel, who must be. . .accorded compulsory process for obtaining witnesses in his favor." *Faretta v. California*, 422 U.S. 806, 819, 95 S.Ct.  2525, 45 L.Ed.2d 562 (1975).

**(c). Fourteenth Amendment:**

The right to testify on one's own behalf is one of the rights that is essential to due process in a fair adversary proceeding.  See *Faretta*, 422 U.S. at 819, n. 15, 95 S.Ct. 2525.  In interpreting the Due Process Clause, the Supreme Court has held:

[t]he necessary ingredients of the Fourteenth Amendment's guarantee that no one shall be deprived of liberty without due process of law include a right to be heard and offer testimony.

A person's right to reasonable notice of charge against him and an opportunity to be heard in his defense -a right to his day in court - are basic in our system of

jurisprudence; and these rights include, as a minimum, a right to examine the witnesses against him, to offer testimony, and to be represented by counsel. *Rock*, supra (emphasis added).

Thus, "[t]his right [to offer testimony] reaches beyond the criminal trial: the procedural due process constitutionally required in some extra judicial proceedings includes the right of the affected person to testify." Id. (citing *Gagnon v. Scarpelli*, 411 U.S. 778, 782, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973); *Morrissey v. Brewer*, 408 U.S. 471, 489, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972).

After *Rock*, the U.S. Circuit Courts have almost uniformly held a defendant's right to testify is personal and can only be waived by the defendant and not his attorney. See *e.g. Brown v. Artuz*, 124 F.3d 73, 77 (2d Cir.1997); *United States v. Pennycooke*, 65 F.3d 9, 10-11 (3d Cir.1995); *United States v. McMeans*, 927 F.2d 162, 163 (4th Cir.1991); *Jordan v. Hargett*, 34 F.3d 310, 312 (5th Cir.1995), *vacated on other grounds*, 53 F.3d 94 (5th Cir.1995) (en banc); *Rogers-Bey v. Lane*, 896 F.2d 279, 283 (7th Cir.1990); *United States v. Teague*, 953 F.2d 1525 (11th Cir.1992) (en banc); *United States v. Ortiz*, 82 F.3d 1066, 1070 (D.C. Cir.1996).

Furthermore, in considering the importance of a defendant's constitutional rights, several of Louisiana sister states have placed the onus of protecting the criminal defendant's right to testify on the court. See *e.g.*, *State v. Neuman*, 179 W.Va. 580, 371 S.E.2d 77, 81-82 (1988); *Culberson v. State*, 412 So.2d 1184, 1186-87 (Miss.1982).

Although the issue is *res nova* in the Louisiana Supreme Court, Louisiana courts of appeal have respected the defendant's right to present his own defense. See, *e.g. State v. Woodfin*, 539 So.2d 645 (La.App. 2d Cir.1989); *State v. Johnson*, 482 So.2d 146 (La.App. 4 Cir.1986).

The Louisiana Supreme Court has indicated, "[n]o matter how daunting the task, the accused. . . has the right to face jurors and address them directly without regard to the probabilities of success. "As with the right to self-representation, denial of the accused's right to testify is not amenable to harmless-error analysis." *State v. Dauzart*, 99-3471 (La. 10/30/00), 769 So.2d 1206, 1210 (emphasis added).

21

In the case sub judice, an evidentiary hearing will support that defense counsel conferred with his client about the testimony of the witness, and the fact that counsel decided *alone* that petitioner was not going to testify. Moreover, the method used by counsel during trial supports that he was manipulating his client's defense and that he was not prepared to present a defense on petitioner's behalf. After each witness testified for the State, petitioner practically *"begged"* counsel to testify, where counsel only warned him that the District Attorney was "crafty" and his criminal past would be brought up, and that he wouldn't want the jury to hear it. Despite the advice, petitioner still wanted to testify. However, after the State presented its case in chief, trial counsel, Elvin C. Fontenot, rested the defense without allowing petitioner to testify in his own defense. Considering the actions of counsel and the only time he conferred with his client, defense counsel unequivocally manipulated the Court into believing that he was actually presenting a defense on his client's behalf, which the record supports is far from the truth. Counsel violated the Sixth Amendment in denying petitioner his right to testify.

The failure to put Mr. Ramsdell on the stand effectively denied petitioner the right to a defense.

Petitioner insisted to his counsel numerous times that he wanted to testify. Prohibiting a client from testifying is a denial of a fundamental right, which is not subject to harmless-error analysis and is appropriate for "structural defects" much more than mere "trial errors" as defined and explained in *Arizona. v. Fulminante*, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991). The right is either respected or denied; its deprivation cannot be harmless. See *Dauzart*, 769 So.2d at 1210-11. It is of no consequence that in *Dauzart*, the court prevented the defendant from testifying and here the petitioner's lawyer prevented him from doing so. Therefore, whenever a defendant is prevented from testifying, after unequivocally expressing his desire to do so to his trial counsel, the defendant has been denied a fundamental right and suffers detrimental prejudice. See, *State v. Hampton*, 818 So.2d 720 (La.2002).

The facts of this case falls within the narrow class created by the two criterion adopted from *Passos-Paternina* and the Louisiana Supreme Court's previous holding in *Dauzart*. Moreover, such

22

criteria is in line with fundamental constitutional rights and fairness in a criminal proceeding. See, _U.S. v. Butts_, 630 F.Supp. 1145, 1148 (D.Me.1986), holding that "[t]his Court considers a defendant's right to testify in a criminal proceeding against him so basic to a fair trial, that its infraction _cannot be treated as harmless-error. . ."._ (emphasis added).

