# APPENDIX/EXHIBITS

## <u>APPENDIX</u>

"A"  Third Circuit Court of Appeal, No.2009-2281, ruling on  October 6, 2010

"B" Uniform Application for Post Conviction Relief filed on  on October 3, 2011 into the 36th Judicial District Court.

"C" Denial of Post Conviction  Application on November 4, 2011

"D" Ruling from Third Circuit Court of Appeals denying Supervisory Writs on _____,

2012

"E"  Ruling from Louisiana Supreme Court denying review on April 12, 2013

EX 1  RECEIPT FOR MAILING - OCTOBER 3 2011

of the crime proven beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State ex rel. Graffagnino v. King,* 436 So.2d 559 (La.1983); *State v. Duncan,* 420 So.2d 1105 (La.1982); *State v. Moody,* 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibilities of the witnesses, and therefore, the appellate court should not second guess the credibility determinations of the trier of fact beyond the sufficiency evaluations under the *Jackson* standard of review. *See Graffagnino,* 436 So.2d at 563, *citing State v. Richardson,* 425 So.2d 1228 (La.1983).

First, the defendant contends that there was insufficient evidence to establish beyond a reasonable doubt that he shot the victim. Specifically, the defendant challenges the credibility of D.B.'s testimony identifying the defendant as the shooter. He contends that D.B.'s testimony and statements to police were inconsistent.

[4] Here, first degree murder is defined as the killing of a human being when the offender has the specific intent to kill or to inflict great bodily harm and is engaged in the perpetration or attempted perpetration of certain felonies including, in this case, armed robbery and aggravated burglary. La.R.S. 14:30. The State bears of the burden of proving those elements, along with the burden to prove the identity of defendant as the perpetrator. *State v. Draughn,* 05-1825 (La.1/17/07), 950 So.2d 583.

[2009-1510 La.App. 3 Cir. 5] The record reveals that D.B. was first questioned by Officers Jeanne Faciane and Janet Beebe on October 11, 2007. In that interview, D.B. denied having any knowledge of the victim's murder. Four days later, D.B. was interviewed a second time, by different officers, wherein he reported that the defendant shot and killed the victim. On May 13, 2008, D.B. gave a third statement to Jim McCarty with the district attorney's office and again identified the defendant as the shooter.

The defendant argues that D.B. made statements to officers that he closed his eyes when the victim was shot, but testified at trial that he saw the defendant shoot the victim. At trial, the following exchange took place on D.B.'s cross-examination as he was being questioned about the statements he gave police:

Q All right. And do you remember what you said immediately prior to the shots being fired in Jack's direction? Do you remember what you said when they asked you if you saw him shoot Jack? Do you remember that?

A No, sir.

Q You remember what you said, that you turned around and you closed our eyes? Do you remember

Q You did?

**\*83** A Yes, sir.

Q So you weren't telling the truth when you told them you turned around and you closed your eyes?

[2009-1510 La.App. 3 Cir. 6] A I saw him shoot him the first time, that's when I turned around.

D.B. admitted in testimony that he lied to police when he gave his initial statement on October 11, 2007, but related that he subsequently told police the truth and was telling the truth at this trial. The record reveals that the testimony he provided at trial was consistent with the second and third statements he provided to police wherein he related that he saw the defendant shoot the victim and then turned his head.

The defendant also refers to other inconsistencies in D.B.'s statements, regarding who returned the gun to the defendant's car after the shooting. The record indicates that in D.B.'s second statement to police he related that after the shooting, the defendant put the gun back in his car, and then walked towards the victim. In his third statement, D.B. reported that after the shooting, the defendant gave his gun to Clarkson and instructed Clarkson to put the gun in the defendant's car. At trial, D.B. testified that he was not sure who put the gun back in the defendant's car.

James Brown also testified that he met the defendant while in Beauregard Parish Jail. Brown testified that the defendant told him that he was in jail for murdering "a man named Jack." Brown further testified that the defendant mentioned "shooting somebody four times in the chest, twice in the head."

The record reveals that a search warrant was issued to search the defendant's home, based upon the detectives investigation in addition to D.B.'s statements indicating where some of the victim's stolen property and the murder weapon were located. D.B. identified the murder weapon as a gun belonging to the defendant. He further provided a physical description of the gun, relating that it had a broken clip which had been repaired with tape. Mark Herford, a detective with the Beauregard [2009-1510 La.App. 3 Cir. 7] Parish Sheriff's Office, testified that he found the gun described by D.B. in the defendant's backyard where D.B. had indicated it was buried. The gun and shell casings found at the murder scene were sent to the crime lab. At trial, Charles R. Watson, Jr., a forensic scientist at the Louisiana State Police Crime Laboratory, testified that the casings found at the scene matched the gun seized from the defendant's house. John Loftin, the victim's neighbor, testified that the gun seized was the same gun he had sold the defendant. In a statement to police, which was entered into the record, the defendant stated that he owned a .45

property allegedly stolen from the victim including a four-wheeler and other tools.  Chief Deputy of the Beauregard Sheriff's Office, Joe Toler, testified the he recovered various firearms and ammunition inside the defendant's home where D.B. indicated those stolen weapons would be found.

[5]  As the fact finder, a jury makes credibility determinations and may, within **\*84** the bounds of rationality, accept or reject the witness's testimony; thus on review, a court may impinge on the discretion of the fact finder only to the extent necessary to guarantee the fundamental due process of law.  *State v. Neal,* 00-674 (La.6/29/01), 796 So.2d 649, *cert. denied,* 535 U.S. 940, 122 S.Ct. 1323, 152 L.Ed.2d 231 (2002), citing *State v. [2009-1510 La.App. 3 Cir. 8 ] Mussall,* 523 So.2d 1305 (La.1988)  To view preceding link please click here  .  We find that when reviewing the record in a light most favorable to the State, a rational trier of fact could reasonably conclude that the defendant shot Mr. Mayeaux.  The jury heard D.B.'s testimony identifying the defendant as the shooter and chose to accept that testimony.  The record reveals that while there appear to be inconsistencies in D.B.'s statements, none of these inconsistencies involve the identity of the defendant as the shooter or raise the possibility that someone else committed the crime.  "Jurisprudence holds that 'a jury may rely on a single witness's testimony to establish a factual element required to prove guilt, provided there is no internal contradiction or irreconcilable conflict with physical evidence."  *State v. Clark,* 00-818, p. 4 (La.App. 3 Cir. 12/6/00), 780 So.2d 418, 421, *writ denied,* 01-992 (La.3/22/02), 811 So.2d 922, quoting *State v. Bernard,* 98-994, p. 7 (La.App. 3 Cir. 2/3/99), 734 So.2d 687, 691.  In brief, the defendant argues that the physical evidence found in his home "could have easily been planted" by D.B. or Clarkson.  He also asserts that it is "not inconceivable" that his brother, who was feuding with the victim at the time of his death, was the shooter.  However, the defendant does not point to any evidence in the record to support these allegations or expose an irreconcilable conflict between the testimony adduced at trial and the physical evidence.  Accordingly, we find that when reviewing the record in a light most favorable to the State, a rational trier of fact could reasonably conclude that the defendant shot Mr. Mayeaux.

[6]  The defendant also asserts, in the alternative, that even if it were to be found that he was involved in the murder of Mr. Mayeaux, there was insufficient evidence to establish that he intended to rob Mr. Mayeux or burglarize his home because the "robbery/burglary was an afterthought, and took place after Mayeaux was dead."

[2009-1510 La.App. 3 Cir. 9] At trial, D.B. testified that the night before the murder, the defendant said "we should kill Jack."  He further testified that the defendant expressed that he wanted to kill Mr.

484.  Rather, the determination of whether a murder was committed in the perpetration of a certain felony is whether the murder and the felony form a continuous transaction without a significant break of events.  *Id.*  Here, on review of the evidence, the record supports a determination that Mr. Mayeaux's murder facilitated the robbery and burglary.  D.B. testified that the defendant desired to kill Mr. Mayeaux to effectuate a taking of his belongings.  Further, D.B.'s testimony indicates that there was no significant break in the chain of events between the time the shots were fired and the men left Mr. Mayeaux's property.

This assignment of error lacks merit.

### *\*85 Double Jeopardy*

[8]  The defendant asserts that his constitutional guarantees prohibiting double jeopardy were violated by his convictions and sentences for both first degree murder and armed robbery.  He contends that because armed robbery was the predicate offense used to convict him of first degree murder, multiple punishments were imposed for what was a single criminal act.

[2009-1510 La.App. 3 Cir. [PG10] The defendant first raised the double jeopardy issue in a Motion to Quash the Predicate Offenses of Armed Robbery and Aggravated Burglary.  The trial court denied the motion and the defendant took supervisory writs to this court.  The writ was denied stating that the defendant had an adequate remedy on this issue on appeal.  *State v. Ramsdell,* 09-994 (La.App. 3 Cir. 8/18/09)(an unpublished writ opinion).  Following his convictions, the defendant filed a Motion to Set Aside Verdict of Jury, asserting that his convictions for armed robbery, aggravated burglary, and first degree murder violated his protection against double jeopardy.  At the hearing on the motion, the trial court explained that the State was allowed to proceed under alternative underlying predicate offenses for the first degree murder charge because the protection against double jeopardy did not apply until the defendant has been sentenced.  However, the trial court noted that "it would be error for me today to sentence him to both first-degree murder and armed robbery and aggravated burglary."  Because the defendant was found guilty of both armed robbery and aggravated burglary, the trial court stated that the proper remedy was to vacate the defendant's conviction for the less severely punishable offense, aggravated burglary.  (FN2)  Accordingly, the trial court vacated the defendant's conviction for aggravated burglary.

[9]  The Double Jeopardy provisions in the state and federal constitutions protect a defendant from both a second prosecution for the same offense and multiple [ 2009-1510 La.App. 3 Cir. [PG11] punishments for the same criminal act.  U.S. Const. amend. V;  La. Const. art. 1, § 15;  *State v. Doughty,* 379 So.2d 1088

15/06), 944 So.2d 1284.

[10] As explained above, in this case, the State prosecuted and charged the defendant with first degree murder based upon the underlying offense of armed robbery or aggravated burglary. While in brief the defendant contends that the jury based its first degree murder conviction on the underlying offense of armed robbery, the jury's intent in rendering its verdict, specifically which offense it attributed to fulfill the elements of first degree murder, cannot be discerned from the record before us. Nevertheless, the convictions can be upheld if there is sufficient evidence to support either theory. *Cox,* 4 So.3d 998. Here, it is clear that the defendant's protection **\*86** from double jeopardy was violated when he was convicted and sentenced to first degree murder, armed robbery, *and* aggravated burglary. However, the trial court imposed the proper remedy by vacating the conviction and sentence for aggravated burglary, the less severely punishable offense. *Doughty,* 379 So.2d 1088; *State ex rel. Adams v. Butler,* 558 So.2d 552 (La.1990); *Cox,* 4 So.3d 998; *State v. [2009-1510 La.App. 3 Cir. [PG12] Pittman,* 95-382 (La.App. 5 Cir. 10/1/96), 683 So.2d 748; To view preceding link please click here *State v. Head,* 598 So.2d 1202 (La.App. 5 Cir.1992).

Additionally, the record supports a determination that under the facts of this case, armed robbery and first degree murder were separate and distinct offenses and thus do not violate double jeopardy. Here, first degree murder requires proof of the specific intent to kill or cause great bodily harm, whereas armed robbery does not. La.R.S. 14:30;  La.R.S. 14:64;  *See also Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932);  *State v. Williams,* 07-931 (La.2/26/08), 978 So.2d 895.  Further, the defendant could have been convicted of first degree murder without any proof that an armed robbery occurred.

This assignment is without merit.

*Motions for Mistrial*

The defendant assigns error to the trial court's denial of several motions for mistrial made as a result of prospective jurors' comments in the presence of the jury venire. According to La.Code.Crim.P. art. 775(6), a mistrial may be ordered when "[f]alse statements of a juror on voir dire prevent a fair trial."  In *State v. Carmouche,* 01-405, p. 20 (La.5/14/02), 872 So.2d 1020, 1035 (citations omitted), the supreme court stated:

The "prejudicial conduct" may include remarks of veniremen during voir dire. However, mistrial is a drastic remedy that is warranted only when the defendant has suffered substantial prejudice such that he cannot receive a fair trial. A trial court need not order a new trial absent a showing that comments made by a prospective juror affected other jurors or

raised during *voir dire.*   Counsel for the defendant explained to the trial court that his secretary heard a prospective juror, who had been already been released, tell the victim's daughter "in a tone that could be heard by the venire, 'I knew your father, I'm sorry this happened.' "  The defendant moved for a mistrial, asserting that the comment inflamed the jury against the defendant and thus was detrimental or prejudicial to his case.  In response, the trial court stated "I'm going to deny the motion for a mistrial, unless you can prove to me a juror or all the jurors were actually prejudiced in some way towards the defendant, Mr. Ramsdell."

The record reflects that the defendant did not contemporaneously object to the trial court's ruling, and under La.Code Crim.P. art. 841, "[a]n irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence."  Accordingly, we will not address the merits of the defendant's argument with regard to this motion, as it is not properly before this court for the first time on appeal.

*\*87 Second Motion for Mistrial*

[12] The second motion for mistrial was based upon several statements made by prospective jurors during *voir dire.*   The record reveals that prospective juror number 178 related to the trial court that, during a break, he heard a female prospective juror make a comment that the defendant "looked guilty."  Another prospective juror, number 5, explained to the trial court that he heard the same comment made "five or six times" by three to four different prospective jurors. Lastly, counsel for the defendant stated to the trial court that another prospective juror "indicated that someone talked about the hanging jail and that in the olden days they would hang [2009-1510 La.App. 3 Cir. [PG14] them."  The defendant made a motion for mistrial, asserting that it would be impossible to obtain a fair and impartial trial considering those discussions amongst the prospective jurors.

The State opposed the motion, contending that all of the prospective jurors stated to the trial court that if they had heard such statements, it made no impact on how they would serve as jurors if selected. Accordingly, the State maintained that there was no evidence of prejudice to support the motion for mistrial.

The trial court denied the motion, stating that it was clear that some prejudicial statements were made in and/or outside the courtroom, but the question was whether the statements made it impossible for the defendant to obtain a fair trial.  The trial court explained that it questioned six prospective jurors about the prejudicial comments;  three indicated they had not overheard anything inappropriate, and three indicated that they had overheard something, but the comments had not influenced their opinions or ability to remain fair and impartial in the case.

objected to the court's ruling, he did not provide an explanation of how the prospective jurors' remarks affected the jury venire or prejudiced the defendant. The *voir dire* record as a whole does not support a finding that the trial court abused its discretion in denying the defendant's [2009-1510 La.App. 3 Cir. [PG15] motion for mistrial. *See Carmouche,* 872 So.2d 1020. The record reveals that the prospective jurors who actually heard the comments responded in the affirmative that their ability to serve as fair and impartial jurors had not been compromised. The defendant further does not provide evidence to the contrary.

