UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| JAMES RAMSDELL<br>    D.O.C. # 559207 | : | DOCKET NO. 13-cv-0804 |
| VERSUS | : | JUDGE TRIMBLE |
| N. BURL CAIN | : | MAGISTRATE JUDGE KAY |

<u>REPORT AND RECOMMENDATION</u>

Before the court is an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, filed pro se by James Ramsdell ("petitioner") [doc. 1]. The petitioner is a prisoner in the custody of the Louisiana Department of Public Safety and Corrections and is currently incarcerated at the Louisiana State Penitentiary at Angola ("Angola"). N. Burl Cain ("respondent"), warden of Angola, has responded [doc. 16].

This matter is referred to the undersigned for review, report, and recommendation in accordance with 28 U.S.C. § 636 and the standing orders of the court. For the following reasons IT IS RECOMMEDED that the application be **DENIED** and that the petition be **DISMISSED WITH PREJUDICE**.

I.
BACKGROUND

A.  *Conviction  and Direct Appeal*

The petitioner and a codefendant, Terry Clarkson ("Clarkson"), were indicted by grand jury for first degree murder, conspiracy to commit first degree murder, and several other felonies for the October 9, 2007 shooting death of John 'Jack' Mayeux ("Mayeux"). Doc. 18, p. 78.

Beginning on August 17, 2009, the case was tried before a jury sitting in the 36th Judicial District, Beauregard Parish, Louisiana. Doc. 18, att. 4, p. 49.

The petitioner filed a timely appeal to the Louisiana Third Circuit Court of Appeals, citing the following assignments of error by the trial court:

1.  The conviction of armed robbery and first degree murder was a violation of the prohibition against double jeopardy.

2.  There was insufficient evidence to sustain a conviction of first degree murder.

3.  The trial court abused its discretion in failing to grant motions for mistrial based on statements made by prospective jurors during voir dire.

*Ramsdell*, 47 So.3d at 80.  The Third Circuit ruled on October 6, 2010, finding no merit to any of the assignments of error and affirming the convictions. *Id.* at 80–88.  The petitioner did not seek review by the Louisiana Supreme Court. Doc. 1, att. 2, p. 7.

### B.  State Collateral Review

The petitioner next filed a Uniform Application for Post-Conviction Relief and supporting memorandum with the 36th Judicial District on October 7, 2011. Doc. 1, att. 3, pp. 6–41. He based this application on the following allegations:

1.  The petitioner's constitutional rights were violated when he was barred from testifying on his own behalf.

2.  The petitioner received ineffective assistance of counsel as a result of the following alleged deficiencies in performance by his trial counsel:

    a.  Failure to file a Motion to Suppress relating to unspecified statements
    b.  Failure to present a defense and have compulsory process for obtaining witnesses on the petitioner's behalf[2]
    c.  Failure to request special jury instructions

---

[2] The petitioner divides this claim into two parts, even though both parts relate to the same witnesses. Finding that the division results in redundancy, we review these claims as one.

> 3. The cumulative effect of these errors deprived the petitioner of a fundamentally fair adversarial proceeding.

Doc. 1, att. 3, p. 14.  The petitioner also renewed the assignments of error from his direct appeal, expanding the insufficiency of evidence claim to cover the conviction of conspiracy to commit first degree murder, changing the grounds of his double jeopardy claim to cover the armed robbery and theft charges, and contending that "the cumulative effect of the errors raised herein" denied him the right to a fair proceeding. *Id.* at 14–15. On the coversheet of his Uniform Application for Post-Conviction Relief, the petitioner justified the renewal of the sufficiency of evidence and abuse of discretion claims from his direct appeal "in the interest of justice." *Id.* at 9.

On November 4, 2011, the 36th Judicial District denied the petitioner's request for an evidentiary hearing and dismissed all of his claims, finding that the trial court abuse of discretion and insufficiency of evidence claims had been fully litigated on appeal and the rest were without merit.[3] *Id.* at 44–50. The petitioner then sought review at the Louisiana Third Circuit Court of Appeals, which ruled on October 24, 2012, denying consideration of some claims litigated in the direct appeal and affirming the trial court's findings with respect to the other claims. Doc. 18, att. 13. The Louisiana Supreme Court denied discretionary review of the entire application without stating its reasons on April 12, 2013. Doc. 1, att. 3, p. 52.

---

[3] Even though the petitioner expanded his claim on insufficiency of evidence in his application for post-conviction relief to include the conspiracy charge, it was still based on an identical argument to his claim on direct appeal: lack of credibility of the state's witness, D.B. *Compare Ramsdell*, 47 So.3d at 81–84, *with* Doc. 1, att. 3, pp. 34–38.