For the foregoing reasons, petitioner's Fifth, Sixth and Fourteenth Amendment rights have been violated, thereby his conviction should be reversed, and in the alternative, an evidentiary hearing held where a record will establish that defense counsel's decision alone, denied petitioner the right to testify in his own defense, nevertheless, the choice to testify was petitioner's to make. The testimony of the petitioner was the most important evidence that could have changed the outcome of the jury's verdict in this case, when all the jury used for evidence to prove petitioner's guilt beyond a reasonable doubt was the conflicting testimony of self-serving witnesses. Therefore, petitioner is entitled to post conviction relief by granting of a new trial, or in the alternative, remand this matter for an evidentiary hearing.

### III.   INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL; A VIOLATION OF THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE U.S. CONTITUTION; AND ARTICLE I § 13, OF THE LOUISIANA CONSTITUTION. (See, Strickland v. Washington, 466 U.S. 668 (1984 )

A. **Failure to File Motion to Suppress Confession**

B. **Trial counsel failed to present a defense petitioner's behalf.**

C. **Petitioner was denied his Constitutional right to have Effective Assistance of counsel when his trial counsel failed to present a defense, and to have compulsory process for obtaining witnesses in his behalf.**

D. **Trial counsel deprived petitioner of his Sixth Amendment Right to a fair trial when counsels failed to request a special jury instruction**

## LAW AND ARGUMENT

### A. FAILURE TO FILE MOTION TO SUPRESS CONFESSION

The right of an accused to counsel is beyond question a fundamental right. See, e.g., *Gideon,*
372 U.S. , at 344, 83 S. Ct at 796 ( "the right of one charged with crime to counsel may not be deemed
fundamental and essential to fair trials in some countries, but it is in ours"). Without counsel the right to
a fair trial itself would be of little consequence, for it is through counsel that the accused secures his
other rights. Of all the rights that an accused person has, the right to represented by counsel is by far the
most pervasive, for it affects his ability to asserts any other rights he may have.

The trial record in this case clearly shows that Mr. Ramsdell counsel failed to file a motion to
suppress his alleged confession. Mr. Ramsdell informed counsel well before trial that his confession
was not voluntary, but due to duress, coercion and the fact that he was medicated at the time of the
statement and unable to to make a knowing and voluntary statement.(at the time of the statement in
question, petitioner was had taken five (5) different prescription medications, (ie., Carisoprodol,
Hydrocodone, Amitriptline, Diazepam, Citalopram). The only evidence presented in this case was the
uncorroborated testimony of a co-defendant and the alleged statement of the defendant. It is beyond
reason as to why a competent counsel would not at the very least try to suppress the inculpatory
statement made by his client knowing full well that the only other evidence that the State had to present
to prove 1st degree murder was a co-defendant, who's testimony was suspect, as he had been given a
deal to testify and had given four different statements previously. This was not trial strategy, this was
incompetence. As the Supreme Court has declared emphatically, "[a] confession is like no other
evidence. Indeed, 'the defendant's own confession is probably the most probative and damaging
evidence that can be admitted against him.'" See, *Arizona v. Fulminante,* 49 U.S. 279 (1991) Mr.
Ramsdell was denied effective assistance of counsel and his conviction and sentence should be

24

reversed.

**B.     TRIAL COUNSEL FAILED TO PRESENT A DEFENSE, AND TO HAVE COMPULSORY PROCESS FOR OBTAINING WITNESSES IN HIS BEHALF.**

The petitioner contends that he was denied his State and Federal constitutional right to present a defense in his behalf.  Under Art.  1 § 16, of the Louisiana Constitution of 1974 states in pertinent part that:

> ". . . An accused is entitled to confront and cross-examine the witnesses against him, to compel the attendance of witnesses, to present a defense, and to testify in his own behalf."

The facts of this case will lend credible support to petitioner's claim.  During arraignment, petitioner present with his counsel, entered a plea of not guilty.  In *Bryant vs. Scott*, 28 F.3d 1411 (5th Cir.  1994), the defendant in that case failed to provide his attorney with the names and addresses of his alibi witnesses.  Unlike in *Bryant,* in the instant case, petitioner's trial attorney knew where to find the name and address of a key witness who would have attested to his character.  Petitioner  told his attorney essentially that he wanted to call Terry Chapman, Robin Chapman, Brandy Haughs and Jon Franks as witnesses. Petitioner did not commit 1st degree murder and his character was crucial to the jury's determination of the truth of the matter. Trial counsel presented no other evidence in support of his client's innocence of the charge of 1st degree murder and refused to allow petitioner to testify in his own behalf. Petitioner's attorney failed to take notice of his actual innocence.

A defendant's right to present a defense is sanctioned constitutionally and he can testify to or give evidence on any matter relevant to an issue material in the case.  97-00402 (La.App.  3 Cir. 8/21/97)  *State v.  St. Germain v.  Breaux*, 702 So.2d 691.  If a witness was in a position to offer testimony that might have substantially helped the particular defense asserted by the defendant, an erroneous exclusion of the offered testimony may be prejudicial.  See *State v. Shoemaker*, 500 So.2d

25

385, 389 (La. 1987).

When an accused enters a plea of not guilty, he is presumed innocent until proven guilty beyond a reasonable doubt. It bears repeating that the accused is not required to prove that he is innocent. Thus, the accused begins the trial with a clean slate. The burden is upon the state to prove the accused's guilt beyond a reasonable doubt.

The petitioner maintained his innocence from the very beginning, and although his trial counsel refused to allow him to testify he continued to let his trial counsel know that he did not commit this crime. The State's case hinged primarily and essentially depended upon uncorroborated testimony from a co-defendant who was offered a deal to testify. These witnesses' testimony was critical to petitioner's defense and trial counsel dropped the ball by not calling them,  denying petitioner a fair trial, thereby rendering ineffective assistance.