*Third Motion for Mistrial*

Lastly, prior to seating the jury, the defendant reurged his motion for mistrial, citing the same grounds as in his second motion for mistrial, and further stating that two prospective jurors indicated that they heard comments contrary to the trial court's admonishment. The record does not indicate what the comments were, however, it does indicate that those two prospective jurors were released from serving on the jury. The trial court denied the motion for mistrial, stating that in addition to showing prejudicial conduct, the Defendant had to show that the conduct made it impossible to obtain a fair trial. Through the questioning of the prospective jurors, the trial court concluded that "it is abundantly clear" ... "that Mr. Ramsdell's right to a fair trial is not impinged by any comments that were made."

**\*88.** Because the defendant cited no ground other than those urged previously, we find that based upon the forgoing reasons, the record does not support a finding that the trial court abused its discretion in denying the defendant's third motion for mistrial.

Accordingly, this assignment of error is without merit.

### DECREE

For the foregoing reasons, the defendant's convictions are affirmed. The defendant's armed robbery sentence is affirmed as amended.

**CONVICTIONS AFFIRMED. ARMED ROBBERY SENTENCE AFFIRMED AS AMENDED.**

(FN1.) In accordance with Uniform Rules, Courts of Appeal, 5-2, initials will be used to "ensure the confidentiality of a minor who is a party to or whose interests are the subject matter in the proceedings[.]"

(FN2.) The punishment for aggravated burglary is imprisonment for not less than one nor more than thirty years. La.R.S. 14:60. The punishment for armed robbery is imprisonment at hard labor for not less than ten years and for not more than ninety-nine years, without benefit of parole, probation, or suspension of sentence. La.R.S. 14:64.

THIRTY-SIXTH JUDICIAL DISTRICT COURT
PARISH OF BEAURGARD
STATE OF LOUISIANA

FILED
2007 OCT -7 PM 1: 14
CLERK OF COURT
BEAUREGARD PARISH

DOCKET NUMBER: CR 974-07

JAMES E. RAMSDELL
Petitioner

VERSUS

N. BURL CAIN, WARDEN
Louisiana State Penitentiary
Respondent

---

## Application For Post Conviction Relief with Memorandum of Law in Support and Request for Evidentiary Hearing

---

Original Post-Conviction filed by James E. Ramsdell, Pro se Petitioner

Respectfully submitted,

*James E. Ramsdell*

James E. Ramsdell # 559207
Main Prison-Walnut-2
Louisiana State Penitentiary
Angola, La. 70712

EX 'B'

## APPENDIX "A"
Adopted October 14, 1976
Effective January 1, 1977

## UNIFORM APPLICATION FOR POST-CONVICTION RELIEF

*JAMES E. RAMSDELL*
NAME OF PETITIONER

NO. CR-974-07
(to be filled in by the clerk)

559207
PRISON NUMBER

*36TH* JUDICIAL DISTIRCT COURT

PARISH OF *BEAURGARD*
STATE OF LOUISIANA

*Louisiana State Penitentiary*
PLACE OF CONFINEMENT

Filed: October 7, 2011
By: Mary LeBlec
Dy Clerk

VERSUS

*N. Burl Cain, Warden*
CUSTODIAN (Warden, Superintendent, Jailor, or
authorized person having custody of petitioner)

Please serve *CUSTODIAN* and *DAVID W. BURTON,* DISTRICT ATTORNEY, *36TH* JUDICIAL
DISTRICT , STATE OF LOUISIANA

## PETITION

1.  Name and location of court which entered the judgment of conviction challenged:
    **36th Judicial District Court, Parish of Beauregard**
2.  Date of judgment of conviction: **September _____ 2009**

3.  Length of sentence: **Life w/o Benefits; 150 yrs**

4.  Nature of offense involved (all counts): **Ct. 1, 1ˢᵗ degree murder; Ct.2, Criminal Conspiracy
    to commit 1ˢᵗ degree murder; Ct. 3, Armed robbery; Ct. 4, Aggravated Burglary; Ct. 5,
    Theft of firearms; Ct. 6, Theft of a moveable over $500.00.**

5.  What was your plea?   (check one)
    (a)   Not guilty [ X ]
    (b)   Guilty [  ]
    (c)   Not guilty and not guilty by reason of insanity [  ]
          If you entered a guilty plea to one or more counts and not guilty to other counts,
          give details: _____
          _____

    (d)   Names and address of lawyers representing you at your plea (if you had no lawyer,
          please indicate): **Elvin C. Fontenot, 110 E. Texas St. , Leesville, La. 71441**

    (e)   Was the lawyer appointed [ ☞ ] or hired [X]? (check one)

6.  Kind of trial:  (a)    Jury [ X ]   (b)    Judge only [  ]

7.  (a)   Name and address of the lawyer representing you at your trial:
          **Elvin C. Fontenot, 110 E. Texas St. , Leesville, La. 71441**

    (b)   Was the lawyer appointed [  ] or hired [ X ]? (check one)

8.  Did you testify at the trial?  Yes [  ]    No [ X ]

9.   (a)   Give the name and address of the lawyer who represented you at sentencing for the conviction being attacked herein: **Elvin C. Fontenot, 110 E. Texas St. , Leesville, La. 71441**
_____

     (b)   Was the lawyer appointed [   ] or hired [ X ]? (check one)

10.  Did you appeal from the judgment of conviction?   Yes [ X ]   No [   ]

11.  If you did appeal, give the following information:
     (a)   Citation, docket number, and date of written opinion by appellate court (if known):
           **47 So 3d 78, La App. 3 Cir 10/6/10**

     (b)   Name and address of lawyer representing you on appeal: **Edward K. Bauman, La. Appellate Project, P.O. Box 1641, Lake Charles, La.  70602**

     (c)   Was the lawyer appointed [ X ] or hired [   ]? (check one)

12.  Other than a direct appeal form the judgment of conviction and sentence, have you previously filed any application for post-conviction relief with respect to this judgment in any state or federal court?   Yes [   ]   No [ X ]

13.  If your answer to 12 is "Yes", give the following information:
     (a)   (1)   Name of court: _____
     
           (2)   Nature of proceeding: _____
     
           (3)   Claims raised: _____
                 _____
                 _____
                 _____
                 _____
                 _____
                 _____
                 _____

           (4)   Did you receive an evidentiary hearing on your application?
                 Yes [   ]   No [   ]
           (5)   Was relief granted [   ] or denied [   ]?
           (6)   Date of disposition: _____
           (7)   Citation of opinion (if known): _____
           (8)   Name and address of lawyer  representing you (if none, so state):
                 _____
           (9)   Was the lawyer appointed [   ] or hired [   ]? (check one)
     (b)   As to any second application give the same information: _____
           _____
           (1)   Name of court: _____
     
           (2)   Nature of proceeding: _____
     
           (3)   Claims raised: _____
                 _____
                 _____
                 _____
                 _____
                 _____
                 _____
                 _____

           (4)   Did you receive an evidentiary hearing on your application?
                 Yes [   ]   No [   ]
           (5)   Was relief granted [   ] or denied [   ]?
           (6)   Date of disposition: _____

           (7)   Citation of opinion (if known): _____

(8)    Name and address of lawyer representing you (if none, so state):

_____

(9)    Was the lawyer appointed [   ] or hired [   ]? (check one)

(c)    Have you filed any other applications for post-conviction relief with respect to the challenged conviction?    Yes [   ]    No [ X ]
If "yes", set forth the details (as above) on separate paper and attach.

(d)    Did you appeal or seek writs of review from the denial of any post-conviction application?

    (1)    First petition, etc.    Yes [   ]    No [   ]
    (2)    Second petition, etc. Yes [   ]    No [   ]

(e)    If you did not appeal or seek writs from the denial of any post-conviction application, explain briefly why you did not: _____

_____

(f)    Name of the lawyer who represented you on appeal from the denial of any post-conviction application [if none, so state]:

    (1)    First petition: _____
    (2)    Second petition: _____


## CLAIM[S] FOR RELIEF


CLAIMS: SEE MEMORANDUM ATTACHED

_____

_____

(a)    Supporting FACTS (tell your story briefly without citing cases or law):

_____

_____

_____

_____

_____

_____

_____

(b)    List names and addresses of witnesses who could testify in support of your claim. If you cannot do so, explain why: Elvin C. Fontenot, 110 E. Texas St. , Leesville, La. 71441 ;

Terry Chapman, Robin Chapman, Brandy Haughs and Jon Franks; address u/k at this time

(c)    If you failed to raise this ground in the trial court prior to conviction, on appeal or in a prior application, explain why: These claims better raised of post conviction ; Claims 4 and 5 should be herd in the interest of justice _____

A.   Do you have in a state or federal court any petition or appeal now pending as to the judgment challenged?        Yes [  ]     No [ X ]     If "yes", name the court:

_____

B.   Do you have any future sentence to serve after you complete the sentence imposed by the judgment challenged?     Yes [  ]     No [ X ]

(1)   If so, give name and location which imposed sentence to be served in the future:

_____
_____
_____

(2)   Give date and length of sentence to be served in the future: _____

_____

(3)   Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?     Yes [  ]     No [  ]

C.   If a copy of the court order sentencing you to custody is not attached, explain why:
**Attached**

_____

**WHEREFORE**, Petitioner prays that the Court grants Petitioner relief to which he may be entitled.

Respectfully submitted by:

Petitioner:     *James Ramsdell* #559207
Print Name:     James E. Ramsdell # 559207
                Main Prison-Walnut-2
                Louisiana State Penitentiary
                Angola, La.  70712


## APPLICATION FOR APPOINTMENT OF COUNSEL

I am unable to employ counsel to represent me in this matter because I have no assets or funds except for any money which may be in my prison account. See Statement of Account (Write "NONE" below if you have nothing; otherwise, list your assets including funds in prison accounts.)

NONE

*James E Ramsdell* #359207
(Petitioner)
James E. Ramsdell # 559207

## TABLE OF CONTENTS

MEMORANDUM OF LAW AND FACTS IN SUPPORT OF ........................................ 1

STATEMENT OF JURISDICTION ........................................................................... 1

STATEMENT OF CASE .......................................................................................... 1

STATEMENT OF FACTS ......................................................................................... 2

ISSUES PRESENTED FOR REVIEW ....................................................................... 3

LAW AND ARGUMENT

CLAIM I ................................................................................................................. 4

        PETITIONER'S FIFTH, SIXTH AND FOURTEENTH
        AMENDMENT RIGHTS WERE VIOLATED WHEN HE WAS
        DENIED HIS RIGHT TO TESTIFY

CLAIM II ............................................................................................................. 10

        INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL;
        A VIOLATION OF THE FIFTH, SIXTH, AND FOURTEENTH
        AMENDMENTS TO THE U.S. CONTITUTION;
        AND ARTICLE I § 13, OF THE LOUISIANA CONSTITUTION.
        (See, Strickland v. Washington, 466 U.S. 668 (1984 )

CLAIM III ............................................................................................................ 18

        DOUBLE JEOPARDY-VIOLATION OF DUE PROCESS
        U.S. CONST. 14TH AND 5TH AMEND.

CLAIM VI ............................................................................................................ 19

        TRIAL COURT'S ABUSE OF DISCRETION;
        DENIAL OF A FAIR AND IMPARTIAL JURY
        VIOLATION OF 6TH AMEND. U.S. CONST.

CLAIM V ............................................................................................................. 22

        INSUFFICIENT EVIDENCE TO CONVICT OF
        FIRST DEGREE MURDER AND CONSPIRACY
        TO COMIT FIRST DEGREE MURDER
        (Jackson v. Virginia,

CLAIM VI ............................................................................................................ 27

        PETITIONER SUBMITS THAT THE CUMULATIVE EFFECT OF THE
        ERRORS RAISED HEREIN DENIED HIM A FUNDAMENTALLY FAIR
        ADVERSARIAL PROCEEDING.

CONCLUSION ..................................................................................................... 28

THIRTY-SIXTH JUDICIAL DISTRICT COURT
**PARISH OF BEAUREGARD**
**STATE OF LOUISIANA**

STATE OF LOUISIANA, EX REL                    CASE NO. CR-974-2007
JAMES E. RAMSDELL,
            *Petitioner*

VERSUS                                        *Filed October 7, 2011* DIVISION B
                                              *By: Mary LeBle*
BURL CAIN, WARDEN,
                                                            *D/CLERK*
            *Respondent.*


## MEMORANDUM OF LAW AND FACTS IN SUPPORT OF AN APPLICATION FOR POST CONVICTION RELIF

**MAY IT PLEASE THE COURT:**

Now into court comes James E. Ramsdell, (petitioner herein), and moves this court pursuant to the **Fifth, Sixth, and Fourteenth Amendments to the United States Constitution**; and **Article I, § 1,2,3, 13, 16, 17, 19, 20, 22, and 24, of the Louisiana Constitution**; and **Article 930, and 930.3**. of the **La C. Cr. P.**, to grant Post-Conviction Relief.

Petitioner further moves this court to grant an evidentiary hearing on his claims – to ensure the maintenance of his rights under *La. C. Cr. P. Article 924*, et. Seq.- and to protect his guarantees to due process and equal protection. Petitioner specifically reserves the right to supplement this petition with additional legal arguments and relevant facts in support thereof, including facts developed should further records or discovery be provided.

### STATEMENT OF JURISDICTION

Jurisdiction is properly vested in this court in accordance with LSA-Const. Art. I § 22; **LSA-Const.-Art. V, § 16; and La. C. Cr. P. Art. 924 et. Seq.**

### STATEMENT OF CASE

Defendant herein, **James E. Ramsdell**, was charged in Bill of Indictment No. CR-974-2007, with the following: Count 1: First Degree Murder, in violation of La. R.S. 14:3, Count 2: Criminal Conspiracy to Commit First Degree Murder, in violation of La. R.S. 14:26 and La. R.S. 14:30, Count 3: Armed Robbery, in violation of La. R.S. 14:64, Count 4: Aggravated Burglary, in violation of La. R.S. 14:60, Count 5: Left of Fire Arms, in violation of

1

La. R.S. 14:67.15, and Count 6: Theft of Movable Property Having a Value of Over $500.00, in violation of La. R.S. 14:67.

The defendant appeared at his arraignment and entered pleas of not guilty to all counts of the Bill of Indictment and this matter was set for trial. Trial was ultimately held on August 17, 2009.

The defendant, after the trial of this proceeding, was found guilty of Counts 1-6 of this indictment.

## STATEMENT OF FACTS

The evidence indicated that on October 9, 2007, the defendant, Terry Clarkson, and Darrell Bruce were at the home of the victim, John H. Mayeaux. The State contends that the defendant, **James E. Ramsdell** and Terry Clarkson, conspired to commit Armed Robbery, Aggravated Burglary and to kill the decedent, John H. Mayeaux. The defendant was at the home of the victim as a result of Terry Clarkson advising the defendant and the juvenile, Bruce, that he was to meet an individual by the name of, Richard Young, to help him load material from the victim's property. The evidence would show that the defendant and Darrell Bruce were scheduled to go to Toledo Bend to work for Ken Loftin, an individual whom James E. Ramsdell often did work for over a period of time. During the course of being at the residence, John H. Mayeaux was shot, it is alleged by the State of Louisiana, by the defendant, James E. Ramsdell. The only witness to testify at the trial that was present at the time of the shooting was the juvenile, Darrell Bruce.