### C.  *Habeas Application*

The petitioner filed the instant application seeking relief under 28 U.S.C. § 2254 with this court on April 17, 2013. Doc. 1. In it, the petitioner renews all claims from his application for post-conviction relief and his direct appeal. Doc. 1, att. 2, pp. 2–3. Specifically, he raises the following allegations:

1. The conviction of armed robbery violated the prohibition against double jeopardy.

2. There was insufficient evidence to sustain convictions of first degree murder and conspiracy to commit first degree murder.

3. The trial court abused its discretion in failing to grant motions for mistrial based on statements made by prospective jurors during voir dire.

4. The petitioner's constitutional rights were violated when he was barred from testifying on his own behalf.

5. The petitioner received ineffective assistance of counsel as a result of the following alleged deficiencies in performance by his trial counsel:

   a. Failure to file a Motion to Suppress
   b. Failure to present a defense and have compulsory process for obtaining witnesses on the petitioner's behalf
   c. Failure to request special jury instructions

6. The cumulative effect of these errors deprived the petitioner of a fundamentally fair adversarial proceeding.

Doc. 1, att. 2, p. 1.

## II.
### LEGAL STANDARDS ON HABEAS REVIEW

### A.  *Timeliness*

Federal law imposes a one-year limitation period within which persons who are in custody pursuant to the judgment of a state court may seek habeas review in federal court. 28 U.S.C. § 2244(d)(1). This limitation period generally runs from the date that the conviction becomes final.

*See* 28 U.S.C. § 2244(d)(1)(A). The time during which a properly-filed application for post-conviction relief is pending in state court is not counted toward the one-year limit. 28 U.S.C. § 2244(d)(2); *Ott v. Johnson*, 192 F.3d 510, 512 (5th Cir. 1999). However, any lapse of time before proper filing in state court *is* counted. *Flanagan v. Johnson*, 154 F.3d 196, 199 n.1 (5th Cir. 1998).

A state application is considered pending both while it is in state court for review and also during intervals between a state court's disposition and the petitioner's timely filing for review at the next level of state consideration. *Melancon v. Kaylo*, 259 F.3d 401, 406 (5th Cir. 2001). The limitations period is not tolled, however, for the period between the completion of state review and the filing of the federal habeas application. *Mayle v. Felix*, 545 U.S. 644, 644 (2005). Accordingly, in order to determine whether a habeas petition is time-barred under the provisions of §2244(d) the court must ascertain: (1) the date upon which the judgment became final either by the conclusion of direct review or by the expiration of time for seeking further direct review, (2) the dates during which properly filed petitions for post-conviction or other collateral review were pending in the state courts, and (3) the date upon which the petitioner filed his federal habeas corpus petition.

## B. Procedural Default and Exhaustion of State Court Remedies

Before we proceed to a consideration of the merits of the issues raised in the petition, we must also consider the doctrines of procedural default and exhaustion of state court remedies.

### 1. Exhaustion of State Court Remedies

The federal habeas corpus statute and decades of federal jurisprudence require a petitioner seeking federal habeas corpus relief to exhaust all available state court remedies prior to filing his federal petition. 28 U.S.C. § 2254(b)(1); *e.g.*, *Whitehead v. Johnson,* 157 F.3d 384, 387 (5th Cir. 1998). This is a matter of comity. *Ex parte Royall*, 6 S.Ct. 734 (1886). In order to satisfy the

exhaustion requirement, the petitioner must have "fairly presented" the substance of his federal constitutional claims to the state courts in a "procedurally proper manner." *Wilder v. Cockrell,* 274 F.3d 255, 259 (5th Cir. 2001); *Dupuy v. Butler*, 837 F.2d 699, 702 (5th Cir. 1988).

Each claim must also be presented to the state's highest court, even when review by that court is discretionary. *Castille v. Peoples*, 109 S.Ct. 1056 (1989). In Louisiana the highest court is the Louisiana Supreme Court. *See* LSA–Const. art. 5, § 5(a) ("The supreme court has general supervisory jurisdiction over all other courts . . . .")

Thus, in order for a Louisiana prisoner to have exhausted his state court remedies, he must have fairly presented the substance of his federal constitutional claims to the Louisiana Supreme Court in a procedurally correct manner. *Nobles v. Johnson*, 127 F.3d 409, 420 (5th Cir. 1997). Exhaustion requires that any federal constitutional claim presented to the state courts be supported by the same factual allegations and legal theories upon which the petitioner bases his federal claims. *Picard v. Connor*, 404 U.S. 270, 276 (1971).