### C.   PETITIONER WAS DENIED HIS CONSTITUTIONAL RIGHT TO HAVE EFFECTIVE ASSISTANCE OF COUNSEL WHEN HIS TRIAL COUNSEL FAILED TO PRESENT A DEFENSE, AND TO HAVE COMPULSORY PROCESS FOR OBTAINING WITNESSES IN HIS BEHALF.

The compulsory process envisioned and guaranteed in the Sixth Amendment to the United States Constitution states in pertinent part that:

> "In all criminal prosecutions, the accused shall enjoy the right . . . to have
>
> compulsory process for obtaining witnesses in his favor."   U.S.C.A. 6
>
> Amend.

The  witnesses listed by the petitioner would have provided the critical facts and evidence to support that he was denied his Sixth Amendment right to have compulsory process for obtaining witnesses in his favor. Terry Chapman, Robin Chapman, Brandy Haughs and Jon Franks were never interviewed or subpoenaed to testify at his trial.  He alone could have testified to the truth of

26

petitioner's character. He  would have been able to verify that petitioner was not the person that was portrayed by the prosecution. Even though co-defendant made a statement to police that "James" did it, (and several statements that he did not do it) and gave testimony to the same, this testimony was self serving and should have been challenged under direct-examination. Petitioner has never wavered in that he had nothing to do with the shooting of the victim for which he has been falsely accused and wrongly convicted of.

Every defendant has the constitutional right to Compulsory process for attendance of witnesses in criminal cases.  There are provisions available for the issuance of subpoenas in support of the right to compulsory process.  See La.C.Cr.P. art.  731 et seq.; *Taylor v.  Illinois*, 108 S.Ct.  646, 484 U.S. 400, 98 L.Ed.2d 798, rehearing denied 108 S.Ct. 1283, 485 U.S. 983, 99 L.Ed.2d 494 (1988); U.S.C.A. 6 Amend.

The petitioner was never afforded this most delicate of constitutional rights, thereby denying him a fair trial as envisioned by the Louisiana and United States Constitutions.

In this aspect of petitioner's claim, he contends that his trial attorney failed to provide him the effective assistance of counsel as guaranteed by the Louisiana and United States Constitutions.  The petitioner contends that his only defense was that of innocence.  Even though he did not to testify in his own behalf, (counsel's choice[10]) he is still entitled to have a defense presented in his behalf; and to have compulsory process for obtaining witnesses in his behalf.  Neither one of these rights were advocated in petitioner's behalf.

The right to counsel, which is guaranteed in the Sixth Amendment to the United States Constitution and under Article 1, § 16 of the Louisiana Constitution, "is a fundamental right of criminal defendants; it assures the fairness, and thus the legitimacy, of our adversary process." *Gideon v. Wainwright*, 372 U.S. 335, 344, 83 S.Ct.  792, 796, 9 L.Ed.2d 799 (1963).  Without counsel, the right

---

10 See Claim No. 1

27

to a fair trial itself would be meaningless, for it is only through counsel that the accused may secure his other rights.

The essence of an ineffective assistance claim is that counsel's unprofessional errors upset the adversarial balance between the defense and prosecution, rendering the trial unfair and the verdict suspect. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In order to prevail on such a claim, one must show both that counsel's representation fell below an objective standard of reasonableness, and that there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

### DEFICIENT PERFORMANCE AND PREJUDICE

Petitioner has claimed from Day One, that he is totally innocent of the crime of 1st degree murder and conspiracy to commit 1st degree murder. Petitioner claims that he did not shoot John "Jack" Mayeaux. By that being so, if his trial counsel would have interviewed, or subpoenaed a key witnesses to attest to his character, a different determination would have been made by the jury and his defense would not only have been presented, but documented. However, this was not done.

Petitioner avers that he has fulfilled the first prong of *Strickland*, supra, by demonstrating that his trial attorney's performance was deficient. He has identified specific instances of his trial attorney's omissions and that he has a right to effective assistance of counsel. In being effective, petitioner's attorney owed him a duty to interview those potential witnesses and to make an independent investigation of the facts and circumstances. These are errors that should be deemed to be of sufficient gravity to have undermined the fundamental fairness of the trial itself. See *Nealy v. Cabana*, 764 F.2d 1173 (5th Cir. 1985).

Next, petitioner intends to show that this deficient performance of his trial attorney prejudiced him by depriving him of a fair trial, i.e., a trial whose result is reliable. First, a reasonable investigation and interview of this key eyewitness, Darrell Bruce, would have uncovered critical evidence, that

28

petitioner was not the person who shot the victim, John Jack" Mayeaux ; that someone else other than the petitioner did the shooting, thereby exonerating him.  Defense Counsel's conduct truly undermined the proper functioning of the adversarial process in that the trial cannot be relied on as having produced a just result.  This was a grave error on the part of petitioner's trial counsel.  Petitioner should not be made to suffer continual incarceration due to his trial counsel's grave errors.  Instead, his trial counsel should be made to answer, in an evidentiary hearing, as to why he failed to provide effective and reasonable assistance of counsel to his client.

Petitioner has been deprived of his defense and a fair trial where his trial attorney excludes testimony that would have substantially helped his defense.  Petitioner's trial attorney failed to call a critical witnesses, or present another hypothesis that some one other than the petitioner was the shooter. If witnesses were called in his behalf to testify as to his character, this would have supported his only theory of defense, that he was not the man who shot John Jack" Mayeaux.   This excluded testimony was crucial to the defense theory.  In *State v. Caldwell*, 504 So.2d 853, 856 (La. 1987), where the excluded testimony that is crucial to the defense theory, a conclusion of reversible error would be well founded.