Bruce claims that on the Monday night before the victim was shot that, James E. Ramsdell, said he wanted to "whack Jack" to which Terry Clarkson replied "I have no problem with that". However, after going to the home to retrieve candles of, James E. Ramsdell, by John H. Mayeaux nothing happened to John H. Mayeaux. The evidence established that Bruce gave at least four different statements with the prior three denying any knowledge of any conspiracy to commit the murder of John H. Mayeaux or that the defendant shot and killed John H. Mayeaux. The evidence established that after a weekend with his mother and family in Mississippi the juvenile, Bruce, returned to Beauregard Parish and gave a statement which was rambling in nature and inconsistent in a number of ways.

During cross-examination of Bruce by counsel for the defendant, the witness stated he did not remember the denials or details of what occurred prior to the last statement given where he advised Law Enforcement that James E. Ramsdell did the shooting.

## ISSUES PRESENTED FOR REVIEW

### CLAIM NO. 1

PETITIONER'S FIFTH, SIXTH AND FOURTEENTH AMENDMENT
RIGHTS WERE VIOLATED WHEN HE WAS DENIED
HIS RIGHT TO TESTIFY; INEFFECTIVE ASSITANCE OF COUNSEL

### CLAIM NO. 2

INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL;
A VIOLATION OF THE FIFTH, SIXTH, AND FOURTEENTH
AMENDMENTS TO THE U.S. CONTITUTION;
AND ARTICLE I § 13, OF THE LOUISIANA CONSTITUTION.
(See, Strickland v. Washington, 466 U.S. 668 (1984 )

A. Failure to File Motion to Suppress Confession

B. Trial counsel failed to present a defense, and to have compulsory process for obtaining witnesses in his behalf.

C. Petitioner was denied his Constitutional right to have Effective Assistance of counsel when his trial counsel failed to present a defense, and to have compulsory process for obtaining witnesses in his behalf.

D. Trial counsel deprived petitioner of his Sixth Amendment Right to a fair trial when counsels failed to request a special jury instruction

### CLAIM NO. 3

DOUBLE JEOPARDY-VIOLATION OF DUE PROCESS
U.S. CONST. 14TH AND 5TH AMEND.

### CLAIM NO. 4

TRIAL COURT'S ABUSE OF DISCRETION;
DENIAL OF A FAIR AND IMPARTIAL JURY
VIOLATION OF 6TH AMEND. U.S. CONST.

### CLAIM 5

INSUFFICIENT EVIDENCE TO CONVICT OF
FIRST DEGREE MURDER AND CONSPIRACY
TO COMIT FIRST DEGREE MURDER
(Jackson v. Virginia,

## CLAIM 6

**PETITIONER SUBMITS THAT THE CUMULATIVE EFFECT OF THE ERRORS RAISED HEREIN DENIED HIM A FUNDAMENTALLY FAIR ADVERSARIAL PROCEEDING.**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## LAW AND ARGUMENT

### CLAIM NO. 1

**PETITIONER'S FIFTH, SIXTH AND FOURTEENTH AMENDMENT RIGHTS WERE VIOLATED WHEN HE WAS DENIED HIS RIGHT TO TESTIFY. INEFFECTIVE ASSISTANCE OF COUNSEL**

Petitioner contends that he was denied his right to testify by defense counsel's decision alone. Well in advance of trial and before the defense rested, it was discussed between the petitioner and trial counsel that he would need to testify because the jury would want to hear his side of just what happen and that he would testify on his own behalf that he did not shoot the victim, John H. Mayeaux, as he had stated in his statement to police. But trial counsel rested without calling Mr. Ramsdell to the stand, even after Mr Ramsdell's insistence that he wanted to testify. Trial counsel told petitioner that "he was not going to put him on the stand . . . the State had the burden of proof and he did not feel that they proved that burden". . . After petitioner still insisted on testifying , counsel told him that "*it's my decision to make on whether or not to put you on the stand, not yours.*"

The record will show that the evidence in this case was very close. The only evidence was adduced that petitioner was guilty of 1ˢᵗ degree murder and conspiracy to commit 1ˢᵗ degree murder was the suspect testimony of co-defendant Darrell Bruce.

The State's facts and theory of prosecution was based solely upon conflicting testimony. No one other than Darrell Bruce identified petitioner. Petitioner himself gave a statement saying that he was not the shooter. The Alleged "eye witnesses" gave testimony that was in

conflict with the physical evidence.

Petitioner submits that his testimony would carry just as much weight before a jury as any of the other witnesses and created a  reasonably hypothesis of innocence. Despite petitioner's plea of not guilty, trial counsel denied petitioner the fundamental right to testify in his own defense before the jury who could assess his credibility, and infer a reasonable doubt present from the testimony presented by the state's only alleged witness, who was given a deal for his testimony.  Petitioner's only choice to advocate his cause was for him to take the stand, which he informed counsel he wanted to do.  Nevertheless, counsel rested the defense after only putting on no witnesses.  Failure to present any evidence on behalf of petitioner provided no value to petitioner's purported defense, as the lawyer did not interview, investigate or attempt to find any witnesses that may have been of value.

The United States Supreme Court has recognized a criminal defendant's right to testify is fundamental and personal to the defendant.  "Only such basic decisions as to whether to plead guilty, waive a jury, or testify in one's own behalf are ultimately for the accused to make." *Wainwright v. Sykes*, 433 U.S. 72, 93 n. 1, 97 S.Ct.  2497, 53 L.Ed.2d 594 (1977); see also, *Jones v. Barnes*, 463 U.S. 745, 751, 103 S.Ct.  3308, 77 L.Ed.2d 987 (1983). Accordingly, the Supreme Court had held "there is no rational justification for prohibiting the sworn testimony of the accused, who above all others may be in a position to meet the prosecution's case." *Ferguson v. Georgia*, 365 U.S. 570, 582, 81 S.Ct.  756, 5 L.Ed.2d 783 (1961).

Moreover, the U.S. Supreme Court has been unequivocal in holding that the defendant's right to testify is guaranteed by: (1) the Fifth Amendment's privilege against self-incrimination;[1]  (2) the Sixth Amendment's Compulsory Process Clause;[2] and (3) the Fourteenth Amendment's Due Process Clause.[3]  *Rock v. Arkansas*, 483 U.S. 44, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987).

The Louisiana Constitution also specifically guarantees the defendant the right to testify

---

[1]"[N]or shall [any person] be compelled in any criminal case to be a witness against himself . . ." U.S. Const. Amend. V.

[2]"In all criminal prosecutions, the accused shall enjoy the right to . . .have compulsory process for obtaining witnesses in his favor. . ." U.S. Const. Amend. VI.

[3]"[N]or shall any state deprive any person of life, liberty, or property, without due process of law. . ." U.S. Const. Amend. XIV.

in his own defense.  Therefore, it is appropriate for this court's review of the federal and state

jurisprudence interpreting the aforementioned constitutional provisions.

**(a).  Fifth Amendment**:

The Fifth Amendment to the United States Constitution encompassed the right to remain

silent as well as the right not to do so.  "Every criminal defendant is privileged to testify in his

own defense, or to refuse to do so."  *Harris v. New York*, 401 U.S. 222, 225, 91 S.Ct. 643, 28

L.Ed.2d 1 (1971) (citations omitted).  Furthermore, "[a] defendant's opportunity to conduct his

own defense by calling witnesses is incomplete if he may not present himself as a witness.  The

opportunity to testify is also a necessary corollary to the Fifth Amendment's guarantee against

compelled testimony."  *Rock*, 483 U.S. at 52, 107 S.Ct. 2704.  *Cf. Malloy v. Hogan*, 378 U.S.

1, 8, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964) (noting the 5th Amendment's guarantee against self-

incrimination, unless the defendant chooses to speak).

The Supreme Court has clearly and strongly indicated that the constitutional right to

testify should be treated as fundamental.  *United States v. Teague*, 953 F.2d 1525, 1531 (11th

Cir. 1992) (en banc).  Under the Supreme Court's reasoning in *Rock*, the right to testify

essentially guarantees the right to ultimately choose whether or not to testify. . . A criminal

defendant clearly cannot be compelled to testify by defense counsel who believes it would be in

the defendant's best interest to take the stand.

> It is only logical, as the Supreme Court has reasoned, that the reverse also be true.
> A criminal defendant cannot be compelled to remain silent by defense counsel.
> Teague, 953 F.2d at 1532 (emphasis added).

It is therefore, well-settled that the Fifth Amendment's privilege against self-

incrimination encompasses the personal right to testify in one's defense just as it encompasses

the right not to do so.

**(b).  Sixth Amendment**:

"The right to testify is also found in the Compulsory Process Clause of the Sixth

Amendment, which grants a defendant the right to call 'witnesses in his favor,' a right that is

guaranteed in the criminal courts of the States by the Fourteenth Amendment."  See, *United*

*States v. Valenzuela Bernal*, 458 U.S. 858, 867, 102 S.Ct.  3440, 73 L.Ed.2d 1193 (1982)

(quoting U.S. Const. Amend. VI and noting the defendant's right to produce favorable witness

testimony).

> Logically included in the accused's right to call witnesses whose testimony is 'material and favorable to his defense' is a right to testify himself, should he decide it is in his favor to do so. In fact, the most important witness for the defense in many criminal cases is the defendant himself. There is no justification for a rule which denies an accused the opportunity to offer his own testimony. _Rock_, supra. (emphasis added).

Therefore, "[the Sixth Amendment] grants to accused personally the right to make his defense. It is the accused, not counsel, who must be. . .accorded compulsory process for obtaining witnesses in his favor." _Faretta v. California_, 422 U.S. 806, 819, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).

(c). <u>Fourteenth Amendment</u>:

The right to testify on one's own behalf is one of the rights that is essential to due process in a fair adversary proceeding. See _Faretta_, 422 U.S. at 819, n. 15, 95 S.Ct. 2525. In interpreting the Due Process Clause, the Supreme Court has held:

> [t]he necessary ingredients of the Fourteenth Amendment's guarantee that no one shall be deprived of liberty without due process of law include a right to be heard and offer testimony.

> A person's right to reasonable notice of charge against him and an opportunity to be heard in his defense -a right to his day in court - are basic in our system of jurisprudence; and these rights include, as a minimum, a right to examine the witnesses against him, to offer testimony, and to be represented by counsel. _Rock_, supra (emphasis added).

Thus, "[t]his right [to offer testimony] reaches beyond the criminal trial: the procedural due process constitutionally required in some extra judicial proceedings includes the right of the affected person to testify." Id. (citing _Gagnon v. Scarpelli_, 411 U.S. 778, 782, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973); _Morrissey v. Brewer_, 408 U.S. 471, 489, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972).

After _Rock_, the U.S. Circuit Courts have almost uniformly held a defendant's right to testify is personal and can only be waived by the defendant and not his attorney. See _e.g._ _Brown v. Artuz_, 124 F.3d 73, 77 (2d Cir.1997); _United States v. Pennycooke_, 65 F.3d 9, 10-11 (3d Cir.1995); _United States v. McMeans_, 927 F.2d 162, 163 (4th Cir.1991); _Jordan v. Hargett_, 34 F.3d 310, 312 (5th Cir.1995), _vacated on other grounds_, 53 F.3d 94 (5th Cir.1995) (en banc); _Rogers-Bey v. Lane_, 896 F.2d 279, 283 (7th Cir.1990); _United States v. Teague_, 953 F.2d 1525

(11th Cir.1992) (en banc); _United States v. Ortiz_, 82 F.3d 1066, 1070 (D.C. Cir.1996).

Furthermore, in considering the importance of a defendant's constitutional rights, several of Louisiana sister states have placed the onus of protecting the criminal defendant's right to testify on the court. See _e.g._, _State v. Neuman_, 179 W.Va. 580, 371 S.E.2d 77, 81-82 (1988); _Culberson v. State_, 412 So.2d 1184, 1186-87 (Miss.1982).

Although the issue is _res nova_ in the Louisiana Supreme Court, Louisiana courts of appeal have respected the defendant's right to present his own defense. See, _e.g._ _State v. Woodfin_, 539 So.2d 645 (La.App. 2d Cir.1989); _State v. Johnson_, 482 So.2d 146 (La.App. 4 Cir.1986).

The Louisiana Supreme Court has indicated, "[n]o matter how daunting the task, the accused. . . has the right to face jurors and address them directly without regard to the probabilities of success. "As with the right to self-representation, denial of the accused's right to testify is not amenable to harmless-error analysis." _State v. Dauzart_, 99-3471 (La. 10/30/00), 769 So.2d 1206, 1210 (emphasis added).

In the case sub judice, an evidentiary hearing will support that defense counsel conferred with his client about the testimony of the witness, and the fact that counsel decided _**alone**_ that petitioner was not going to testify. Moreover, the method used by counsel during trial supports that he was manipulating his client's defense and that he was not prepared to present a defense on petitioner's behalf. After each witness testified for the State, petitioner practically _"begged"_ counsel to testify, where counsel only warned him that the District Attorney was "crafty" and his criminal past would be brought up, and that he wouldn't want the jury to hear it. Despite the advice, petitioner still wanted to testify. However, after the State presented its case in chief, trial counsel, Elvin C. Fontenot, rested the defense without allowing petitioner to testify in his own defense. Considering the actions of counsel and the only time he conferred with his client, defense counsel unequivocally manipulated the Court into believing that he was actually presenting a defense on his client's behalf, which the record supports is far from the truth. Counsel violated the Sixth Amendment in denying petitioner his right to testify.

The failure to put Mr. Ramsdell on the stand effectively denied petitioner the right to a defense.

Petitioner insisted to his counsel numerous times that he wanted to testify. Prohibiting a client from testifying is a denial of a fundamental right, which is not subject to harmless-error analysis and is appropriate for "structural defects" much more than mere "trial errors" as defined and explained in *Arizona. v. Fulminante*, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991). The right is either respected or denied; its deprivation cannot be harmless. See *Dauzart*, 769 So.2d at 1210-11. It is of no consequence that in *Dauzart*, the court prevented the defendant from testifying and here the petitioner's lawyer prevented him from doing so. Therefore, whenever a defendant is prevented from testifying, after unequivocally expressing his desire to do so to his trial counsel, the defendant has been denied a fundamental right and suffers detrimental prejudice. See, *State v. Hampton*, 818 So.2d 720 (La.2002).