### 2. *Procedural Default*

When a prisoner has defaulted a claim by violating a state procedural rule which constitutes adequate and independent grounds to bar direct review in the United States Supreme Court, the prisoner may not raise that claim in a federal habeas proceeding absent a showing of cause and prejudice or actual innocence. *Coleman v. Thompson*, 111 S.Ct. 2546, 2554 (1991). Failure to satisfy state procedural requirements results in a forfeiture of a prisoner's right to present a claim in a federal habeas proceeding. *Murray v. Carrier*, 106 S.Ct. 2639 (1986). This is not a jurisdictional matter but rather is grounded in concerns of comity and federalism. *Trest v. Cain*, 118 S.Ct. 478 (1997).

Procedural default exists where (1) a state court clearly and expressly bases its dismissal of the petitioner's constitutional claim on a state procedural rule and that procedural rule provides an independent and adequate ground for the dismissal ("traditional" procedural default) or (2) the petitioner fails to properly exhaust all available state court remedies and the state court to which he would be required to petition would now find the claims procedurally barred ("technical" procedural default). In either instance, the petitioner is deemed to have forfeited his federal habeas claims. *Bledsue v. Johnson*, 188 F.3d 250, 254–5 (5th Cir. 1999). The grounds for procedural default must be based on the actions of the last state court rendering a judgment. *Harris v. Reed*, 109 S.Ct. 1038, 1043 (1989).

A federal habeas petitioner may be excluded from the procedural default rule only if he can show "cause" for his default and "prejudice attributed thereto," or demonstrate that the federal court's failure to review the claim will result in a "fundamental miscarriage of justice." *Fisher v. Texas*, 169 F.3d 295, 301 (5th Cir. 1999); *Amos v. Scott*, 61 F.3d 333, 338–39 (5th Cir. 1995). To establish cause, a petitioner must demonstrate that some factor outside of the defense impaired his efforts to comply with the state procedural rule. *Murray v. Carrier*, 106 S.Ct. 2639, 2645 (1986). To show a fundamental miscarriage of justice, the petitioner must provide the court with evidence that would support a "colorable showing" of actual innocence. *Kuhlmann v. Wilson*, 106 S.Ct. 2616, 2627 (1986).

### C. General Principles

Federal courts of the United States have jurisdiction over writs of habeas corpus on behalf of a person in state custody only if that person "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

When a state district court adjudicates a petitioner's claim on the merits, this court reviews the state court adjudication under the deferential standard of 28 U.S.C. § 2254(d). *Corwin v. Johnson*, 150 F.3d 456, 471 (5th Cir. 1998). Section 2254(d) provides that a writ of habeas corpus shall not be granted unless the state court's adjudication on the merits resulted in a decision that was either (1) contrary to clearly established federal law or involved an unreasonable application of that law, or (2) based on an unreasonable determination of the facts in light of the evidence before the state court. 28 U.S.C. § 2254(d).

The first standard, whether the state court's adjudication was contrary to or involved an unreasonable application of clearly established federal law, applies to questions of law as well as mixed questions of law and fact. A petitioner must demonstrate that the "fair import" of the state court decision shows that the court failed to apply the controlling federal standard. *Early v. Packer*, 537 U.S. 3, 9 (2002) (per curiam). Furthermore, the decision must be "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington v. Richter*, 131 S.Ct. 770, 784 (2011). A decision is contrary to clearly established federal law "if the state court applies a rule that contradicts the governing law set forth [by the Supreme Court], or if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedents and arrives at a [contrary] result . . . ." *Bell v. Cone*, 543 U.S. 447, 452-53 (2005), quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000) (internal quotations omitted). In order for a state court's application of federal law to be unreasonable, the application must be more than simply erroneous but rather so incorrect as to be objectively unreasonable. *Dilosa v. Cain*, 279 F.2d 259, 262 (5th Cir. 2002).

The second standard – whether the state court's adjudication was based on an unreasonable determination of the facts in light of the evidence – applies to questions of fact. It is insufficient

for a petitioner to show that the state court erred in its factual determination but rather he must demonstrate that the factual determination was objectively unreasonable, a "substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 130 S.Ct. 841, 849 (2010). Rather, the petitioner has to show that "a reasonable factfinder must conclude" that the determination of facts by the state court was unreasonable. *Rice v. Collins*, 546 U.S. 333, 341 (2006).

The deferential standards of review elucidated above are applicable on habeas review even when the state court did not provide reasons for its decision, so long as the state court adjudicated the claim on the merits.  *Harrington*, 131 S. Ct. at 784, 785.  In the absence of reasons or a written opinion, "a habeas court must determine what arguments or theories . . . could have supported the state court's decision; and then it must ask whether it is possible fair minded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior [Supreme Court] decision . . . ." *Id.* at 786.