The prejudice suffered is that these witnesses alone could have provided petitioner with an actual reasonable doubt.  A reasonable doubt that someone other than the petitioner committed these crimes.  The State must prove guilt beyond a reasonable doubt, it did not have to prove guilt beyond all possible doubt.  This was the doubt based on reason and common sense and was present when, after having carefully considered all the evidence or lack of evidence, none of the jurors could say that they were firmly convinced of the truth of the charges leveled against the petitioner.  The rational is simple in that if the four witnesses would have testified, there would have been reasonable doubt, and the jury would have exonerated the petitioner as not being the person that shot John Jack" Mayeaux.

For the foregoing facts and law in relation thereof, petitioner's trial counsel should be deemed

29

to have provided him ineffective assistance of counsel at the trial stage. Petitioner's sentences and convictions should therefore be reversed and remanded for a new trial in the district court for having wrongfully convicted him.

## D. TRIAL COUNSELS DEPRIVED PETITIONER OF HIS SIXTH AMENDMENT RIGHT TO A FAIR TRIAL WHEN COUNSELS FAILED TO REQUEST A SPECIAL JURY INSTRUCTION

Petitioner contends that he received ineffective assistance of counsel when his attorney, Mr. Elvin C. Fontenot failed to request a special jury instruction concerning the Mandatory Sentencing Issue.

The United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104, S.Ct. 2052, 80 L.Ed.2d 674 (1984), established a two prong test to determine ineffective assistance of counsel. First, there must be specific showing counsel made errors so serious that counsel was not functioning as the " counsel" guaranteed the defendant by the Sixth Amendment. Secondly, counsel's error must be so serious that the defendant was deprived of his right to a fair trial whose result is reliable. It must be shown that but for counsel's unprofessional errors, the result of the proceedings would have been different. Citing *Strickland v. Washington*, supra.

The Louisiana Constitution guarantees to each criminally accused the right to full jury voir dire. La. Const. Art. 1, Section 17. The importance of a searching and informed examination of prospective jurors has been recognized in this State, as worthy of Constitutional protection. In the present case, petitioner was deprived of the enjoyment of that right by the ineffectiveness of his trial attorney.

Throughout the jury voir dire examination in the instant case, the trial judge and at times, the district attorney repeatedly informed the prospective jurors that punishment was solely within the province of the court, and not a matter with which they should be concerned with.

Petitioner contends that his attorney should have voiced an objection to this mis-statement of the law concerning the mandatory sentencing issue. Or better yet, requested a Special Jury Instruction

from the court, to be given to the jury at the conclusion of the trial.

Petitioner was  tried for First Degree Murder a violation of La. R.S.  14:30 Punishment was not within the province of the court, but predetermined by the Louisiana Legislature. When a mandatory sentence is involved, the defense is entitled to jurors who are informed of that fact.  *State v. Washington,* 367 So.2d 4, 5 (La. 1978); *State v. Jackson,* 450 So.2d 621, 633 (La. 1984); *State v. Peddy,* 569 So.2d 1035, 1036 (La. App. 3 Cir. 1990).

Petitioner had the limited luxury to be able to afford an attorney of his choice, but that attorney made no effort to probe the jurors as to their views of the mandatory penalty.  The attorney obvious ignorance of the law in this regard prejudiced their client.  It cannot be gain said that knowledge of the fact that a conviction of second degree murder automatically results in a mandatory sentence of life imprisonment without benefit of probation, parole, or suspension of sentence may have effected the jurors in their deliberations. *State v. Peddy,* at 1037.  Furthermore, this error was never corrected. Petitioner's attorney did not request a special jury instruction that aggravated second degree murder carried a mandatory life sentence.  The defense did not instruct the jurors as to the sentence which would result if their client was found guilty of first degree murder.  Thus, petitioner was deprived of a long recognized right.

The importance of informing the jury of this penalty has been recognized as such that if a requested instruction is denied by the trial court, it is reversible error.  *State v. Peddy,* 569 So.2d, at 1037-38.  In reversing *Peddy's* conviction, the Third Circuit Court of Appeals ruled as follows:

> "The Supreme Court has recognized that jurors often appreciate and distinguish different offenses by the sentences they carry and not the nuances of varying degrees of criminal intent. *State v. Milby,* 345 So.2d 18 (La. 1977); *State v. Prater,* 337 So.2d 1107 (La. 1976).  In the instant case, knowledge of what sentence the defendant must receive if convicted of second degree murder could have very well been the decision factor among jurors.  Because the defendant was entitled to have the jurors informed of the penalty provision, and the trial court refused to do so, defendant's conviction must be overturned."

31

*State v. Peddy*, at 1037-38.

In the instant case, counsel's failure to object to the judge's incorrect statement of the law during voir dire, couple with trial counsel's failure to request a special jury instruction, and their failure to argue the mandatory penalty to the jury seriously prejudiced petitioner's case. The jury was left without accurate information about the consequences of their verdict.

Unless the accused receives the effective assistance of counsel, a serious risk of injustice infects the trial itself. *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980).

The United States Supreme Court has interpreted the right to counsel to mean the right to the effective assistance of counsel. *McMann v. Richardson*, 387 U.S. 759, 90 S.Ct. 1414, 25 L.Ed.2d 763 (1970). An accused Sixth Amendment right to the assistance of counsel is one of the most fundamental components of our criminal justice system. Through legal representation, the defendant's other pre-trial and trial rights are secured. *United States v. Cronic*, 466 U.S. 648, 104 S.Ct . 2039, 80 L.Ed.2d 657 (1984); *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963).

In light of the facts in petitioner's case, wherein the State's evidence was unreliable and weak, the jury should have been instructed on the mandatory sentence penalty of second degree murder.