In determining whether a defendant's right to testify was violated or waived by his silence during trial, the Louisiana Supreme Court looked to *Passos-Paternina v. United States*, 12 F.Supp.2d 231 (D.P.R.1998), for guidance. As a guideline, the *Passos-Paternina* court held:

> (1) absent extraordinary circumstances that should alert the trial court to a conflict between attorney and client, the court should not inquire into a criminal defendant's right to testify. The court should assume, that a criminal defendant, by not 'attempting to take the stand,' has knowingly and voluntarily waived his right;
>
> (2) the court must consider whether petitioner has waived his right to testify. . . [The defendant can only] rebut that presumption. . . by showing that his attorney caused him to forgo his right to testify [(a) by alleging specific facts, including an affidavit by the defendant's trial counsel] from which the court could reasonably find that trial counsel 'told [the defendant] that he was legally forbidden to testify or in some similar way compelled him to remain silent. . .'[(b) by demonstrating from the record] that those 'specific factual allegation would be credible. . .' Id. at 239-40 (citation omitted).

The facts of this case falls within the narrow class created by the two criterion adopted from *Passos-Paternina* and the Louisiana Supreme Court's previous holding in *Dauzart*. Moreover, such criteria is in line with fundamental constitutional rights and fairness in a criminal proceeding. See, *U.S. v. Butts*, 630 F.Supp. 1145, 1148 (D.Me.1986), holding that "[t]his Court considers a defendant's right to testify in a criminal proceeding against him so basic to a fair trial, that its infraction *cannot be treated as harmless-error. . .*". (emphasis added).

For the foregoing reasons, petitioner's Fifth, Sixth and Fourteenth Amendment rights

have been violated, thereby his conviction should be reversed, and in the alternative, an evidentiary hearing held where a record will establish that defense counsel's decision alone, denied petitioner the right to testify in his own defense, nevertheless, the choice to testify was petitioner's to make.  The testimony of the petitioner was the most important evidence that could have changed the outcome of the jury's verdict in this case, when all the jury used for evidence to prove petitioner's guilt beyond a reasonable doubt was the conflicting testimony of self-serving witnesses. Therefore, petitioner is entitled to post conviction relief by granting of a new trial, or in the alternative, remand this matter for an evidentiary hearing.

CLAIM 2

INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL;<br>
A VIOLATION OF THE FIFTH, SIXTH, AND FOURTEENTH<br>
AMENDMENTS TO THE U.S. CONTITUTION;<br>
AND ARTICLE I § 13, OF THE LOUISIANA CONSTITUTION.<br>
(See, Strickland v. Washington, 466 U.S. 668 (1984 )

A.  Failure to File Motion to Suppress Confession

B.  Trial counsel failed to present a defense petitioner's behalf.

C.  Petitioner was denied his Constitutional right to have Effective Assistance of counsel when his trial counsel failed to present a defense, and to have compulsory process for obtaining witnesses in his behalf.

D.  Trial counsel deprived petitioner of his Sixth Amendment Right to a fair trial when counsels failed to request a special jury instruction

LAW AND ARGUMENT

A.  FAILURE TO FILE MOTION TO SUPRESS CONFESSION

The right of an accused to counsel is beyond question a fundamental right. See, e.g., Gideon, 372 U.S. , at 344, 83 S. Ct at 796 ( "the right of one charged with crime to counsel may not be deemed fundamental and essential to fair trials in some countries, but it is in ours"). Without counsel the right to a fair trial itself would be of little consequence, for it is through counsel that the accused secures his other rights. Of all the rights that an accused person has, the right to represented by counsel is by far the most pervasive, for it affects his ability to asserts any other rights he may have.

The trial record in this case clearly shows that Mr. Ramsdell counsel failed to file a motion to suppress his alleged confession. Mr. Ramsdell informed counsel well before trial that his confession was not voluntary, but due to duress, coercion and the fact that he was medicated at the time of the statement and unable to to make a knowing and voluntary statement.(at the time of the statement in question, petitioner was had taken five (5) different prescription medications, (ie., Carisoprodol, Hydrocodone, Amitriptline, Diazepam, Citalopram). The only evidence presented in this case was the uncorroborated testimony of a co-defendant and the alleged statement of the defendant. It is beyond reason as to why a competent counsel would not at the very least try to suppress the inculpatory statement made by his client knowing full well that the only other evidence that the State had to present to prove 1st degree murder was a co-defendant, who's testimony was suspect, as he had been given a deal to testify and had given four different statements previously. This was not trial strategy, this was incompetence. As the Supreme Court has declared emphatically, "[a] confession is like no other evidence. Indeed, 'the defendant's own confession is probably the most probative and damaging evidence that can be admitted against him.'" See, *Arizona v. Fulminante*, 49 U.S. 279 (1991) Mr. Ramsdell was denied effective assistance of counsel and his conviction and sentence should be reversed.

## B.  TRIAL COUNSEL FAILED TO PRESENT A DEFENSE, AND TO HAVE COMPULSORY PROCESS FOR OBTAINING WITNESSES IN HIS BEHALF.

The petitioner contends that he was denied his State and Federal constitutional right to present a defense in his behalf. Under Art. 1 § 16, of the Louisiana Constitution of 1974 states in pertinent part that:

> ". . . An accused is entitled to confront and cross-examine the witnesses against him, to compel the attendance of witnesses, to present a defense, and to testify in his own behalf."

The facts of this case will lend credible support to petitioner's claim.  During arraignment, petitioner present with his counsel, entered a plea of not guilty.  In *Bryant vs. Scott*, 28 F.3d 1411 (5th Cir. 1994), the defendant in that case failed to provide his attorney with the names and addresses of his alibi witnesses.  Unlike in *Bryant*, in the instant case, petitioner's trial attorney knew where to find the name and address of a key witness who would

11

have attested to his character. Petitioner told his attorney essentially that he wanted to call Terry Chapman, Robin Chapman, Brandy Haughs and Jon Franks as witnesses. Petitioner did not commit 1st degree murder and his character was crucial to the jury's determination of the truth of the matter. Trial counsel presented no other evidence in support of his client's innocence of the charge of 1st degree murder and refused to allow petitioner to testify in his own behalf. Petitioner's attorney failed to take notice of his actual innocence.

A defendant's right to present a defense is sanctioned constitutionally and he can testify to or give evidence on any matter relevant to an issue material in the case. 97-00402 (La.App. 3 Cir. 8/21/97) *State v. St. Germain v. Breaux*, 702 So.2d 691. If a witness was in a position to offer testimony that might have substantially helped the particular defense asserted by the defendant, an erroneous exclusion of the offered testimony may be prejudicial. See *State v. Shoemaker*, 500 So.2d 385, 389 (La. 1987).

When an accused enters a plea of not guilty, he is presumed innocent until proven guilty beyond a reasonable doubt. It bears repeating that the accused is not required to prove that he is innocent. Thus, the accused begins the trial with a clean slate. The burden is upon the state to prove the accused's guilt beyond a reasonable doubt.

The petitioner maintained his innocence from the very beginning, and although his trial counsel refused to allow him to testify he continued to let his trial counsel know that he did not commit this crime. The State's case hinged primarily and essentially depended upon uncorroborated testimony from a co-defendant who was offered a deal to testify. These witnesses' testimony was critical to petitioner's defense and trial counsel dropped the ball by not calling them, denying petitioner a fair trial, thereby rendering ineffective assistance.

## C. PETITIONER WAS DENIED HIS CONSTITUTIONAL RIGHT TO HAVE EFFECTIVE ASSISTANCE OF COUNSEL WHEN HIS TRIAL COUNSEL FAILED TO PRESENT A DEFENSE, AND TO HAVE COMPULSORY PROCESS FOR OBTAINING WITNESSES IN HIS BEHALF.

The compulsory process envisioned and guaranteed in the Sixth Amendment to the United States Constitution states in pertinent part that:

> "In all criminal prosecutions, the accused shall enjoy the right . . .
>
> to have compulsory process for obtaining witnesses in his favor."

12

U.S.C.A. 6 Amend.

The witnesses listed by the petitioner would have provided the critical facts and evidence to support that he was denied his Sixth Amendment right to have compulsory process for obtaining witnesses in his favor. Terry Chapman, Robin Chapman, Brandy Haughs and Jon Franks were never interviewed or subpoenaed to testify at his trial.  He alone could have testified to the truth of petitioner's character. He  would have been able to verify that petitioner was not the person that was portrayed by the prosecution. Even though ** made a statement to police that "James" did it, (and several statements that he did not do it) and gave testimony to the same, this testimony was self serving and should have been challenged under direct-examination. Petitioner has never wavered in that he had nothing to do with the shooting of the victim for which he has been falsely accused and wrongly convicted of.

Every defendant has the constitutional right to Compulsory process for attendance of witnesses in criminal cases.  There are provisions available for the issuance of subpoenas in support of the right to compulsory process. See La.C.Cr.P. art. 731 et seq.; *Taylor v. Illinois,* 108 S.Ct. 646, 484 U.S. 400, 98 L.Ed.2d 798, rehearing denied 108 S.Ct. 1283, 485 U.S. 983, 99 L.Ed.2d 494 (1988); U.S.C.A. 6 Amend.

The petitioner was never afforded this most delicate of constitutional rights, thereby denying him a fair trial as envisioned by the Louisiana and United States Constitutions.

In this aspect of petitioner's claim, he contends that his trial attorney failed to provide him the effective assistance of counsel as guaranteed by the Louisiana and United States Constitutions.  The petitioner contends that his only defense was that of innocence.  Even though he did not to testify in his own behalf, (counsel's choice[4]) he is still entitled to have a defense presented in his behalf; and to have compulsory process for obtaining witnesses in his behalf. Neither one of these rights were advocated in petitioner's behalf.

The right to counsel, which is guaranteed in the Sixth Amendment to the United States Constitution and under Article 1, § 16 of the Louisiana Constitution, "is a fundamental right of criminal defendants; it assures the fairness, and thus the legitimacy, of our adversary process." *Gideon v. Wainwright,* 372 U.S. 335, 344, 83 S.Ct.  792, 796, 9 L.Ed.2d 799 (1963).  Without

---

4  See Claim No. 1

13

counsel, the right to a fair trial itself would be meaningless, for it is only through counsel that the accused may secure his other rights.

The essence of an ineffective assistance claim is that counsel's unprofessional errors upset the adversarial balance between the defense and prosecution, rendering the trial unfair and the verdict suspect. _Strickland v. Washington_, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In order to prevail on such a claim, one must show both that counsel's representation fell below an objective standard of reasonableness, and that there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

## DEFICIENT PERFORMANCE AND PREJUDICE

Petitioner has claimed from Day One, that he is totally innocent of the crime of 1st degree murder and conspiracy to commit 1st degree murder. Petitioner claims that he did not shoot John "Jack" Mayeaux. By that being so, if his trial counsel would have interviewed, or subpoenaed a key witnesses to attest to his character, a different determination would have been made by the jury and his defense would not only have been presented, but documented. However, this was not done.

Petitioner avers that he has fulfilled the first prong of _Strickland_, supra, by demonstrating that his trial attorney's performance was deficient. He has identified specific instances of his trial attorney's omissions and that he has a right to effective assistance of counsel. In being effective, petitioner's attorney owed him a duty to interview those potential witnesses and to make an independent investigation of the facts and circumstances. These are errors that should be deemed to be of sufficient gravity to have undermined the fundamental fairness of the trial itself. See _Nealy v. Cabana_, 764 F.2d 1173 (5th Cir. 1985).

Next, petitioner intends to show that this deficient performance of his trial attorney prejudiced him by depriving him of a fair trial, i.e., a trial whose result is reliable. First, a reasonable investigation and interview of this key eyewitness, Darrell Bruce, would have uncovered critical evidence, that petitioner was not the person who shot the victim, John Jack" Mayeaux ; that someone else other than the petitioner did the shooting, thereby exonerating him. Defense Counsel's conduct truly undermined the proper functioning of the adversarial

14

process in that the trial cannot be relied on as having produced a just result.  This was a grave error on the part of petitioner's trial counsel.  Petitioner should not be made to suffer continual incarceration due to his trial counsel's grave errors.  Instead, his trial counsel should be made to answer, in an evidentiary hearing, as to why he failed to provide effective and reasonable assistance of counsel to his client.

Petitioner has been deprived of his defense and a fair trial where his trial attorney excludes testimony that would have substantially helped his defense.  Petitioner's trial attorney failed to call a critical witnesses, or present another hypothesis that some one other than the petitioner was the shooter.  If witnesses were called in his behalf to testify as to his character, this would have supported his only theory of defense, that he was not the man who shot John Jack" Mayeaux.   This excluded testimony was crucial to the defense theory.  In *State v. Caldwell*, 504 So.2d 853, 856 (La.  1987), where the excluded testimony that is crucial to the defense theory, a conclusion of reversible error would be well founded.

The prejudice suffered is that these witnesses alone could have provided petitioner with an actual reasonable doubt.  A reasonable doubt that someone other than the petitioner committed these crimes.  The State must prove guilt beyond a reasonable doubt, it did not have to prove guilt beyond all possible doubt.  This was the doubt based on reason and common sense and was present when, after having carefully considered all the evidence or lack of evidence, none of the jurors could say that they were firmly convinced of the truth of the charges leveled against the petitioner.  The rational is simple in that if the four witnesses would have testified, there would have been reasonable doubt, and the jury would have exonerated the petitioner as not being the person that shot John Jack" Mayeaux.

For the foregoing facts and law in relation thereof, petitioner's trial counsel should be deemed to have provided him ineffective assistance of counsel at the trial stage.  Petitioner's sentences and convictions should therefore be reversed and remanded for a new trial in the district court for having wrongfully convicted him.

### D. TRIAL COUNSELS DEPRIVED PETITIONER OF HIS SIXTH AMENDMENT RIGHT TO A FAIR TRIAL WHEN COUNSELS FAILED TO REQUEST A SPECIAL JURY INSTRUCTION

Petitioner contends that he received ineffective assistance of counsel when his attorney, Mr. Elvin C. Fontenot failed to request a special jury instruction concerning the Mandatory Sentencing Issue.

The United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104, S.Ct. 2052, 80 L.Ed.2d 674 (1984), established a two prong test to determine ineffective assistance of counsel. First, there must be specific showing counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Secondly, counsel's error must be so serious that the defendant was deprived of his right to a fair trial whose result is reliable. It must be shown that but for counsel's unprofessional errors, the result of the proceedings would have been different. Citing *Strickland v. Washington*, supra.

The Louisiana Constitution guarantees to each criminally accused the right to full jury voir dire. La. Const. Art. 1, Section 17. The importance of a searching and informed examination of prospective jurors has been recognized in this State, as worthy of Constitutional protection. In the present case, petitioner was deprived of the enjoyment of that right by the ineffectiveness of his trial attorney.

Throughout the jury voir dire examination in the instant case, the trial judge and at times, the district attorney repeatedly informed the prospective jurors that punishment was solely within the province of the court, and not a matter with which they should be concerned with.

Petitioner contends that his attorney should have voiced an objection to this mis-statement of the law concerning the mandatory sentencing issue. Or better yet, requested a Special Jury Instruction from the court, to be given to the jury at the conclusion of the trial.