### III.
#### ANALYSIS

As a preliminary matter we review the petitioner's application for timeliness, procedural default, and exhaustion of state court remedies. If we find that the claim is procedurally viable, we then look to its merits under the general standards set forth in Section II.C.

### A.  *Timeliness*

Here we note that the petitioner's conviction became final thirty days after the judgment of the Louisiana Third Circuit Court of Appeals, when his time for seeking review by the Louisiana Supreme Court expired. *See, e.g.*, *State v. Frank*, 898 So.2d 614, 616 (La. Ct. App. 3d Cir. 2005) (citing LA. CODE CRIM. P. art. 914). Therefore the one year limit for filing his § 2254 petition

began running on November 5, 2010. It was suspended by his application for post-conviction relief on October 7, 2011, after 336 days. The clock began running again when the Louisiana Supreme Court denied review of this application on April 12, 2013, and ran for another 5 days until the filing of the instant application. Thus a total of 341 days were counted towards the one-year limit, meaning that the instant application is timely under § 2244(d).

### B.  Exhaustion of State Court Remedies and Procedural Default

Finding that the application is timely, we next apply the doctrines of exhaustion of state court remedies and procedural default in order to determine whether we can proceed to the merits of the claim.

#### 1.  Exhaustion of state court remedies

Though the petitioner failed to seek review from the Louisiana Supreme Court on his direct appeal, he did renew all claims therein as part of his application for post-conviction relief. His application was in turn presented to the Louisiana Supreme Court. Although the petitioner expanded his claim for sufficiency of evidence in his application for post-conviction relief, he still used the same facts and legal theories in support of the renewed claims and in support of each claim upon seeking review. Therefore we find that each claim was fairly presented to the highest state court.

#### 2.  Procedural default

Applying the standards described above, we now consider whether grounds for procedural default exist. Here the Louisiana Supreme Court denied review of the application for post-conviction relief and was not petitioned to consider the direct appeal, so we look to the judgments of the Louisiana Third Circuit Court of Appeals.

In considering the application for post-conviction relief, the 36th Judicial District dismissed the assistance of counsel claim as it related to the motion to suppress. It based this dismissal on the petitioner's failure to specify which statements should have been suppressed, as the petitioner had made several inculpatory remarks to cellmates, police, and other witnesses, all of which were used against him at trial.

The Louisiana Code of Criminal Procedure's requirement that the factual basis for post-conviction relief be stated "with reasonable particularity." Doc. 1, att. 3 (citing LA. CODE CRIM. P. art. 926(B)(3)). The Louisiana Code of Criminal Procedure also allows that a claim may be dismissed for "inexcusable failure" to comply with this requirement. *Id.* at art. 926(E).

The Louisiana Third Circuit Court of Appeals denied review of the petitioner's claims that were waived for "failure to brief," citing to Uniform Rules—Courts of Appeal, Rule 2-12.4. Doc. 18, att. 13. As the Motion to Suppress claim was the only one where the 36th Judicial District's findings referenced insufficient allegations, we assume this reference corresponds to that claim. Rule 2-12.4 provides in part that the appellant's brief must contain "a statement of facts relevant to the assignments of error and issues for review" and "a short summary of the argument, i.e., a succinct, clear, and accurate statement of the arguments made in the body of the brief." UNIF. R. LA. CTS. APP. 2-12.4(A)(7)–(8). Under this rule, "[t]he court may consider as abandoned any assignment of error or issue for review which has not been briefed." *Id.* at 2-12.4(B)(4).

The petitioner made a number of inculpatory statements which were later used against him at trial.[4] This lack of specificity appears to place the claim within the bounds of Rule 2-12.4. This

---

[4] The petitioner had been interviewed twice by law enforcement at the Beauregard Parish Sheriff's Department on October 16, 2007. Doc. 18, pp. 286–349. Statements from at least one of these interviews were played at trial. *E.g.*, Doc. 18, att. 8, pp. 137–146. D.B., a juvenile accomplice, also testified to hearing the petitioner discuss planning to rob and murder Mayeux. *Id.* at 206–09.

  The state also called James Robert Brown ("Brown"). Doc. 18, att. 4, p. 61. Brown had been a cellmate of Ramsdell during his pre-trial detention at the Beauregard Parish Jail in October 2007. Doc. 18, att. 9, pp. 216, 228–

rule provided independent and adequate grounds for dismissal. Upon our review of the petitioner's state application for post-conviction relief, it appears to us that the claim relating to failure to file a Motion to Suppress is the only assignment of error to which a failure to brief could apply, as the other claims were stated with specificity. In contrast, the Motion to Suppress claim provided no indication as to the grounds for relief other than the petitioner's contention that he was under the influence of drugs at a point in time where he made one of the many statements later offered against him at trial. Accordingly, we find that the claim relating to the lack of a Motion to Suppress was procedurally defaulted.