The jurors in petitioner's case was never informed of the consequences of their verdict. This error can only be contributed to counsel's ineffectiveness. During the trial court's instruction to the jury, the trial court failed to read the penalty provisions of the crimes charged, (first degree murder). It is petitioner's belief that the jurors labored under the mistaken belief that the court would determine the appropriate sentence to be imposed upon petitioner in relation to the evidence presented. Perhaps they believed that the judge would take into consideration the weakness of the State's case, the conflicting testimony and evidence then impose leniency, which in this case the judge denied a new trial . Armed with the knowledge that the judge had no choice but to impose a sentence of life imprisonment at hard

32

labor, with no hopes of probation, parole, or suspension of sentence, the jurors might have reached a different verdict had they been informed of the penalty of second degree murder.

Prior to the holding in *State v. Washington*, supra, the defendant had no right to have the jury informed of the mandatory penalty that would be imposed. Dissenting from a pre-*Washington*, case, Justice Tate reasoned as follow:

> "In order to perform their important functions in the administrating of criminal justice, jurors should be fully informed of the consequences of their verdicts, including the penalties involved."

*State v. Prater*, 337 So.2d 1107, 1110 (La. 1976)

It is for the above reasons, that the refusal to instruct a jury as to a mandatory sentence upon proper request is reversible error. *State v. Peddy*, supra. Petitioner was seriously prejudiced by counsel's error on this important issue, and it is an error which strikes at the heart of the jury's verdict. Defense counsel's lack of advocacy on this important point resulted in a breakdown of the adversarial process, and resulted in a result which is unreliable.

The mere presence of an attorney does not satisfy the constitutional guarantee of counsel. As the Supreme Court has often noted, an accused is entitled to representation by an attorney, whether retained or appointed, "who play the role necessary, ensure that the trial is fair." *Morrison*, 477 U.S. at 337, 106 S.Ct. 2584, (Quoting *Strickland v. Washington*, 466 U.S. 668, 685, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984)). In other words, the right to counsel is the right to effective assistance of counsel. Citing: *Evitts v. Lucey*, 469 U.S. 387, 395-96, 105 S.Ct. 830, 835-36, 83 L.Ed.2d 821 (1985).

Had counsel requested the special jury instructions, and the trial court properly instructed the jurors concerning the mandatory penalty of second degree murder, there is a strong possibility that the jury would have returned a different verdict after the jury's consideration of the State's evidence, which showed reasonable doubt of petitioner's participation in the crime, and the inconsistent and unreliable testimony of State's witnesses.

33

Petitioner submits that counsel deficient performance rendered his trial fundamentally unfair. The criteria set forth in _Strickland v. Washington_, supra, has been sufficiently met. In light of the above argument and case law cited, petitioner prays that this reviewing court reverse petitioner's conviction and sentence.

## IV.  DOUBLE JEOPARDY-VIOLATION OF DUE PROCESS
## U.S. CONST. 14TH AND 5TH AMEND.

The Double Jeopardy Clause protects defendants from being punished twice for the same offense. U.S. Const. amend. V; La. Const. art. 1, § 15; La. C. Cr. P. art. 591. La. C. Cr. P. art. § 596, double jeopardy exists in a second trial only when the charge brought is: (1) identical with or a different grade of the same offense for which the defendant was in jeopardy in the first trial, or (2) based on a part of continuous offense for which the defendant was in jeopardy in the first trial. The United States Supreme Court applies the "additional fact" test to resolve double jeopardy issues and states are constitutionally required to do the same. *Blockburger v. United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 182. 76 L. Ed. 306 (1932); *State v. Knowles*, 392 So 2d 651, 654 (La. 1980). The "additional fact" test requires that, when conduct constitutes a violation of two or more distinct statutory provisions, the provisions must be scrutinized to confirm that each demands proof of an additional fact. Knowles, 392 So 2d at 654. In addition, Louisiana Courts utilize the "same evidence" test, which focuses upon the actual physical and testimony evidence necessary to secure a conviction. *State v Steele*, 387 So 2d 1175, 1177 (La. 1980. This test depends upon proof required to convict, not the evidence actually introduced at trial. Thus, under the "same evidence" test, the court's concern is with the "evidential focus" of the facts adduced at trial in light of verdict the rendered, *i.e..*, how the evidence presented goes to satisfy the prosecution's burden of proof. *State v. Coody*, 448 So 2d 100, 102-103 (La. 1984). Therefore, if the evidence required to support a finding of guilt of one crime would also support a conviction for another offense, the defendant can be placed in jeopardy for only

34

one of the two.

In the instant case, in order to convict Mr. Ramsdell of armed robbery of Mr. Mayeaux and the theft of a firearm from Mr. Mayeaux, and the theft of moveable property over five hundred dollars from Mr. Mayeaux, the state had to prove the "taking of something of value" as to each particular offense. All three offenses carry the element of "taking something of value" and the "something of value" is the same in all three offenses. The stolen items were the objects of the theft in the armed robbery . see, *State v. Roberson*, 386 So 2d 906 (La. 1980)

It's either armed robbery, "taking something of value"; or, thief, "taking something of value", the law simply does not allow the state to have it both ways.

For the reasons show above, petitioner now asks that this court vacate the theft convictions that are in violation of the double jeopardy clause. See, *Brown v. Ohio*, 97 S.Ct. 2221, 432 U.S. 161 (1997); *Blockburger v. U.S.*, 52 S. Ct. 180, 284 U.S. 299.


## V.  TRIAL COURT'S ABUSE OF DISCRETION;
### DENIAL OF A FAIR AND IMPARTIAL JURY
### VIOLATION OF 6TH AMEND. U.S. CONST.

In this assignment of error, petitioner states that he was denied the right to a fair and impartial jury when the trial court denied several motions for mistrial based of the comments of prospective juror's in the presence of the jury venire.