Petitioner was tried for First Degree Murder a violation of La. R.S. 14:30 Punishment was not within the province of the court, but predetermined by the Louisiana Legislature. When a mandatory sentence is involved, the defense is entitled to jurors who are informed of that fact. *State v. Washington*, 367 So.2d 4, 5 (La. 1978); *State v. Jackson*, 450 So.2d 621, 633 (La. 1984); *State v. Peddy* 569 So.2d 1035, 1036 (La. App. 3 Cir. 1990).

Petitioner had the limited luxury to be able to afford an attorney of his choice, but that attorney made no effort to probe the jurors as to their views of the mandatory penalty.  The attorney obvious ignorance of the law in this regard prejudiced their client.  It cannot be gain said that knowledge of the fact that a conviction of second degree murder automatically results in a mandatory sentence of life imprisonment without benefit of probation, parole, or suspension of sentence may have effected the jurors in their deliberations. *State v. Peddy*, at 1037.  Furthermore, this error was never corrected. Petitioner's attorney did not request a special jury instruction that aggravated second degree murder carried a mandatory life sentence. The defense did not instruct the jurors as to the sentence which would result if their client was found guilty of first degree murder.  Thus, petitioner was deprived of a long recognized right.

The importance of informing the jury of this penalty has been recognized as such that if a requested instruction is denied by the trial court, it is reversible error. *State v. Peddy*, 569 So.2d, at 1037-38.  In reversing *Peddy's* conviction, the Third Circuit Court of Appeals ruled as follows:

> "The Supreme Court has recognized that jurors often appreciate and distinguish different offenses by the sentences they carry and not the nuances of varying degrees of criminal intent. *State v. Milby*, 345 So.2d 18 (La. 1977); *State v. Prater*, 337 So.2d 1107 (La. 1976). In the instant case, knowledge of what sentence the defendant must receive if convicted of second degree murder could have very well been the decision factor among jurors. Because the defendant was entitled to have the jurors informed of the penalty provision, and the trial court refused to do so, defendant's conviction must be overturned."

*State v. Peddy* at 1037-38.

In the instant case, counsel's failure to object to the judge's incorrect statement of the law during voir dire, couple with trial counsel's failure to request a special jury instruction, and their failure to argue the mandatory penalty to the jury seriously prejudiced petitioner's case. The jury was left without accurate information about the consequences of their verdict.

Unless the accused receives the effective assistance of counsel, a serious risk of injustice infects the trial itself. *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980).

The United States Supreme Court has interpreted the right to counsel to mean the right

to the effective assistance of counsel. *McMann v. Richardson*, 387 U.S. 759, 90 S.Ct. 1414, 25 L.Ed.2d 763 (1970). An accused Sixth Amendment right to the assistance of counsel is one of the most fundamental components of our criminal justice system. Through legal representation, the defendant's other pre-trial and trial rights are secured. *United States v. Cronic*, 466 U.S. 648, 104 S.Ct . 2039, 80 L.Ed.2d 657 (1984); *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963).

In light of the facts in petitioner's case, wherein the State's evidence was unreliable and weak, the jury should have been instructed on the mandatory sentence penalty of second degree murder.

The jurors in petitioner's case was never informed of the consequences of their verdict. This error can only be contributed to counsel's ineffectiveness. During the trial court's instruction to the jury, the trial court failed to read the penalty provisions of the crimes charged, (first degree murder). It is petitioner's belief that the jurors labored under the mistaken belief that the court would determine the appropriate sentence to be imposed upon petitioner in relation to the evidence presented. Perhaps they believed that the judge would take into consideration the weakness of the State's case, the conflicting testimony and evidence then impose leniency, which in this case the judge dened a new trial . Armed with the knowledge that the judge had no choice but to impose a sentence of life imprisonment at hard labor, with no hopes of probation, parole, or suspension of sentence, the jurors might have reached a different verdict had they been informed of the penalty of second degree murder.

Prior to the holding in *State v. Washington*, supra, the defendant had no right to have the jury informed of the mandatory penalty that would be imposed. Dissenting from a pre-*Washington*, case, Justice Tate reasoned as follow:

> "In order to perform their important functions in the administrating of criminal justice, jurors should be fully informed of the consequences of their verdicts, including the penalties involved."

*State v. Prater*, 337 So.2d 1107, 1110 (La. 1976)

It is for the above reasons, that the refusal to instruct a jury as to a mandatory sentence upon proper request is reversible error. *State v. Peddy*, supra. Petitioner was seriously prejudiced by counsel's error on this important issue, and it is an error which strikes at the heart

18

of the jury's verdict. Defense counsel's lack of advocacy on this important point resulted in a breakdown of the adversarial process, and resulted in a result which is unreliable.

The mere presence of an attorney does not satisfy the constitutional guarantee of counsel. As the Supreme Court has often noted, an accused is entitled to representation by an attorney, whether retained or appointed, "who play the role necessary, ensure that the trial is fair." *Morrison*, 477 U.S. at 337, 106 S.Ct. 2584, (Quoting *Strickland v. Washington*, 466 U.S. 668, 685, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984)). In other words, the right to counsel is the right to effective assistance of counsel. Citing: *Evitts v. Lucey*, 469 U.S. 387, 395-96, 105 S.Ct. 830, 835-36, 83 L.Ed.2d 821 (1985).

Had counsel requested the special jury instructions,  and the trial court properly instructed the jurors concerning the mandatory penalty of second degree murder, there is a strong possibility that the jury would have returned a different verdict after the jury's consideration of the State's evidence, which showed reasonable doubt of petitioner's participation in the crime, and the inconsistent and unreliable testimony of State's witnesses.

Petitioner submits that counsel deficient performance rendered his trial fundamentally unfair. The criteria set forth in *Strickland v. Washington*, supra, has been sufficiently met. In light of the above argument and case law cited, petitioner prays that this reviewing court reverse petitioner's conviction and sentence.

## CLAIM NO. 3

### DOUBLE JEOPARDY-VIOLATION OF DUE PROCESS
### U.S. CONST. 14TH AND 5TH AMEND.

The Double Jeopardy Clause protects defendants from being punished twice for the same offense. U.S. Const. amend. V; La. Const. art. 1, § 15; La. C. Cr. P. art. 591. La. C. Cr. P. art. § 596, double jeopardy exists in a second trial only when the charge  brought is: (1) identical with or a different grade of the same offense for which the defendant was in jeopardy in the first trial, or (2) based on a part of continuous offense for which the defendant was in jeopardy in the first trial. The United States Supreme Court applies the "additional fact" test to resolve double jeopardy issues and states are constitutionally required to do the same. *Blockburger v. United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 182. 76 L. Ed. 306 (1932);

*State v. Knowles*, 392 So 2d 651, 654 (La. 1980). The "additional fact" test requires that, when conduct constitutes a violation of two or more distinct statutory provisions, the provisions must be scrutized to confirm that each demands proof of an additional fact. Knowles, 392 So 2d at 654. In addition, Louisiana Courts utilize the "same evidence" test, which focuses upon the actual physical and testimony evidence necessary to secure a conviction. State v Steele, 387 So 2d 1175, 1177 (La. 1980. This test depends upon proof required to convict, not the evidence actually introduced at trial. Thus, under the "same evidence" test, the court's concern is with the "evidential focus" of the facts adduced at trial in light of verdict the rendered, *i.e* .., how the evidence presented goes to satisfy the prosecution's burden of proof. *State v. Coody*, 448 So 2d 100, 102-103 (La. 1984). Therefore, if the evidence required to support a finding of guilt of one crime would also support a conviction for another offense, the defendant can be placed in jeopardy for only one of the two.

In the instant case, in order to convict Mr. Ramsdell of armed robbery of Mr. Mayeaux and the theft of a firearm from Mr. Mayeaux, and the theft of moveable property over five hundred dollars from Mr. Mayeaux, the state had to prove the "taking of something of value" as to each particular offense. All three offenses carry the element of "taking something of value" and the "something of value" is the same in all three offenses. The stolen items were the objects of the theft in the armed robbery . see, *State v. Roberson*, 386 So 2d 906 (La. 1980)

It's either armed robbery, "taking something of value"; or, thief, "taking something of value", the law simply does not allow the state to have it both ways.

For the reasons show above, petitioner now asks that this court vacate the theft convictions that are in violation of the double jeopardy clause. See, *Brown v. Ohio*, 97 S.Ct. 2221, 432 U.S. 161 (1997); *Blockburger v. U.S.*, 52 S. Ct. 180, 284 U.S. 299.

## CLAIM NO. 4

### TRIAL COURT'S ABUSE OF DISCRETION; DENIAL OF A FAIR AND IMPARTIAL JURY VIOLATION OF 6TH AMEND. U.S. CONST.

In this assignment of error, petitioner states that he was denied the right to a fair and impartial jury when the trial court denied several motions for mistrial based of the comments of prospective juror's in the presence of the jury venire.

The Constitution guarantees a criminal defendant the right ta a "fair trial by a panel of impartial , 'indifferent' jurors. The failure to accord an accused a fair hearing violates even the minimal standards of due process." *Irvin v. Dowd*, 366 U.S. 717, 722, 81 S. Ct. 1639, 6 L. Ed 2d 751 (1961). One touchstone of a fair trial is an impartial trier of fact--" 'a jury capable and willing to decide the case solely on the evidence before it.' " *McDonough Power Equip., Inc. v. Greenwood,* 464 U.S. 548, 554, 104 S. Ct. 845, 78 L. Ed 2d 663 (1984). The obvious difficulty with prejudice and bias in a judicial context is that it prevents the impartial decision-making that both the Sixth Amendment and fundamental fair play require. United States v. Heller, 785 F. 2d 1524, 15 27 (reversing jury verdict based on a vior dire of deliberating juror's where the "religious prejudice displayed by the jurors ... is so shocking to the public confidence in the equity of our system of justice, that we must act decisively to correct any possible harmful effects on this appellant"). *see also United States vs. McClinton*,  135 F. 3d 1178,1185 (7th Cir. 1998) (" The Fifth and Sixth Amendments protect a criminal defendant from a jury's lynch mob mentality through the guarantees of the due process of law and trial by an impartial jury.")

Petitioner requested three mistrials during trial. According to La/ C.Cr. P. art 775 (6), a mistrial may be ordered when "[f]alse statements of a juror on vior dire prevent a fair trial." In State v. Carmouche, (La. 5/14/02), 872 So 2d 1020, 1035, the Supreme Court Stated:

> The "prejudicial conduct" may include remarks of veniremen during voir dire. However, mistrial is a drastic remedy that is warranted only when the defendant has suffered substantial prejudice such that he cannot receive a fair trial. A trial court need not order a new trial absent a showing that the comments made by the prospective juror affected other jurors or prejudiced the defendant. The determination of whether actual prejudice has occurred lies within the sound discretion of the trial judge, and this decision will not be overturned on appeal absent an abuse of that discretion. In deciding the correctness of the trial court's voir dire rulings, a reviewing court considers the entirety of the voir dire record.

The petitioner's first motion for mistrial was raised during voir dire. Counsel for the defendant explained to the trial court that his secretary heard a prospective juror, who had already been released, tell the victim's daughter " in a tone that could be heard by the venire, ' I knew your father, I'm sorry this happen.'" The defendant moved for a mistrial, asserting that the comment inflamed the jury against the defendant and thus was detrimental or prejudicial to his case. In response, the trial court stated "I'm going to deny the motion for a mistrial, unless you can prove to me a juror or all jurors were actually prejudiced in some way towards defendant, Mr. Ramsdell."

The second motion for mistrial was based upon several statements made by prospective jurors during voir dire. The record reveals that prospective juror number 178 related to the trial court that, during the break, he heard a female prospective juror, make a comment that the defendant "looked guilty." Another prospective juror, number 5, explain to the trial court that he heard the same comment made "five or six times" by three or four different prospective jurors. Lastly, counsel for the defendant stated to the trial court that another prospective juror "indicated that someone talked about the hanging jail and in the olden days they would hang them." The defendant made a motion for mistrial, asserting that it would be impossible to obtain a fair trial and impartial trial considering those discussions amongst the prospective jurors.

The State opposed the motion, contending that all of the prospective jurors stated to the trial court that if they had heard such statements, it made no impact on how they would serve as jurors if selected.

The trial court denied the motion, stating that it was clear that some prejudicial statements were made in/or outside the courtroom, but the question was whether the statements made it impossible for the defendant to obtain a fair trial .The trial court questioned only six prospective jurors about the prejudicial comments; three indicated they had not overheard anything inappropriate, and three indicated that they had heard something, but the comments had not influenced their opinions or ability to remain fair and impartial in the case.

That's 50 %, not a good ingredient for a fair trial pursuant to the Sixth Amendment and the beyond a reasonable doubt standard.

The trial court stated that it believed the appropriate remedy would be to admonish the jury venire to disregard any remarks it may have heard.

The defendant objected to the trial court's ruling.

Lastly, prior to seating the jury, the defendant reurged his motion for mistrial, citing the same grounds as in his second motion for mistrial, and further stating that two prospective jurors indicated that they heard comments contrary to the trial court's admonishment. Those two prospective jurors were released from serving on the jury. The trial court denied the motion for a mistrial, stating that in addition to showing prejudicial conduct, the defendant had to show that the conduct made it impossible to obtain a fair trial. The trial court clearly abused it's discretion in denying defendant's motions for mistrial, thereby denying him the right to a fair and impartial jury and a fair trial. This conviction and sentence should therefore be vacated.

## CLAIM 5

### INSUFFICIENT EVIDENCE TO CONVICT OF FIRST DEGREE MURDER AND CONSPIRACY TO COMIT FIRST DEGREE MURDER
(Jackson v Virginia, 433 U.S. 307, 99 S. Ct. 2781, (1979))

The evidence indicated that on October 9, 2007, the defendant, Terry Clarkson, and Darrell Bruce were at the home of the victim, John H. Mayeaux. The State contends that the defendant, James E. Ramsdell and Terry Clarkson, conspired to commit Armed Robbery, Aggravated Burglary and to kill the decedent, John H. Mayeaux. The defendant was at the home of the victim as a result of Terry Clarkson advising the defendant and the juvenile, Bruce, that he was to meet an individual by the name of, Richard Young, to help him load material from the victim's property. The evidence would show that the defendant and Darrell Bruce were scheduled to go to Toledo Bend to work for Ken Loftin, an individual whom James E. Ramsdell often did work for over a period of time. During the course of being at the residence, John H. Mayeaux was shot, it is alleged by the State of Louisiana, by the defendant, James E. Ramsdell. The only witness to testify at the trial that was present at the time of the shooting was the juvenile, Darrell Bruce.

Bruce claims that on the Monday night before the victim was shot that, James E.