The 36th Judicial District also declined to review the sufficiency of evidence and abuse of discretion claims as repetitive.[5] The Third Circuit likewise declined to review unspecified claims that were repetitive. Doc. 18, att. 13 (citing LA. CODE CRIM. P. art. 930.4). Article 930.4 bars repetition in applications for post-conviction relief. LA. CODE CRIM. P. art. 930.4. Until amendments which took effect in August 2014, making dismissal a mandatory matter, it provided in part that the court could deny relief "[i]f the application alleges a claim which the petitioner raised in the trial court but inexcusably failed to pursue on appeal." Post-Conviction Relief, 2013 La. Sess. Law Serv. Act 251 (H.B. 385) (West). Article 930.4(f), which was unchanged by the amendments, also provides that the court shall give notice to the petitioner if it is considering dismissal for failure to raise the claim at an earlier stage. LA. CODE CRIM. P. art. 930.4(f). It shall then take into account the petitioner's reasons for failing to urge the claims on appeal and consider the claims on the merits if it finds that the failure was excusable. *Id.*

---

29. Brown testified that Ramsdell had told him, without being asked, that he was in jail for shooting "a man named Jack." *Id.*

[5] The 36th Judicial District did consider the double jeopardy claim on the merits. As we have noted, however, the petitioner changed the grounds for his double jeopardy claim and so it would be incorrect to deem this one as repetitive.

Here the petitioner offered only generic justification for renewal of claims from his direct appeal in his Uniform Application for Post-Conviction Relief. However, Louisiana courts have determined that the Uniform Application provides sufficient opportunity for petitioners to explain why claims that might otherwise be deemed repetitive under Article 930.4 were not brought earlier, and that "[p]roper use of the Uniform Application thus satisfies the requirements of Article 930.4(f) without the need for further filings, formal proceedings, or a hearing." *Hess v. Cain*, 2005 WL 1038558 at *3 (E.D. La. Apr. 29, 2005) (quoting *Rice v. State*, 749 So.2d 650 (La. 1999)). Under Louisiana law, it appears that the petitioner had sufficient opportunity to justify why he renewed certain claims in his application post-conviction relief instead of litigating them fully in his direct appeal. We therefore accept the state courts' findings that he failed to do so.

As the petitioner notes, the Supreme Court has mentioned in passing that a state court's decision not to hear a petitioner's claim on the merits based on the fact that it has already done so is not considered the same as a procedural default. *See Ylst v. Nunnemaker*, 111 S.Ct 2590, 2595 n.3 (1991). The Fifth Circuit has agreed that 930.4(a), which bars rehearing of claims already decided on direct appeal, does not apply as a procedural default for federal habeas relief. *Bennett v. Whitley*, 41 F.3d 1581, 1582–83 (5th Cir. 1995). However, we see good reason to distinguish 930.4(c), as these claims had the opportunity to be heard on the petitioner's direct appeal but were not due to his failure to pursue them there. *See also Mathieu v. Tanner*, 2014 WL 5465854 (E.D. La. Oct. 28, 2014) (finding that arts. 930.4(b) and 930.4(c) operated as procedural defaults). As we have already found, the petitioner had the opportunity to justify this failure in his application for post-conviction relief and failed to adequately do so.

The petitioner has also made no showing that would support cause and prejudice or a fundamental miscarriage of justice resulting from the procedural default of any of his claims. He

does not attribute his failure to pursue the claims on direct appeal or provide more particularity to external factors, nor does he make a showing of actual innocence. Therefore we find that state procedural rules and their application by the Third Circuit create an acceptable procedural bar to our consideration of the sufficiency of evidence and abuse of discretion claims raised on direct appeal, and to the ineffective assistance of counsel claim as it relates to the failure to file a Motion to Suppress.

Accordingly, we will only consider the following for federal habeas relief:

1. The conviction of armed robbery, theft of movable property over $500, and theft of a firearm was a violation of the prohibition against double jeopardy.

2. The petitioner's constitutional rights were violated when he was barred from testifying on his own behalf.

3. The petitioner received ineffective assistance of counsel as a result of the following alleged deficiencies in performance by his trial counsel:

    a. Failure to present a defense and have compulsory process for obtaining witnesses on the petitioner's behalf
    b. Failure to request special jury instructions

4. The cumulative effect of these errors deprived the petitioner of a fundamentally fair adversarial proceeding.

## C. *Substantive Analysis*

Having determined the claims that can be heard by this court under § 2254, we will now consider each claim by first ascertaining the standard of review to be applied and then applying that standard to the merits of the argument.