The Constitution guarantees a criminal defendant the right ta a "fair trial by a panel of impartial , 'indifferent' jurors. The failure to accord an accused a fair hearing violates even the minimal standards of due process." *Irvin v. Dowd*, 366 U.S. 717, 722, 81 S. Ct. 1639, 6 L. Ed 2d 751 (1961). One touchstone of a fair trial is an impartial trier of fact--" 'a jury capable and willing to decide the case solely on the evidence before it.' " *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 554, 104 S. Ct. 845, 78 L. Ed 2d 663 (1984). The obvious difficulty with prejudice and bias in a judicial

35

context is that it prevents the impartial decision-making that both the Sixth Amendment and fundamental fair play require. *United States v. Heller,* 785 F. 2d 1524, 15 27 (reversing jury verdict based on a vior dire of deliberating juror's where the "religious prejudice displayed by the jurors ... is so shocking to the public confidence in the equity of our system of justice, that we must act decisively to correct any possible harmful effects on this appellant"). *see also United States vs. McClinton,* 135 F. 3d 1178,1185 (7th Cir. 1998) (" The Fifth and Sixth Amendments protect a criminal defendant from a jury's lynch mob mentality through the guarantees of the due process of law and trial by an impartial jury.")

Petitioner requested three mistrials during trial. According to La/ C.Cr. P. art 775 (6), a mistrial may be ordered when "[f]alse statements of a juror on vior dire prevent a fair trial." In State v. Carmouche, (La. 5/14/02), 872 So 2d 1020, 1035, the Supreme Court Stated:

> The "prejudicial conduct" may include remarks of veniremen during voir
> dire. However, mistrial is a drastic remedy that is warranted only when the
> defendant has suffered substantial prejudice such that he cannot receive a
> fair trial. A trial court need not order a new trial absent a showing that the
> comments made by the prospective juror affected other jurors or prejudiced
> the defendant. The determination of whether actual prejudice has occurred
> lies within the sound discretion of the trial judge, and this decision will not
> be overturned on appeal absent an abuse of that discretion. In deciding the
> correctness of the trial court's voir dire rulings, a reviewing court considers
> the entirety of the voir dire record.

The petitioner's first motion for mistrial was raised during voir dire. Counsel for the defendant explained to the trial court that his secretary heard a prospective juror, who had already been released, tell the victim's daughter " in a tone that could be heard by the venire, ' I knew your father, I'm sorry

this happen."' The defendant moved for a mistrial, asserting that the comment inflamed the jury against the defendant and thus was detrimental or prejudicial to his case. In response, the trial court stated "I'm going to deny the motion for a mistrial, unless you can prove to me a juror or all jurors were actually prejudiced in some way towards defendant, Mr. Ramsdell."

The second motion for mistrial was based upon several statements made by prospective jurors during voir dire. The record reveals that prospective juror number 178 related to the trial court that, during the break, he heard a female prospective juror, make a comment that the defendant "looked guilty." Another prospective juror, number 5, explained to the trial court that he heard the same comment made "five or six times" by three or four different prospective jurors. Lastly, counsel for the defendant stated to the trial court that another prospective juror "indicated that someone talked about the hanging jail and in the olden days they would hang them." The defendant made a motion for mistrial, asserting that it would be impossible to obtain a fair trial and impartial trial considering those discussions amongst the prospective jurors.

The State opposed the motion, contending that all of the prospective jurors stated to the trial court that if they had heard such statements, it made no impact on how they would serve as jurors if selected.

The trial court denied the motion, stating that it was clear that some prejudicial statements were made in/or outside the courtroom, but the question was whether the statements made it impossible for the defendant to obtain a fair trial .The trial court  questioned only six prospective jurors about the prejudicial comments; three indicated they had not overheard anything inappropriate, and three indicated that they had heard something, but the comments had not influenced their opinions or ability to remain fair and impartial in the case.

That's 50 %, not a good ingredient for a fair trial pursuant to the Sixth Amendment and the beyond a reasonable doubt standard.

The trial court stated that it believed the appropriate remedy would be to admonish the jury venire to disregard any remarks it may have heard.

The defendant objected to the trial court's ruling.

Lastly, prior to seating the jury, the defendant reurged his motion for mistrial, citing the same grounds as in his second motion for mistrial, and further stating that two prospective jurors indicated that they heard comments contrary to the trial court's admonishment. Those two prospective jurors were released from serving on the jury. The trial court denied the motion for a mistrial, stating that in addition to showing prejudicial conduct, the defendant had to show that the conduct made it impossible to obtain a fair trial. The trial court clearly abused it's discretion in denying defendant's motions for mistrial, thereby denying him the right to a fair and impartial jury and a fair trial. This conviction and sentence should therefore be vacated.

## VI. INSUFFICIENT EVIDENCE TO CONVICT OF FIRST DEGREE MURDER AND CONSPIRACY TO COMIT FIRST DEGREE MURDER
### (Jackson v Virginia, 433 U.S. 307, 99 S. Ct. 2781, (1979))

The evidence indicated that on October 9, 2007, the defendant, Terry Clarkson, and Darrell Bruce were at the home of the victim, John H. Mayeaux. The State contends that the defendant, James E. Ramsdell and Terry Clarkson, conspired to commit Armed Robbery, Aggravated Burglary and to kill the decedent, John H. Mayeaux. The defendant was at the home of the victim as a result of Terry Clarkson advising the defendant and the juvenile, Bruce, that he was to meet an individual by the name of, Richard Young, to help him load material from the victim's property. The evidence would show that the defendant and Darrell Bruce were scheduled to go to Toledo Bend to work for Ken Loftin, an individual whom James E. Ramsdell often did work for over a period of time. During the course of

being at the residence, John H. Mayeaux was shot, it is alleged by the State of Louisiana, by the defendant, James E. Ramsdell. The only witness to testify at the trial that was present at the time of the shooting was the juvenile, Darrell Bruce.