Ramsdell, said he wanted to "whack Jack" to which Terry Clarkson replied "I have no problem with that". However, after going to the home to retrieve candles, of, James E. Ramsdell, by John H. Mayeaux nothing happened to John H. Mayeaux. The evidence established that Bruce gave at least four different statements with the prior three denying any knowledge of any conspiracy to commit the murder of John H. Mayeaux or that the defendant shot and killed John H. Mayeaux. The evidence established that after a weekend with his mother and family in Mississippi the juvenile, Bruce, returned to Beauregard Parish and gave a statement which was rambling in nature and inconsistent in a number of ways.

During cross-examination of Bruce by counsel for the defendant, the witness stated he did not remember the denials or details of what occurred made prior to the last statement given where he advised Law Enforcement that James E. Ramsdell did the shooting.

Mover would show that the most crucial evidence against the defendant would be the testimony of Darrell Bruce whose testimony is simply not credible on a number of issues which formed the basis of the State's prosecution.

The due process standard of review in *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed 2d 560 (1979), preserves the role of the jury as the fact finder in the case but it does not allow jurors " 'to speculate if the evidence is such that reasonable jurors must have reasonable doubt.'" The evidence at trial did not prove beyond a reasonable doubt that petitioner was the shooter of Mr Mayeaux

The State did not carry their burden of proof and therefore the charges of 1st degree murder and conspiracy to commit 1st degree murder should be vacated as a matter of law.

## ARGUMENT

Mover would show that the evidence concerning the defendant's guilt on the charge of First Degree Murder is insufficient that the murder occurred while the defendant was engaged in the perpetration or attempted perpetration of Armed Robbery or Aggravated Burglary. The offense of First Degree Murder is defined as following:

"First Degree Murder is the killing of a human being when the offender has specific intent to kill, or inflict great bodily harm, and is engaged in the perpetration or attempted perpetration of armed robbery or aggravated burglary."

24

In order to convict the defendant of First Degree Murder the State must prove beyond a reasonable doubt each essential element of the crime of First Degree Murder. The State must prove that the defendant killed John H. Mayeaux, and he acted with specific intent to kill or inflict great bodily harm, and that the defendant committed the murder while in the perpetration or attempted perpetration of Armed Robbery or Aggravated Burglary.

The only evidence adduced at the trial by the State of Louisiana to establish that the killing of John H. Mayeaux occurred during an Armed Robbery or Aggravated Burglayr is the uncorroborated testimony of Darrell Bruce. Darrell Bruce never testified that any items of property were removed from the person of John H. Mayeaux or within the areas of his immediate control by use of force or intimidation while the offender was armed with a dangerous weapon. In order to find that an Armed Robbery occurred, the State must prove beyond a reasonable doubt the following:

1. The defendant intentionally took something of value belonging to another;
2. That the thing of value taken was in the possession or immediate control of John H. Mayeaux when taken;
3. The defendant used force or intimidation in order to accomplish the taking; and that
4. The defendant was armed with a dangerous weapon which was a firearm.

The testimony of Darrell Bruce fails to establish beyond a reasonable doubt that the defendant took anything of value which was in the possession or immediate control of John H. Mayeaux. The evidence established that John H. Mayeaux was killed while standing outside of his home and subsequent to the killing a number of movable items were removed from the property and the home. There is no testimony that anything was removed from the person or within the decedent's immediate control. The State of Louisiana has failed to establish that the killing occurred during the perpetration or attempted perpetration of Armed Robbery.

The State of Louisiana sought to establish that an Aggravated Burglary occurred also through the testimony of Darrell Bruce. Aggravated Burglary is described as the following:

"The unauthorized entering of an inhabited dwelling or of any structure or movable where a person is present with the specific intent to commit a felony therein if the defendant is armed with a dangerous weapon, or arms himself with a dangerous weapon after entering."

The evidence clearly demonstrated at the trial of this matter that when the defendant entered the home of John H. Mayeaux he had already been killed. There was no burglary as defined under the statute and the elements therefore and the State of Louisiana has failed to establish that guilt beyond a reasonable doubt.

The defendant would further argue that the State of Louisiana failed to establish that the defendant was guilty of the charge of Criminal Conspiracy to Commit First Degree Murder. Criminal Conspiracy to Commit First Degree Murder is defined as follows:

"A criminal conspiracy is the agreement or combination of two or more persons for the specific purpose of committing any crime; provided that an agreement or combination to commit a crime shall not amount to criminal conspiracy unless, in addition to such agreement or combination, one or more of such parties doesn't act in furtherance of the object, of the agreement, or combination."

In order for the defendant to be guilty of the charge of Criminal Conspiracy to Commit First Degree Murder the State of Louisiana must prove each and every element of the offense beyond a reasonable doubt. In order to find James E. Ramsdell, the defendant herein, guilty of Criminal Conspiracy to Commit First Degree Murder the State of Louisiana must prove beyond a reasonable doubt that the defendant entered into an agreement or combination with Terry L. Clarkson and that the specific purpose of the agreement or combination was to commit the crime of First Degree Murder and that James E. Ramsdell, or Terry L. Clarkson did act in furtherance of the object of the agreement or combination.

The only evidence adduced at the trial to establish that a criminal conspiracy occurred was the testimony of Darrell Bruce. The testimony of Darrell Bruce was inconsistent with respect to the issue of whether or not there was a criminal conspiracy to kill John H. Mayeaux. He gave different versions of how the murder was to be committed and different ways that it was to be committed which were inconsistent with one another. It is unconscionable that an eye witness to a crime can fail to remember such minor details as where the victim was shot. Bruce, in his testimony, testified that the victim had been shot in the chest, when in truth and in fact he had been shot in the back and never been shot in the chest area. In addition, he could not remember any facts that the evidence showed even though he claims to have seen everything. His testimony was that when he saw the weapon he turned and closed his eyes and did not look at what happened. The testimony of this witness is simply not credible. The

witness had the ability and opportunity to observe and remember things which form the basis of the prosecution. However, a review of his testimony indicates that he did not see the things which he testified to.

The defendant would further show that it is obvious that by the charge placed against Darrell Bruce as a juvenile that he was shown considerable consideration by the State of Louisiana. Rather than being charged with First Degree Murder, he was charged as an Accessory After the Fact, as a Juvenile. The petition filed to adjudicate Bruce as a delinquent has never been brought to trial even it was filed some two years ago. Clearly, Darrell Bruce, had a self interest in the outcome of the case and his testimony was colored by his desire for leniency.

The testimony of Darrell Bruce is not sufficient to establish the essential elements of criminal conspiracy to commit first degree murder. In the alleged confession that was entered into this trial, petitioner denied shooting the victim. The due process standard of review in Jackson v. Virginia, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed 2d 560 (1979), preserves the role of the jury as the fact finder in the case but it does not allow jurors " 'to speculate if the evidence is such that reasonable jurors must have reasonable doubt.'" The evidence at trial did not prove beyond a reasonable doubt that defendant specifically intended to kill the victim nor that he conspired to do such.

The State did not carry their burden of proof and therefore the charges of 1st degree murder and conspiracy to commit 1st degree murder should be vacated as a matter of law.

## CLAIM 6

### PETITIONER SUBMITS THAT THE CUMULATIVE EFFECT OF THE ERRORS RAISED HEREIN DENIED HIM A FUNDAMENTALLY FAIR ADVERSARIAL PROCEEDING.

Petitioner contends that the trial court made rulings contrary to clearly established federal law, and that his counsel was ineffective in a number of areas thereby denying him a fair trial.

In *Taylor v. Kentucky* the Court accepted the notion that several errors, none of which individually rise[s] to constitutional dimensions, may have the cumulative effect of denying a defendant a fair trial.  Indeed, in *Taylor* the Court reversed a state conviction upon a finding that "the cumulative effect of the potential damaging circumstances of the case violated the due process guarantee of fundamental fairness...." *Taylor v. Kentucky,* 436 U.S. 478, 487 n. 15, 98 S.Ct. 1930, 56 L. Ed.2d 468 (1978). *Taylor* came before the Court on direct appeal from a state conviction.  The same -- or similar -- concerns are germane to cases on collateral review.  After all, if the foundation of cumulative error review is the guarantee of a fair trial based in the due process clause of the Fourteenth Amendment, there is no reason to suppose that the basic qualities of this constitutional protection are any different on habeas review than it is on direct appeal.

Indeed, it is not surprising that the Courts have increasingly adopted an approach in habeas corpus that has focused on the totality of the circumstances of a trial under review.  See, e.g., *Darden v. Wainwright,* 477 U.S. 168, 182, 106 S.Ct. 2464, 2472, 91 L. Ed.2d 144 (1986) (prosecutor's allegedly erroneous statements assessed in terms of "their effect on the trial as a whole"); *Strickland v. Washington,* 466 U.S. 668, 690, 104 S.Ct. 2052, 2066, 80 L. Ed. 2d 674 (1984)(when reviewing counsel's effectiveness, court must look to all the circumstances of the trial); *Moran v. Burbine,* 475 U.S. 412, 421, 106 S.Ct. 1135, 1141, 89 L. Ed. 2d 410 (1986) (waiver of constitutional rights assessed in light of the "totality of the circumstances"); *California v. Beheler,* 463 U.S. 1121, 1125, 103 S.Ct. 3517, 3520, 77 L. Ed. 2d 1275 (1983) (custodial status of suspect evaluated in light of the "totality of the circumstances").

There can be no doubt that cumulative effect of the above facts, supported by the record, demonstrate that your petitioner was denied a fundamentally fair trial and effective assistance of counsel as guaranteed him by the Sixth and Fourteenth Amendments of the United States Constitution.

All of the above facts, taken together, establish that the attorney for petitioner was not "counsel reasonably likely to render and rendering reasonably effective assistance." *MacKenna v. Ellis,* 280 F. 2d 592 (5th Cir. 1960).  Thus, the cumulative impact of the errors cited herein, require this court to find ineffective assistance of counsel.

## CONCLUSION

Based upon the arguments and case law cited herein, the conviction and sentence should be set aside, and/or an evidentiary hearing ordered. This court should grant all just and equitable relief to which petitioner is entitled to under the law.

Petitioner contends that his conviction and sentence was obtained in violation of the United States Constitution and the Louisiana Constitution.

The decisions made by the trial court are contrary to clearly established law set forth by the United States Supreme Court, and petitioner prays that this Honorable court reverse the the conviction and sentence of petitioner and remand for a new trial.

Respectfully submitted,

James E. Ramsdell # 559207
Main Prison-Walnut-2
Louisiana State Penitentiary
Angola, La.  70712

## AFFIDAVIT IN SUPPORT OF POST CONVIVTION

**Docket No: CR 974-07**

I, James E. Ramsdell, hereby swear under penalty of perjury that the foregoing is a true and correct to the best of my knowledge and belief, and a copy of the judgment of conviction and sentence is attached to the appendix of this writ.

## CERTIFICATE OF SERVICE

I, James E. Ramsdell, hereby certify that a true copy of the foregoing Application for Post Conviction Relief has been served upon Clerk of Court for the 36th Judicial District Court and, the District Attorney for the Parish of Beauregard, all properly addressed, and mailed through the court approved inmate mailing system, this 3rd  day of October, 2011.

_James E. Ramsdell_

James E. Ramsdell #  559207

THIRTY-SIXTH JUDICIAL DISTRICT COURT
PARISH OF BEAURGARD
STATE OF LOUISIANA

STATE OF LOUISIANA, EX REL          CASE NO. CR-974-2007
JAMES E. RAMSDELL,
              *Petitioner*

VERSUS                              DIVISION B
                                    Filed: October 7, 2011
BURL CAIN, WARDEN,                  By: Mary LeBle
                                    Dy CLERK
              *Respondent.*

## MOTION FOR EVIDENTIARY HEARING

MAY IT PLEASE THE COURT:

   Petitioner, in the course of this litigation requests an evidentiary hearing to develop his claims. Petitioner has alleged facts, which are in direct contrast to that of the State, Trial Court, and Trial Counsel, and that of the witnesses, which has yet to be debated. These claims are also Constitutionally relevant to petitioner's conviction.

   The Honorable U.S. Fifth Circuit Court of Appeals, in *McDonald v. Johnson, 139 F, 2d 1056 (1998)*, clearly states that a petitioner can not be said to have failed to develop a factual basis for his claim unless the underdeveloped record is a result of his own decision or own omissions. See also, *Clark v. Johnson, 202 F. 3d 760 (5ᵗʰ Cir. 2000)*.

   The petitioner bears the burden of establishing his right to an evidentiary hearing. The U.S. Courts have consistently held that when there is a factual dispute, which if resolved in petitioner's favor would entitle him to relief, if petitioner is denied an evidentiary hearing, the State has not afforded the petitioner a full and fair hearing.

## CONCLUSION

   Petitioner respectfully requests this Honorable Court to grant an evidentiary hearing for petitioner to present evidence to support his claims.

                              Respectfully submitted,

                              James E. Ramsdell # 559207
                              James E. Ramsdell # 559207
                              Main Prison-Walnut-2
                              Louisiana State Penitentiary
                              Angola, La. 70712

THIRTY-SIXTH JUDICIAL DISTRICT COURT
PARISH OF BEAUREGARD
STATE OF LOUISIANA

STATE OF LOUISIANA, EX REL
JAMES E. RAMSDELL,
                    *Petitioner*

VERSUS

BURL CAIN, WARDEN,

                    *Respondent.*

CASE NO. CR-974-2007

DIVISION B

Filed: October 7, 2011
By: Mary LeBleu

Dy  CLERK

## NOTICE OF INTENT TO AMEND OR SUPPLEMENT

**MAY IT PLEASE THE COURT:**

Petitioner respectfully gives this court notice of his intent to file an amended version of the instant petition or a supplemental brief.

The claims presented here are timely in accordance with LA. C. Cr. P. art. 930.8 and 28 U.S.C. 2244 (d) (1) (A), of the Anti-Terrorism and Effective Death Penalty Act of 1996.

However, with out requesting a stay of proceedings in this case, petitioner intends to gather other information and research which may accumulate to a credible constitutional issue which may be made a part of the instant petition.

Respectfully submitted,

James E. Ramsdell # 559207

James E. Ramsdell # 559207
Main Prison-Walnut-2
Louisiana State Penitentiary
Angola, La. 70712

CR-0974-2007

| STATE OF LOUISIANA | : | 36TH JUDICIAL DISTRICT COURT |
| --- | --- | --- |
| VS. | : | PARISH OF BEAUREGARD |
| JAMES E. RAMSDELL | : | STATE OF LOUISIANA |
| FILED: *November 4, 2011* | : | *Mary Fette* |
| | | DEPUTY CLERK OF COURT |

## ORDER

This matter comes before the court on petitioner's APPLICATION FOR POST-CONVICTION RELIEF, filed October 7, 2011. Petitioner's application makes the following six claims for relief:

(1) Petitioner's Fifth, Sixth, and Fourteenth Amendment rights under the U.S. Constitution were violated when he was denied his right to testify in his own defense.

(2) Petitioner received ineffective assistance of counsel in violation of the Fifth, Sixth, and Fourteenth Amendments.