### 1. *Whether the conviction of armed robbery was a violation of the prohibition against double jeopardy*

The petitioner claims that his conviction of armed robbery, theft of a firearm, and theft of moveable property over $500 violated the Fifth Amendment's prohibition against double jeopardy, made applicable to the states through the Fourteenth Amendment. U.S. CONST. amends. V, XIV.

-14-

The Double Jeopardy Clause provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." *Id.* at amend. V. The clause therefore protects the accused against multiple punishments for the same offense. *North Carolina v. Pearce*, 89 S.Ct. 2072, 2076 (1969).

In evaluating claims of double jeopardy, federal courts in this circuit use the test articulated in *Blockburger v. United States*, 52 S.Ct. 180 (1932). *Blockburger* applies "[w]here the same act or transaction constitutes a violation of two distinct statutory provisions." *Id.* at 182. Under the *Blockburger* test, each offense charged from this act "must contain an element not contained in the other; [otherwise] they are the same offense . . . and double jeopardy bars subsequent punishment or prosecution." *United States v. Agofsky*, 458 F.3d 369, 371 (5th Cir. 2006) (internal quotations omitted). We therefore consider the elements of the statutes under which the petitioner was convicted.

| Citation | Relevant Text |
|---|---|
| La. R.S. § 14:64<br>Armed Robbery | A. Armed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon. |
| La. R.S. § 67.15<br>Theft of a firearm | A. Theft of a firearm is the misappropriation or taking of a firearm which belongs to another, either without the consent of the other to the misappropriation or taking or by means of fraudulent conduct, practices, or representations. An intent to deprive the other permanently of the firearm is essential. |
| La. R.S. § 14:67<br>Theft of moveable property over $500 | A. Theft is the misappropriation or taking of anything of value which belongs to another, either without the consent of the other to the misappropriation or taking or by means of fraudulent conduct, practices, or representations. An intent to deprive the other permanently of whatever is the subject of the misappropriation or taking is essential. |

****

> B. (3) When the misappropriation or taking amounts to a value of seven hundred and fifty dollars or more . . . the offender shall be imprisoned for not more than six months, or may be fined not more than one thousand dollars, or both.[6]

Because this issue does not involve any dispute as to the facts of the case, we apply the contrary to/unreasonable application of federal law standard of review.

The petitioner contends that conviction under the theft statutes fails the *Blockburger* test because the objects of the thefts were also the things of value involved in the armed robbery; however, this is a misstatement of the *Blockburger* test. We look instead to the statutes, which show that armed robbery contains an element (use of force or intimidation, while armed with a dangerous weapon) not included in the theft charges. Likewise, both theft charges contain elements not in the armed robbery charge by virtue of the specification of the object of the theft.

Therefore we find that the convictions challenged here do not create a double jeopardy concern under *Blockburger*. Accordingly, this claim offers no basis for federal habeas relief.

### 2. Whether the petitioner's constitutional rights were violated when he was barred from testifying on his own behalf

The petitioner next claims that he was prevented from testifying in his own defense, in violation of his constitutional rights.[7] The respondent asserts that the petitioner executed a valid waiver at trial and should be barred from resurrecting this right.  Waiver of a constitutional right is considered a legal question. *See Johnson v. Cain*, 196 F.3d 1258 (5th Cir. 1999) (per curiam)

---

[6] Raised from five hundred dollars effective August 1, 2014. CRIMES OF THEFT, 2014 La. Sess. Law Serv. Act 255 (H.B. 791) (West).

[7] A defendant in a criminal case has the right to testify on his own behalf under the Fourteenth Amendment's Due Process, Fifth Amendment's protection against self-incrimination, and Sixth Amendment's grant of compulsory process. *Rock v. Arkansas*, 107 S.Ct. 2704, 2708–10 (1987).

(unpublished). Therefore we review this claim for contrariness to/unreasonable application of federal law.

The right to testify in one's own defense is personal to the defendant and may not be waived by his attorney. *Jordan v. Hargett*, 34 F.3d 310, 312 (5th Cir. 1994), *vacated on other grounds*, 53 F.3d 94 (5th Cir. 1995). If a defendant waives his right to testify, there is no violation so long as the waiver is knowing, voluntary, and intelligent. *United States v. Teague*, 908 F.2d 752, 759 (11th Cir. 1990), *cert. denied*, 113 S.Ct. 127 (1992). A colloquy conducted outside of the jury's hearing by the trial court, resulting in a statement on the record from the defendant that he is aware of his right to testify and has chosen voluntarily to waive it, is considered sufficient proof of waiver within this circuit. *Jordan*, 34 F.3d at 315.