Bruce claims that on the Monday night before the victim was shot that, James E. Ramsdell, said he wanted to "whack Jack" to which Terry Clarkson replied "I have no problem with that". However, after going to the home to retrieve candles of, James E. Ramsdell, by John H. Mayeaux nothing happened to John H. Mayeaux. The evidence established that Bruce gave at least four different statements with the prior three denying any knowledge of any conspiracy to commit the murder of John H. Mayeaux or that the defendant shot and killed John H. Mayeaux. The evidence established that after a weekend with his mother and family in Mississippi the juvenile, Bruce, returned to Beauregard Parish and gave a statement which was rambling in nature and inconsistent in a number of ways.

During cross-examination of Bruce by counsel for the defendant, the witness stated he did not remember the denials or details of what occurred made prior to the last statement given where he advised Law Enforcement that James E. Ramsdell did the shooting.

Mover would show that the most crucial evidence against the defendant would be the testimony of Darrell Bruce whose testimony is simply not credible on a number of issues which formed the basis of the State's prosecution.

The due process standard of review in *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed 2d 560 (1979), preserves the role of the jury as the fact finder in the case but it does not allow jurors " 'to speculate if the evidence is such that reasonable jurors must have reasonable doubt.'" The evidence at trial did not prove beyond a reasonable doubt that petitioner was the shooter of Mr Mayeaux

The State did not carry their burden of proof and therefore the charges of 1st degree murder and conspiracy to commit 1st degree murder should be vacated as a matter of law.

39

## ARGUMENT

Mover would show that the evidence concerning the defendant's guilt on the charge of First Degree Murder is insufficient that the murder occurred while the defendant was engaged in the perpetration or attempted perpetration of Armed Robbery or Aggravated Burglary. The offense of First Degree Murder is defined as following:

> "First Degree Murder is the killing of a human being when the offender has specific intent to kill, or inflict great bodily harm, and is engaged in the perpetration or attempted perpetration of armed robbery or aggravated burglary."

In order to convict the defendant of First Degree Murder the State must prove beyond a reasonable doubt each essential element of the crime of First Degree Murder. The State must prove that the defendant killed John H. Mayeaux, and he acted with specific intent to kill or inflict great bodily harm, and that the defendant committed the murder while in the perpetration or attempted perpetration of Armed Robbery or Aggravated Burglary.

The only evidence adduced at the trial by the State of Louisiana to establish that the killing of John H. Mayeaux occurred during an Armed Robbery or Aggravated Burglary is the uncorroborated testimony of Darrell Bruce. Darrell Bruce never testified that any items of property were removed from the person of John H. Mayeaux or within the areas of his immediate control by use of force or intimidation while the offender was armed with a dangerous weapon. In order to find that an Armed Robbery occurred, the State must prove beyond a reasonable doubt the following:

1. The defendant intentionally took something of value belonging to another;
2. That the thing of value taken was in the possession or immediate control of John H. Mayeaux when taken;
3. The defendant used force or intimidation in order to accomplish the taking; and that
4. The defendant was armed with a dangerous weapon which was a firearm.

The testimony of Darrell Bruce fails to establish beyond a reasonable doubt that the defendant

took anything of value which was in the possession or immediate control of John H. Mayeaux. The evidence established that John H. Mayeaux was killed while standing outside of his home and subsequent to the killing a number of movable items were removed from the property and the home. There is no testimony that anything was removed from the person or within the decedent's immediate control. The State of Louisiana has failed to establish that the killing occurred during the perpetration or attempted perpetration of Armed Robbery.

The State of Louisiana sought to establish that an Aggravated Burglary occurred also through the testimony of Darrell Bruce. Aggravated Burglary is described as the following:

> "The unauthorized entering of an inhabited dwelling or of any structure or movable where a person is present with the specific intent to commit a felony therein if the defendant is armed with a dangerous weapon, or arms himself with a dangerous weapon after entering."

The evidence clearly demonstrated at the trial of this matter that when the defendant entered the home of John H. Mayeaux he had already been killed. There was no burglary as defined under the statute and the elements therefore and the State of Louisiana has failed to establish that guilt beyond a reasonable doubt.

The defendant would further argue that the State of Louisiana failed to establish that the defendant was guilty of the charge of Criminal Conspiracy to Commit First Degree Murder. Criminal Conspiracy to Commit First Degree Murder is defined as follows:

> "A criminal conspiracy is the agreement or combination of two or more persons for the specific purpose of committing any crime; provided that an agreement or combination to commit a crime shall not amount to criminal conspiracy unless, in addition to such agreement or combination, one or more of such parties doesn't act in furtherance of the object, of the agreement, or combination."

In order for the defendant to be guilty of the charge of Criminal Conspiracy to Commit First Degree Murder the State of Louisiana must prove each and every element of the offense beyond a reasonable doubt. In order to find James E. Ramsdell, the defendant herein, guilty of Criminal

41

Conspiracy to Commit First Degree Murder the State of Louisiana must prove beyond a reasonable doubt that the defendant entered into an agreement or combination with Terry L. Clarkson and that the specific purpose of the agreement or combination was to commit the crime of First Degree Murder and that James E. Ramsdell, or Terry L. Clarkson did act in furtherance of the object of the agreement or combination.