(3) Petitioner's constitutional rights against double jeopardy under the Fifth and Fourteenth Amendments were violated by his conviction and sentences for armed robbery, theft of a firearm, and theft of moveable property over $500.

(4) Petitioner was denied a fair and impartial jury when the trial court abused its discretion in denying three motions for mistrial.

(5) The evidence was insufficient to convict petitioner of first degree murder and conspiracy to commit first degree murder.

(6) The cumulative effect of the previous claims denied petitioner a fundamentally fair trial.

After review of the record, consideration of the applicable law, and for written reasons assigned,

IT IS ORDERED that petitioner's request for an evidentiary hearing is DENIED and his application for post-conviction relief is DISMISSED pursuant to La.C.Cr.P. art. 928.

THUS DONE AND SIGNED on this __4th__ day of __November__ 2011, at DeRidder, Louisiana.

_____
C. KERRY ANDERSON
DISTRICT JUDGE, DIVISION B

*Mary Fette*

Ex 'C'

CR-0974-2007

| | | |
|---|---|---|
| **STATE OF LOUISIANA** | : | 36TH JUDICIAL DISTRICT COURT |
| **VS.** | : | PARISH OF BEAUREGARD |
| **JAMES E. RAMSDELL** | : | STATE OF LOUISIANA |
| FILED: *November 4, 2011* | : | DEPUTY CLERK OF COURT |

## REASONS FOR JUDGMENT

This matter comes before the court on petitioner's APPLICATION FOR POST-CONVICTION RELIEF, filed October 7, 2011.  Petitioner's application makes six claims for relief.

### CLAIM NO. 1

In his first claim, petitioner contends that he was denied the right to testify in his own defense.  Petitioner asserts that, although he insisted on testifying, his defense counsel told him that it was not petitioner's decision and refused to allow him to testify.  Louisiana law recognizes that an attorney's interference with a defendant's desire to testify may violate the defendant's constitutional rights.  *State v. James*, 938 So. 2d 691 (La. 9/29/06).  However, the law also requires that the claimant "allege specific facts, including an affidavit from counsel" and point to record evidence to support his claim.  *Id.*  In almost all cases a trial court may presume from a defendant's silence that he waived his right to testify.  *Id.*  Mere conclusory allegations are insufficient to rebut this presumption.  *Id.*  Instead, the petitioner must allege specific facts from which a court could reasonably find that counsel either informed his client that he was legally forbidden to testify or in some way compelled him to remain silent, and he must also demonstrate from the record that those specific factual allegations would be credible.  *Id.; Passos-Paternina v. United States*, 12 F.Supp.2d 231, 239 (D.P.R.1998).

In the instant case, petitioner's factual allegations are conclusory, and he points to no record evidence to demonstrate that those allegations would be credible.  Furthermore, the record clearly contradicts petitioner's allegations. The trial transcript reveals that defendant's attorney stated on the record (outside of the presence of the jury) that after discussion with Mr. Ramsdell, it was agreed that Mr. Ramsdell would not testify, and counsel asked that both the discussion and the decision be acknowledged by Mr. Ramsdell.  The following exchange then took place between the court and petitioner:

THE COURT:  You have consulted with both of your attorneys, Mr. Fontenot and Mr. Jones, in this matter regarding your decision to testify or not?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And you have knowingly and voluntarily made the decision not to testify; is that correct?

THE DEFENDANT:  Yes, Your Honor.  (Appeal Record, p. 2542).

Considering the foregoing, defendant has failed to rebut the presumption that he waived his right to testify.

CLAIM NO. 2

In his second claim, petitioner contends that he received ineffective assistance of counsel. Petitioner's claim of ineffective assistance of counsel is to be assessed by the two part test of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Fuller*, 454 So.2d 119 (La.1984).  The petitioner must show that counsel's performance was deficient and that he was prejudiced by the deficiency.  Counsel's performance is deficient when it can be shown that he made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment.  *Strickland, supra*, 466 U.S. at 686, 104 S.Ct. at 2064. Counsel's deficient performance will have prejudiced the defendant if he shows that the errors were so serious as to deprive him of a fair trial.  The defendant must make both showings to prove that counsel was so ineffective as to require reversal.  *State v. Sparrow*, 612 So.2d 191, 199 (La.App. 4 Cir.1992).  To carry his burden, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland, supra*, 466 U.S. at 693, 104 S.Ct. at 2068.  If an alleged error falls "within the ambit of trial strategy" it does not "establish ineffective assistance of counsel." *State v. Schexnaider*, 852 So.2d 450 (La.App. 3 Cir. 6/4/03).

Petitioner contends that his counsel was ineffective because he did not file a motion to suppress inculpatory statements made by petitioner.  However, petitioner's application does not specify what statements he believes should have been suppressed.  An application for post-conviction relief must state the grounds upon which relief is sought and specify "with reasonable particularity the factual basis for such relief." La.C.Cr.P. Art. 926(B)(3).  Inexcusable failure of the applicant to comply with these requirements may be a basis for dismissal of his application.

La.C.Cr.P. Art. 926(E).  Because petitioner's application fails to specify what statements are at issue, it would be impossible for the State to prepare a meaningful answer or for the Court to properly consider the merits of the claim.  Therefore, this claim fails to comply with the requirements of La.C.Cr.P. Art. 926(B)(3) and will be dismissed.

Petitioner also contends that his counsel was ineffective because no witnesses were called to testify on his behalf.  Specifically, petitioner asserts that he wished to call Terry Chapman, Robin Chapman, Brandy Haughs, and Jon Franks as witnesses to attest to his character. Petitioner argues that if trial counsel had adequately interviewed these witnesses and called them to testify, then the jury would have come to a different determination.

An accused has the option to introduce evidence of his character with respect to a pertinent trait involved in the crime charged.  La. C.E. art. 404(A)(1).  However, if the accused affirmatively exercises this option, the prosecution may then offer evidence to rebut the character evidence offered by the accused as to the pertinent character trait involved in the crime.  Whether to call character witnesses, and thereby open the door for the State to present bad character evidence, is a decision which falls "within the ambit of trial strategy."  *State v. Myers*, 888 So.2d 1002 (La.App. 4 Cir. 11/3/04).  Therefore, this alleged error does not establish ineffective assistance of counsel.

Petitioner also contends that his counsel was ineffective because his attorney failed to request a special jury instruction to inform the jury that conviction of first or second degree murder carried a mandatory life sentence.  Petitioner claims that during voir dire, the judge and district attorney repeatedly informed the prospective jurors that punishment was solely within the province of the court and not a matter with which they should be concerned.  Petitioner argues that without an instruction regarding the mandatory life sentence, the jurors were left without accurate information about the consequences of their verdict.

Again, the record contradicts petitioners claim.  The jury venire was clearly made aware of the consequences of first degree murder and second degree murder during voir dire.  For example, the prosecution informed the jury venire, after explaining the elements of first degree murder, that "the law mandates, if convicted of first degree murder, in this case, life imprisonment, what we call at hard labor, without parole.  Life means life in Louisiana.  Unless the governor intervenes, life is life." (Appeal Record, p. 1220).  And later, after explaining the

elements of second degree murder, the prosecution stated that "[e]ither first degree murder or second degree murder is the same.  It's punishable by life imprisonment without benefit of any kind of parole.  Life is life." (Appeal Record, p. 1224).  More importantly, the following statement was included in the jury instructions:

THE COURT:  Sentencing is not the function of the jury.  It is the duty and responsibility of the court.  However, in order to assure that you are fully advised of the law, I have chosen to inform you of the penalty provided by statute:  whoever commits the crime of first degree murder shall be punished by life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence.  (Appeal Record, p. 1006).

Petitioner is correct that the court did not instruct the jury regarding the mandatory life sentence for conviction of second degree murder.  However, this omission is of no consequence, because the jury convicted petitioner of first degree murder.  Considering the statements during voir dire and the jury instruction quoted above, the jury clearly understood the consequences of its verdict.

CLAIM NO. 3

In his third claim, petitioner contends that his constitutional rights against double jeopardy were violated by his conviction and sentences for armed robbery, theft of a firearm, and theft of moveable property over $500.  The Double Jeopardy provisions in the state and federal constitutions protect a defendant from both a second prosecution for the same offense and multiple punishments for the same criminal act.  U.S. Const. amend. V; La. Const. art. 1, § 15; *State v. Doughty*, 379 So.2d 1088 (La.1980).  In interpreting the Double Jeopardy Clause of the Fifth Amendment, the federal courts employ the test enunciated in *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932).  Under *Blockburger*, the applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of a fact which the other does not.

In evaluating claims of double jeopardy under LA. CONST. art. 1, § 15, Louisiana courts have used the "same evidence" test, which the courts have remarked is "somewhat broader in concept than *Blockburger*." *State v. Steele*, 387 So.2d 1175, 1177 (1980).  Under the same evidence test, if the evidence required to support a finding of guilt of one crime would also have supported conviction of the other, the two are the same offense under a plea of double jeopardy,

and a defendant can be placed in jeopardy for only one. The test depends on the evidence necessary for conviction, not all the evidence introduced at trial. *Id.*

An accused who commits separate and distinct offenses during the same criminal episode or transaction may be prosecuted and convicted for each offense without violating the principle of double jeopardy. *State v. Nichols*, 337 So.2d 1074 (La.1976); *State v. Williams*, 924 So.2d 1159 (La.App. 3 Cir. 3/1/06). The crimes of armed robbery, theft of a firearm, and theft of property valued over $500 each require proof of additional elements different from the others. The evidence in the record indicates that after killing Mr. Mayeaux, the petitioner and his co-perpetrators stole cash from Mr. Mayeaux, then entered his home and stole $300.00 in quarters, several guns, ammunition, tools, and a four-wheeler. Under the *Blockburger* and same evidence tests, the three crimes are separate and distinct offenses, and separate and distinct evidence was present for each crime. Therefore, petitioner's conviction for these three offenses did not subject him to double jeopardy

<u>CLAIM NO. 4</u>

In his fourth claim, petitioner contends that the trial court abused its discretion by denying three motions for mistrial based on comments made by prospective jurors in the presence of the jury venire. Each of petitioner's motions for mistrial was fully considered by this court at the time it was raised. This court denied those motions because petitioner failed to show that he was actually prejudiced by the comments or that his right to a fair trial was impinged. This issue was also considered by the Third Circuit on appeal. *State v. Ramsdell*, 47 So.3d 78 (La.App. 3 Cir. 10/6/10). The Third Circuit did not address the merits of petitioner's argument with regard to the first motion, because it was not properly before the court on appeal. The Third Circuit found that the record did not support a finding that the trial court abused its discretion in denying the second and third motions for mistrial.

Petitioner's application for post-conviction relief makes no arguments on this issue other than those urged previously. Therefore, this court need not reconsider the issue. With respect to the first motion, petitioner again fails to show that he was actually prejudiced or that his right to a fair trial was impinged. Petitioner's claims with respect to the second and third motions were fully litigated on appeal and shall not be considered. LSA-C.Cr.P. Art. 930.4(A).

## CLAIM NO. 5

In his fifth claim, petitioner contends that the evidence was insufficient to convict him of first degree murder and conspiracy to commit first degree murder.  Specifically, petitioner challenges the credibility and sufficiency of the testimony of D.B., the state's key witness.  The issue of D.B.'s credibility was thoroughly argued and considered by this court on petitioner's Motion for Post-Verdict Judgment of Acquittal, and the issue was fully litigated on appeal.  Therefore, this claim shall not be reconsidered.  LSA-C.Cr.P. Art. 930.4(A).

## CLAIM NO. 6

In his sixth claim, petitioner contends that the cumulative effect of the previously discussed claims denied him a fundamentally fair trial.  The cumulative error doctrine provides that an aggregation of non-reversible errors (i.e., plain errors failing to necessitate reversal and harmless errors) can yield a denial of the constitutional right to a fair trial, which calls for reversal.  *United States v. Delgado*, 631 F.3d 685, 698 (5th Cir. 2011).  For the reasons discussed above, petitioner's application fails to show multiple errors, harmless or otherwise.  Without multiple errors, there can be no cumulative effect.  Therefore, the cumulative error doctrine is inapposite here.

## CONCLUSION

Under La.C.Cr.P. art. 927 and its jurisprudential interpretation in *State v. Terry*, 458 So.2d 97 (La.1984), the trial judge is not required to order the district attorney to file an answer before summarily disposing of a claim which is found on the face of the application to be without merit.  *State v. Readoux*, 614 So.2d 175 (La.App. 3 Cir.,1993).  For the reasons discussed above, the court determines that petitioner's claims are facially invalid, and his application for post-conviction relief is denied.  La.C.Cr.P. art. 928.

THUS DONE AND SIGNED this _4th_ day of _November_, 20_11_.

C. KERRY ANDERSON
DISTRICT JUDGE
DIVISION B

6

STATE OF LOUISIANA     : 36TH JUDICIAL DISTRICT COURT

VS. CR-974-07       : STATE OF LOUISIANA

JAMES E. RAMSDELL    : PARISH OF BEAUREGARD

TO: **Honorable David W. Burton, District Attorney, 124 South Stewart Street, DeRidder, LA 70634**

**James E. Ramsdell, DOC #559207, Main Prison-Walnut-2, Louisiana State Penitentiary, Angola, LA 70712**

**NOTICE IS HEREBY GIVEN** that an **Application for Post Conviction Relief with Memorandum of Law in Support and Request for Evidentiary Hearing** was filed in the Clerk of Court's Office in Beauregard Parish on October 7, 2011 and was forwarded to Honorable Judge C. Kerry Anderson for his signature.

**IT IS FURTHER NOTED** that the said Application, Memorandum and Request for Hearing was returned by the Honorable Judge C. Kerry Anderson with the following notation:

**See Reasons for Judgment and Order attached.**  /s/ Judge C. Kerry Anderson 11/4/11

A certified copy of said Application, Order and Reasons are attached hereto and made a part hereof.

**WITNESS** the Honorable Judge C. Kerry Anderson of said Court, and my official signature and seal of office at DeRidder, Louisiana, on this 7th day of November, 2011.

BRIAN S. LESTAGE, CLERK OF COURT

BY: _____

DEPUTY CLERK OF COURT
BEAUREGARD PARISH, LOUISIANA

# The Supreme Court of the State of Louisiana

STATE EX REL. JAMES E. RAMSDELL

NO.  2012-KH-2473

VS.

STATE OF LOUISIANA

– – – – – –

IN RE:  Ramsdell, James E.; - Plaintiff; Applying For Supervisory and/or Remedial Writs, Parish of Beauregard,  36th Judicial District Court Div. B, No. CR-974-07; to the Court of Appeal, Third Circuit, No. KH 11-01479;

– – – – – –

**April 12, 2013**

Denied.