The petitioner did not testify. Doc. 18, att. 10, p. 59. He waived his right to do so and does not dispute the statements that were then recorded.[8] However, he now contends that his attorney ordered him not to testify, despite the petitioner begging to do so after each of the state's witnesses.

Whether these exchanges between the petitioner and his attorney occurred is immaterial. The colloquy took place after the conclusion of the state's case. The petitioner told the judge then that he was knowingly and voluntarily waiving his right to take the stand. He offered no indication that he did not understand the judge's questions or that he was coerced into giving his response.

---

[8] The following colloquy took place at the conclusion of the case, outside of the hearing of the jury, between the petitioner and the trial court judge ("Judge Anderson"):

> **Judge Anderson**: "You have consulted with both of your attorneys, Mr. Fontenot and Mr. Jones, in this matter regarding your decision to testify or not?"
> **Petitioner**: "Yes, Your Honor."
> **Judge Anderson**: "And you have knowingly and voluntarily made the decision not to testify; is that correct?"
> **Petitioner**: "Yes, Your Honor."
> **Judge Anderson**: "Very well."
> Doc. 18, att. 10, p. 59.

Therefore we find that the waiver was also effective under federal law. Accordingly, this claim offers no basis for federal habeas relief.

### 3. *Whether the petitioner received ineffective assistance of counsel*

The petitioner claims that he received ineffective assistance of counsel at trial in violation of his constitutional right to an attorney. U.S. CONST. amend. VI and XIV. He asserts that his attorney's performance was deficient in two areas:

  a. Failure to present a defense and have compulsory process for obtaining witnesses on the petitioner's behalf[9]
  b. Failure to request special jury instructions

Finding no dispute as to the facts under either of these issues, we review them for contrariness to federal law.

Claims of ineffective assistance of counsel are gauged by the guidelines set forth by the Supreme Court in *Strickland v. Washington*, 104 S.Ct. 2052 (1984). Under *Strickland*, a petitioner must demonstrate: (1) that his counsel's performance was deficient, requiring a showing that the errors were so serious such that he failed to function as "counsel" as guaranteed by the Sixth Amendment, and (2) that the deficiency so prejudiced the defendant that it deprived him of a fair trial or of a dependable verdict.  *Id.* at 2064. This standard does not require perfect assistance by counsel; rather, the petitioner must demonstrate that counsel's representation fell beneath an objective standard of reasonableness. *Id.* Judges have been cautioned towards deference in their reviews of attorney performance under the first prong of *Strickland* claims in order to "eliminate the potential distorting effect of hindsight." *Rector v. Johnson*, 120 F.3d 551, 563 (5th Cir. 1997) (quoting *Strickland*, 104 S.Ct. at 1065). The resulting prejudice, as analyzed in the second prong, must also be so great that it creates a substantial likelihood of a different result. *Pape v. Thaler*,

---

[9] Again, we note that petitioner divided this claim into two parts, even though both parts relate to the same witnesses. Finding that the division results in redundancy, we review these claims as one.

645 F.3d 281, 288 (5th Cir. 2011). A petitioner must satisfy both of *Strickland*'s prongs in order to show a basis for federal habeas relief. *Id.*

> ### a. *Failure to present a defense and have compulsory process for obtaining witnesses*

The petitioner first alleges that his attorney was ineffective because no witnesses were called to testify on the petitioner's behalf. Specifically, he asserts that he wished to call four people as witnesses to his good character and to somehow otherwise establish reasonable doubt that he had shot Mayeux. The petitioner alleges that the testimony of these witnesses was crucial to his defense and that his attorney's failure to subject them to compulsory process was gravely prejudicial. The respondent contends that failure to call character witnesses was not prejudicial and was moreover a sound strategic choice.

Complaints based on uncalled witnesses are disfavored under ineffective assistance claims. *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985). The decision to call a witness is a strategic choice and a trial counsel's strategic choices are given a great amount of deference on review. *Andrews v. Collins*, 21 F.3d 612, 621 (5th Cir. 1994). Fifth Amendment jurisprudence on such cases largely ignores the first prong of *Strickland* and instead focuses on the second, stating that a petitioner cannot establish that failure to call witnesses prejudiced his case unless he also shows that the witnesses would have testified at trial and that their testimony would have been favorable. *Alexander*, 775 F.2d at 602; *see, e.g.*, *Kohler v. Cain*, 2000 WL 634646 at *3 (5th Cir. 2000) (unpublished); *Harrison v. Quarterman*, 496 F.3d 419, 428 (5th Cir. 2007); *Gregory v. Thaler*, 601 F.3d 347, 353 (5th Cir. 2010). Generally a petitioner can meet this burden by providing "competent summary judgment evidence," such as affidavits from the would-be witnesses. *See Gregory*, 601 F.3d at 352. Failure to offer such evidence is "fatal" to this kind of claim. *Id.*

Here there was no evidentiary hearing and so we have no justification from the petitioner's trial counsel as to the extent of his investigation. We note that this may well have been a sound strategic decision, as introducing evidence of the petitioner's good character would have put his character at issue and allowed the state to introduce evidence of his bad character in rebuttal. LA. CODE OF EVID. art. 404(A)(1) & cmt. (d). Still, in the absence of any justification from the petitioner's attorney, we are confined to the fact that he simply failed to put on any witnesses, including those the petitioner specifically urged him to call. Therefore we find that this failure satisfies the first prong of *Strickland*.