The only evidence adduced at the trial to establish that a criminal conspiracy occurred was the testimony of Darrell Bruce. The testimony of Darrell Bruce was inconsistent with respect to the issue of whether or not there was a criminal conspiracy to kill John H. Mayeaux. He gave different versions of how the murder was to be committed and different ways that it was to be committed which were inconsistent with one another. It is unconscionable that an eye witness to a crime can fail to remember such minor details as where the victim was shot. Bruce, in his testimony, testified that the victim had been shot in the chest, when in truth and in fact he had been shot in the back and never been shot in the chest area. In addition, he could not remember any facts that the evidence showed even though he claims to have seen everything. His testimony was that when he saw the weapon he turned and closed his eyes and did not look at what happened. The testimony of this witness is simply not credible. The witness had the ability and opportunity to observe and remember things which form the basis of the prosecution. However, a review of his testimony indicates that he did not see the things which he testified to.

The defendant would further show that it is obvious that by the charge placed against Darrell Bruce as a juvenile that he was shown considerable consideration by the State of Louisiana. Rather than being charged with First Degree Murder, he was charged as an Accessory After the Fact, as a Juvenile. The petition filed to adjudicate Bruce as a delinquent has never been brought to trial even it was filed some two years ago. Clearly, Darrell Bruce, had a self interest in the outcome of the case and his testimony was colored by his desire for leniency.

42

The testimony of Darrell Bruce is not sufficient to establish the essential elements of criminal conspiracy to commit first degree murder. In the alleged confession that was entered into this trial, petitioner denied shooting the victim. The due process standard of review in Jackson v. Virginia, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed 2d 560 (1979), preserves the role of the jury as the fact finder in the case but it does not allow jurors " 'to speculate if the evidence is such that reasonable jurors must have reasonable doubt.'" The evidence at trial did not prove beyond a reasonable doubt that defendant specifically intended to kill the victim nor that he conspired to do such.

The State did not carry their burden of proof and therefore the charges of 1st degree murder and conspiracy to commit 1st degree murder should be vacated as a matter of law.

## VII. PETITIONER SUBMITS THAT THE CUMULATIVE EFFECT OF THE ERRORS RAISED HEREIN DENIED HIM A FUNDAMENTALLY FAIR ADVERSARIAL PROCEEDING.

Petitioner contends that the trial court made rulings contrary to clearly established federal law, and that his counsel was ineffective in a number of areas thereby denying him a fair trial.

In *Taylor v. Kentucky* the Court accepted the notion that several errors, none of which individually rise[s] to constitutional dimensions, may have the cumulative effect of denying a defendant a fair trial. Indeed, in *Taylor* the Court reversed a state conviction upon a finding that "the cumulative effect of the potential damaging circumstances of the case violated the due process guarantee of fundamental fairness...." *Taylor v. Kentucky*, 436 U.S. 478, 487 n. 15, 98 S.Ct. 1930, 56 L. Ed.2d 468 (1978). *Taylor* came before the Court on direct appeal from a state conviction. The same -- or similar -- concerns are germane to cases on collateral review. After all, if the foundation of cumulative error review is the guarantee of a fair trial based in the due process clause of the Fourteenth Amendment, there is no reason to suppose that the basic qualities of this constitutional protection are any different on habeas review than it is on direct appeal.

43

Indeed, it is not surprising that the Courts have increasingly adopted an approach in habeas corpus that has focused on the totality of the circumstances of a trial under review. *See, e.g., Darden v. Wainwright,* 477 U.S. 168, 182, 106 S.Ct. 2464, 2472, 91 L. Ed.2d 144 (1986)(prosecutor's allegedly erroneous statements assessed in terms of "their effect on the trial as a whole"); *Strickland v. Washington,* 466 U.S. 668, 690, 104 S.Ct. 2052, 2066, 80 L. Ed. 2d 674 (1984)(when reviewing counsel's effectiveness, court must look to all the circumstances of the trial); *Moran v. Burbine,* 475 U.S. 412, 421, 106 S.Ct. 1135, 1141, 89 L. Ed. 2d 410 (1986)(waiver of constitutional rights assessed in light of the "totality of the circumstances"); *California v. Beheler,* 463 U.S. 1121, 1125, 103 S.Ct. 3517, 3520, 77 L. Ed. 2d 1275 (1983) (custodial status of suspect evaluated in light of the "totality of the circumstances").

There can be no doubt that cumulative effect of the above facts, supported by the record, demonstrate that your petitioner was denied a fundamentally fair trial and effective assistance of counsel as guaranteed him by the Sixth and Fourteenth Amendments of the United States Constitution.

All of the above facts, taken together, establish that the attorney for petitioner was not "counsel reasonably likely to render and rendering reasonably effective assistance." *MacKenna v. Ellis,* 280 F. 2d 592 (5th Cir. 1960). Thus, the cumulative impact of the errors cited herein, require this court to find ineffective assistance of counsel.

## CONCLUSION

Based upon the arguments and case law cited herein, the conviction and sentence should be set aside, and/or an evidentiary hearing ordered. This court should grant all just and equitable relief to which petitioner is entitled to under the law.

Petitioner contends that his conviction and sentence was obtained in violation of the United States Constitution and the Louisiana Constitution.

The decisions made by the trial court are contrary to clearly established law set forth by the

44

United States Supreme Court, and petitioner prays that this Honorable court reverse the the conviction and sentence of petitioner and remand for a new trial.

Respectfully submitted,

James E. Ramsdell # 559207
Main Prison-Walnut-2
Louisiana State Penitentiary
Angola, La. 70712

## CERTIFICATE OF SERVICE

I, James Ramsdell, certify that I have served a copy of the foregoing Petition for Writ of Habeas Corpus upon the United States Western District Clerk of the United States Western District, by sending to Legal Programs here at Louisiana State Prison for scanning to the Eastern District Court, on this 16th day of April, 2013.

I declare under penalty of perjury that the foregoing is true and correct.

Angola, Louisiana.

James E. Ramsdell # 559207
Main Prison-Walnut-2
Louisiana State Penitentiary
Angola, La. 70712