GGG

JPV

JTK

JLW

MRC

JDH

Supreme Court of Louisiana
April 12,2013

_Carmen B. Young_

**Deputy**   Clerk of Court
For the Court

EX`E´

OFFENDER'S REQUEST FOR LEGAL / INDIGENT MAIL

NAME: James Ramsdell

NUMBER: #559207

LOCATION: Walnut 2

BALANCE IN YOUR DRAWING ACCOUNT: $ 23.15

LIST EACH ITEM TO BE MAILED
GIVE THE NAME AND COMPLETE ADDRESS OF EACH
PIECE TO BE MAILED :

Clerk of Court
name
P.O. Box 100
address
DeRidder LA 70634-0100
city, state, zip code

David W. Burton District Attorney
name
P.O. Box 99
address
DeRidder LA 70634
city, state, zip code

name

address

city, state, zip code

ANY DELIBERATE MISREPRESENTATION WILL RESULT
IN YOUR MAIL BEING RETURNED

James Ramsdell #559207
offender's signature and number

classification officer                    10/3/11
                                          date

Ex 1

**DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS**
**CORRECTIONS SERVICES**
**OFFENDER FUNDS WITHDRAWAL REQUEST**

NAME: LAST NAME, FIRST NAME, INITIAL

| DOC NUMBER | | |
|---|---|---|
| 650-200 | NAME: | Randall Isaca L. |

| LIVING QUARTERS | DATE OF REQUEST | | |
|---|---|---|---|
| NL-2 | MO. 10 | DAY 12 | YEAR 2011 |

| | TOTAL AMOUNT |
|---|---|
| | $ 536 |

| CODE | DRAWING / ACCOUNT |
|---|---|
| 73 ☐ | Offender club |
| 74 ☐ | Outside purchase |
| | Family member |
| | Educational courses |
| | Outside bank savings acct# |
| | Newspaper ad for clemency / pardon. |
| ✓ | Other: Pre-paid |

VENDOR NO.

WRITTEN AMOUNT _____ DOLLARS

**PAYEE:**

*OFFENDER MUST ATTACH A STAMPED, ADDRESSED ENVELOPE FOR ALL OUTSIDE MAIL*

NAME  Greefox Funds

ADDRESS  L S P

CITY  Angola   STATE  Louisiana   ZIP  70712

REQUEST DENIED. REASON:

OFFENDER SIGNATURE:

| CODE | SAVINGS / ACCOUNT |
|---|---|
| 79 ☐ | Court Cost - Civil action number _____ |
| 94 ☐ | Savings Bond |
| 94 ☐ | Savings Bond |
| 79 ☐ | Court Cost - Civil action number _____ |
| 82 ☐ | Educational courses |

RIGHT THUMB PRINT   VERIFIED BY:

TITLE:

APPROVED BY:

TITLE:

| CODE | TRANSFERS - No check will be produced |
|---|---|
| 68T ☐ | Transfer from drawing account to savings. |

Note: Print name and address in the payee section to the right. Attach necessary documents including a stamped, self-addressed envelope for all outside mail.

DOC Form PF-30

10-A

CIB Form Revised 08-2003

EX 1

STATE OF LOUISIANA
400 ROYAL STREET
New Orleans
70130

Court

70712=3008 H000

James E. Remsdell, (Pro Se)
#559207, Main Prison- West Yard
Louisiana State Penitentiary
Angola, LA 70712

RECEIVED APR 15 2013

2012 - K0 - 19

U.S. POSTAGE ≫ PITNEY BOWES
ZIP 70130
02 1M
0001376939 APR 12 2013
$ 000.46⁰

EX 1

47 So.3d 78, 2009-1510 La.App. 3 Cir. 10/6/10, State v. Ramsdell, (La.App. 3 Cir. 2010)                                **Page 1**

**\*78** 47 So.3d 78

2009-1510 La.App. 3 Cir. 10/6/10

Court of Appeal of Louisiana,
Third Circuit.

**STATE of Louisiana**
v.
**James E. RAMSDELL.**

**No. 09-1510.**
Oct. 6, 2010.

**Background:** Defendant was convicted in the Thirty-Sixth Judicial District Court, Beauregard Parish, No. CR974-07, C. Kerry Anderson, J., of first degree murder, conspiracy to commit first degree murder, armed robbery, theft of a firearm, and theft of movable property over five hundred dollars. Defendant appealed.

**Holdings:** The Court of Appeal, Marc T. Amy, J., held that:

(1) sentence of 104 years for armed robbery was illegally excessive;

(2) evidence was sufficient for a rational trier of fact to conclude defendant shot victim;

(3) evidence was sufficient to support finding that victim's murder was committed in the perpetration of a robbery and burglary;

(4) defendant's constitutional rights against double jeopardy were not violated by his conviction and sentences for both first degree murder and armed robbery; and

(5) District Court did not abuse its discretion in denying defendant's motion for a mistrial.

Convictions affirmed; sentence affirmed as amended.

West Headnotes

[1]    Indictment and Information ☞113

 210 ----
  210V Requisites and Sufficiency of Accusation
 210k113 Matter of aggravation in general.

[See headnote text below]

[1]    Robbery ☞30

 342 ----
  342k30 Sentence and punishment.

 210V Requisites and Sufficiency of Accusation
 210k113 Matter of aggravation in general.

To invoke the firearm enhancement provisions for armed robbery, the firearm enhancement statute must be charged in the bill of information or indictment. LSA-R.S. 14:64.3.

[3]    Homicide ☞1181

 203 ----
  203IX Evidence
 203IX(G) Weight and Sufficiency
 203k1176 Commission of or Participation in Act by Accused;  Identity
  203k1181 Eyewitness identification.

Evidence was sufficient for a rational trier of fact to conclude that defendant shot the victim, so as to support conviction for first degree murder, even though there were some inconsistencies in witness's testimony and statements that identified defendant as the shooter, where none of the inconsistencies in witness's statements involved the identity of the defendant as the shooter or raised the possibility that someone else committed the crime.  LSA-R.S. 14:30.

[4]    Criminal Law ☞327

 110 ----
  110XVII Evidence
 110XVII(C) Burden of Proof
 110k326 Burden of Proof
 110k327 Extent of burden on prosecution.

The State bears the burden of proving the elements of the crime charged, along with the burden to prove the identity of defendant as the perpetrator.

[5]    Criminal Law ☞553

 110 ----
  110XVII Evidence
 110XVII(V) Weight and Sufficiency
 110k553 Credibility of witnesses in general.

[See headnote text below]

[5]    Criminal Law ☞1159.4(2)

 110 ----
  110XXIV Review
 110XXIV(P) Verdicts
 110k1159 Conclusiveness of Verdict
 110k1159.4 Credibility of Witnesses
 110k1159.4(2) Province of jury or trial court.

*EX 'A'*

As the fact finder, a jury makes credibility determinations and may, within the bounds of rationality, accept or reject the witness's testimony;

**Page 2**

203k1166 Relation between predicate offense or conduct and homicide.

Evidence was sufficient to support a finding that victim's murder was committed in the perpetration of a robbery and burglary, so as to support first degree murder conviction predicated on those offenses, even though robbery and burglary took place after victim had been shot; witness testified defendant wanted to kill victim to effectuate a taking of his belongings, and there was no significant break in the chain of events between the time shots were fired and defendant and his accomplices left the victim's property. LSA-R.S. 14:30, 14:60, 14:64.

[7]    Homicide ☞588

203 ----
203III Homicide in Commission of or with Intent to Commit Other Unlawful Act
203III(B) Murder
203k582 Predicate Offenses or Conduct
203k588 Causal relationship between offense and death.

The determination of whether a murder was committed in the perpetration of a certain felony, for purposes of convicting defendant of first degree murder, is whether the murder and the felony form a continuous transaction without a significant break of events. LSA-R.S. 14:30.

[8]    Double Jeopardy ☞150(2)

135H ----
135HV Offenses, Elements, and Issues Foreclosed
135HV(A) In General
135Hk139 Particular Offenses, Identity of
135Hk150 Homicide
135Hk150(2) Felony-murder or misdemeanor-manslaughter prosecution.

Defendant's constitutional rights against double jeopardy were not violated by his conviction and sentences for both first degree murder and armed robbery, even though State charged defendant with first degree murder based on the underlying offense of armed robbery, where armed robbery and first degree murder were separate and distinct offenses, and defendant could have been convicted of first degree murder without any proof that an armed robbery occurred. U.S.C.A. Const.Amend. 5; LSA-Const. Art. 1, § 15; LSA-R.S. 14:30, 14:64.

[9]    Double Jeopardy ☞134

135H ----
135HV Offenses, Elements, and Issues Foreclosed
135HV(A) In General

135Hk139 Particular Offenses, Identity of
135Hk150 Homicide
135Hk150(2) Felony-murder or misdemeanor-manslaughter prosecution.

When proof of a felony is an essential element of first degree murder, double jeopardy precludes the conviction and punishment of the defendant for both murder and the underlying felony; however, an accused who commits separate and distinct offenses during the same criminal episode or transaction may be convicted and sentenced for each offense without violating the prohibition against double jeopardy. U.S.C.A. Const. Amend. 5; LSA-Const. Art. 1, § 15.

[10]   Double Jeopardy ☞150(2)

135H ----
135HV Offenses, Elements, and Issues Foreclosed
135HV(A) In General
135Hk139 Particular Offenses, Identity of
135Hk150 **78** Homicide
135Hk150(2) Felony-murder or misdemeanor-manslaughter prosecution.

Defendant's rights against double jeopardy were violated when he was convicted and sentenced to first degree murder, armed robbery, and aggravated burglary, when State had charged defendant with first degree murder based upon the underlying offenses of armed robbery or aggravated burglary, and trial court imposed proper remedy for the double jeopardy violation by vacating the conviction and sentence for aggravated burglary, which was the less severely punishable offense. U.S.C.A. Const.Amend. 5; LSA-Const. Art. 1, § 15; LSA-R.S. 14:30, 14:60, 14:64.

[11]   Criminal Law ☞1039

110 ----
110XXIV Review
110XXIV(E) Presentation and Reservation in Lower Court of Grounds of Review
110XXIV(E)1 In General
110k1039 Issues related to jury trial.

Court of Appeal would not address defendant's argument, on appeal from first degree murder conviction, that trial court improperly denied his first motion for mistrial based on allegedly improper comment made by prospective juror during voir dire, where defendant did not contemporaneously object to the trial court's ruling on the motion. LSA-C.Cr.P. art. 841.

[12]   Jury ☞133

230 ----
230V Competency of Jurors, Challenges, and Objections

47 So.2d 78, 2009-1510 La.App. 3 Cir. 10/6/10, State v. Ramsdell, (La.App. 3 Cir. 2010)    **Page 3**

fair and impartial jurors had not been compromised.

**\*80** David W. Burton, District Attorney, Richard A. Morton, Assistant District Attorney, DeRidder, LA, for Appellee, State of Louisiana.

Edward Kelly Bauman, Louisiana Appellate Project, Lake Charles, LA, for Defendant/Appellant, James E. Ramsdell.

Court composed of JOHN D. SAUNDERS, MARC T. AMY, and ELIZABETH A. PICKETT, Judges.

AMY, Judge.

[2009-1510 La.App. 3 Cir. 1] The defendant was convicted of first degree murder, conspiracy to commit first degree murder, armed robbery, aggravated burglary, theft of a firearm, and theft of movable property over five hundred dollars. The trial court vacated the defendant's aggravated burglary conviction, and he was sentenced on the remaining charges. The defendant appeals his armed robbery conviction as a violation of the prohibition against double jeopardy. Further, he challenges the sufficiency of the evidence used to convict him of first degree murder. The defendant also argues that the trial court erred in failing to grant several motions for mistrial. For the following reasons, we affirm the defendant's convictions, and affirm the defendant's sentence for armed robbery as amended.

**Factual and Procedural Background**

This matter involves the October 9, 2007, shooting death of John "Jack" Mayeaux. It is alleged that the defendant, James E. Randall, shot and killed Mr. Mayeaux, and then, with the help of two accomplices, Terry Clarkson and D.B. (FN1), stole some of the victim's movable property, including a four-wheeler, money, several guns, ammunition, and tools.

The defendant was indicted by a grand jury with first degree murder, a violation of La.R.S. 14:30; conspiracy to commit first degree murder, violations of La.R.S. 14:26 and 14:30; armed robbery, a violation of La.R.S. 14:64; aggravated burglary, a violation of La.R.S. 14:60; theft of a firearm, a violation of La.R.S. 14:67.15; and theft of movable property over $500.00, a violation of La.R.S. 14:67(B)(1). Following a jury trial, the defendant was found guilty as charged.

[2009-1510 La.App. 3 Cir. 2] Following his convictions, the defendant filed a Motion to Set Aside Verdict of **\*81** Jury, arguing that his convictions for first degree murder in addition to armed robbery and armed burglary violated the prohibition against double jeopardy. The trial court granted the motion and vacated his conviction for aggravated burglary. The defendant was subsequently sentenced on the remaining convictions as follows: life imprisonment

The defendant appeals, asserting that the trial court erred in failing to grant his Motion to Set Aside Verdict of Jury regarding his armed robbery conviction, and in denying his motions for mistrial. The defendant also questions the sufficiency of the evidence used to convict him of first degree murder.

**Discussion**

*Errors Patent*

[1] In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find one error patent regarding the sentence imposed for armed robbery.

The trial court sentenced the defendant to serve one hundred four years imprisonment at hard labor for the armed robbery conviction. At his hearing on the [ 2009-1510 La.App. 3 Cir. 3] Motion to Set Aside the Jury Verdict, the trial court stated that the penalty for "armed robbery with a firearm carries a maximum of a 104 year sentence with the 99 year plus the five-year firearm enhancement."

[2] Under La.R.S. 14:64, the maximum sentence for armed robbery is ninety-nine years imprisonment at hard labor. However, under La.R.S. 14:64.3, "[w]hen the dangerous weapon used in the commission of the crime of armed robbery is a firearm, the offender shall be imprisoned at hard labor for an additional period of five years without benefit of parole, probation, or suspension of sentence." To invoke the provisions of La.R.S. 14:64.3, the statute must be charged in the bill of information or indictment. *State v. Daniels,* 03-1621 (La.App. 3 Cir. 5/12/04), 873 So.2d 822, *writ denied,* 04-1802 (La.11/24/04), 888 So.2d 227.

In this case, the State did not cite La.R.S. 14:64.3 nor set forth that the crime of armed robbery was committed with a firearm in the indictment. As noted above, the first and only time enhancing the armed robbery sentence was mentioned was by the trial judge, not the State, during the defendant's post-verdict motion hearing. Since the trial court cannot trigger enhancement on its own, we find that the trial court lacked authority to impose the enhanced sentence. The maximum sentence for armed robbery in this present matter is ninety-nine years imprisonment at hard labor. La.R.S. 14:64. As such, the trial court's one hundred four years sentence was illegally excessive. *State v. Jacobs,* 08-702 (La.App. 3 Cir. 2/4/09), 2 So.3d 1289. Accordingly, we reverse the trial court's inclusion of the five year enhancement and otherwise affirm the defendant's sentence for armed robbery as amended.

[2009-1510 La.App. 3 Cir. 4] *Sufficiency of the Evidence*