On the second prong, however, we find no basis for the petitioner's claim that he was prejudiced by the failure to call the four witnesses. The petitioner offers no evidence of his witnesses' availability, by showing that they were willing to testify or subject to compulsory process, or of their potential testimony. He merely alleges that they would have testified to his good character and perhaps established reasonable doubt on other grounds, and that such testimony would have been helpful to his defense. Therefore the petitioner cannot meet the second prong of *Strickland* and so has not shown that he received ineffective assistance of counsel. Accordingly he is not entitled to federal habeas relief under this claim.

### b.   *Failure to request special jury instructions*

The petitioner also claims that his counsel was ineffective because his attorney failed to request a special instruction informing the jury of the mandatory life sentence carried by a conviction of first or second degree murder.[10] *See* LA. REV. STAT. §§ 14:30(C)(2), 14:30.1(B).

---

[10] The Louisiana Supreme Court has ruled that, when a criminal defendant so requests, a jury must be instructed as to a mandatory penalty provision. *State v. Jackson*, 450 So.2d 621 (La. 1984).

Here the prosecutor had informed the jury that both first and second degree murder carried mandatory sentences of life imprisonment during the voir dire. Doc. 18, att. 4, pp. 150–54. In the jury instructions, the jurors were reminded of the mandatory sentence attached to a conviction of first degree murder. Doc. 18, att. 3, p. 156. The jury was also instructed on second degree murder as a lesser included offense but was not reminded of the mandatory sentence to that charge. *Id.* at 160–61. the jury was informed of the sentence for first and second degree murder by the district attorney during voir dire. The jury instructions also included a reminder of the sentence for first degree murder. Therefore the ineffective assistance claim here is actually confined to the petitioner's attorney's failure to request an instruction on the sentence for second degree murder alone, which the jury had already been apprised of during voir dire.

While a reminder as to the mandatory sentence carried by both possible murder charges might have been preferable, the sentence had already been made known to all members of the jury pool during voir dire. We also note that the petitioner's attorney might have had strategic reasons for reminding the jury that first degree murder carried one sentence but failing to stress that the sentence for second degree murder was identical. Under the deferential standard stressed by *Strickland*, we cannot say that this error, if indeed it was one, was "so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." *Strickland*, 104 S.Ct. at 2064. Accordingly, the petitioner has not met the first prong of *Strickland* and this claim offers no basis for federal habeas relief.

### 4. *Whether the cumulative effect of these errors deprived the petitioner of a fundamentally fair adversarial proceeding*

Finally, the petitioner claims that the cumulative effect of all of his previously asserted claims denied him a fundamentally fair trial, in violation of his constitutional right to due process. *See* U.S. CONST. amends. V & XIV.

The cumulative error doctrine allows that "an aggregation of non-reversible errors (i.e., plain errors failing to necessitate reversal and harmless errors) can yield a denial of the constitutional right to a fair trial, which calls for a reversal." *United States v. Munoz*, 150 F.3d 401, 418 (5th Cir. 1998). Here we have only found a possible error under one claim, where the petitioner's attorney might have shown deficient performance by failing to call witnesses but the petitioner has not shown the resulting prejudice under the second prong of *Strickland*. This error was therefore non-reversible. A finding of just one non-reversible error plainly does not comport with the doctrine's requirement of an "aggregation" of errors. Therefore the petitioner has not shown that he was deprived of a fair trial, and this claim offers no basis for federal habeas relief.

### III.
#### CONCLUSION

For the reasons stated above, the undersigned concludes that the petitioner is not entitled to federal habeas relief.

Accordingly, **IT IS RECOMMENDED** that the instant application be **DENIED** and **DISMISSED WITH PREJUDICE**.

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days from receipt of this Report and Recommendation to file any objections with the Clerk of Court.  Timely objections will be considered by the district judge prior to a final ruling.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1429–30 (5th Cir.  1996).

In accordance with Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue.  *See* 28 U.S.C. § 2253(c)(2).  A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.

THUS DONE this 18th day of November, 2015.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE